**UNITED STATES DISTRICT COURT**

**SOUTHERN DISTRICT OF TEXAS**

**HOUSTON DIVISION**

| | |
|---|---|
| IN RE: DOCUDATA SOLUTIONS, LLC, . | CASE NO. 4:25-BK-90023 |
| . | |
| . | HOUSTON, TEXAS |
| DEBTOR . | WEDNESDAY, APRIL 23, 2025 |
| . | 10:02 A.M. TO 11:01 A.M. |

. . . . . . . . . . . . . . . . .

**FINAL DIP HEARING**

**SOME PARTIES APPEARING VIA GOTOMEETING**

**BEFORE THE HONORABLE CHRISTOPHER LOPEZ**
**UNITED STATES BANKRUPTCY JUDGE**


APPEARANCES:                SEE NEXT PAGE

ELECTRONIC RECORDING OFFICER: YESENIA LILA

OFFICIAL INTERPRETER:        NONE PRESENT

CASE MANAGER:                NOT IDENTIFIED




TRANSCRIPTION SERVICE BY:


**Trinity Transcription Services**
1081 Main Street
Surgoinsville, TN 37873
281-782-0802
battshott@aol.com


**Proceedings recorded by electronic sound recording;**
**Transcript produced by transcription service.**

```
                    UNITED STATES BANKRUPTCY COURT

                    SOUTHERN DISTRICT OF TEXAS

                         HOUSTON DIVISION

IN RE: DOCUDATA SOLUTIONS, LLC, .  CASE NO. 4:25-BK-90023
                                 .
                                 .  HOUSTON, TEXAS
                 DEBTOR          .  WEDNESDAY, APRIL 23, 2025
                                 .  10:02 A.M. TO 11:01 A.M.
. . . . . . . . . . . . . . . . .


                      FINAL DIP HEARING

              SOME PARTIES APPEARING VIA GOTOMEETING

              BEFORE THE HONORABLE CHRISTOPHER LOPEZ
                 UNITED STATES BANKRUPTCY JUDGE
```

Appearances:

**For THE DEBTOR:**          **ALEXANDER W. WELCH, ESQ.**
                                    **HUGH MURTAGH, ESQ.**
                                    Latham & Watkins LLP
                                    1271 Avenue of the Americas
                                    New York, NY 10020

**For THE DEBTOR:**          **TIMOTHY A. DAVIDSON, II, ESQ.**
                                    **PHILIP M. GUFFY, ESQ.**
                                    Hunton Andrews Kurth LLP
                                    600 Travis, Suite 4200
                                    Houston, TX 77002

**For CCUR HOLDINGS, INC.**    **MARK C. TAYLOR, ESQ.**
                                    Kane Russell Coleman Logan PC
                                    401 Congress Avenue, Suite 2100
                                    Austin, TX 78701

**For OFFICIAL COMMITTEE OF**    **ROBERT STARK, ESQ.**
**  UNSECURED CREDITORS:**        Brown Rudnik, LLP
                                    7 Times Square
                                    New York, NY 10036

<u>Appearances</u> (cont.):


**For AD HOC GROUP AND DIP**      **MATTHEW M. ROOSE, ESQ.**
  **LENDERS:**                    Ropes and Gray
                              1211 Avenue of the Americas
                              New York, NY 10036

**HOLDCO ASSET MANAGEMENT:**      **DANIEL BROWN, ESQ.**
                              No Address Provided

Transcriber:                  Cheryl Battaglia
                              Trinity Transcription Services
                              1081 Main Street
                              Surgoinsville, TN 37873

**(See also electronic appearances)**

1

1        **Houston, Texas; Wednesday, April 23, 2025; 10:02 a.m.**

2        **(Some Parties Appearing Via GoToMeeting.)**

3            **THE COURT:**  All right.  Good morning, everyone.  This

4    is Judge Lopez.  Today is April 23rd.  I'm going to call the

5    10:00 a.m. docket in *DocuData, 25-90023.*

6            Let me just ——

7            **THE COURT:**  Mr. Welch, good morning.

8            **MR. WELCH:**  Good morning, Judge.

9            For the record, Alexander Welch, Latham and Watkins

10   for the Debtors.

11           Your Honor, we are still trying to work the problem.

12   I think we have just received —— one thing we're just digesting

13   it.  If —— if the Court would indulge us one more time.  I

14   think a few moments to confer amongst the parties would be

15   helpful.

16           I know I initially suggested ten minutes to your

17   Clerk.  I think, or Case Manager, I think we might benefit from

18   30.  I think, your Honor, if —— if you need this.  I know you

19   were very clear that the time is today.  I think we agree.  We

20   are not planning on moving this hearing today.

21           We will go ahead one way or the other.  I think we

22   would use this 30 minutes to hop on the phone with stakeholders

23   and make sure they understand quite clearly the —— the

24   circumstances and the dynamics here, and see if —— if this is

25   the final moment.

1          There's, I know, lenders considering a proposal.  And

2   I just want to let that have an opportunity.

3          **THE COURT:**  Okay.

4      **(Pause in the proceeding.)**

5          **THE COURT:**  Okay.  Okay.  I'm going to —— like 10:30.

6   We'll come back on and we'll get started.

7          **MR. WELCH:**  We're grateful, your Honor.

8          **THE COURT:**  Thank you.

9      **(Pause in the proceeding.)**

10         **UNITED STATES MARSHAL:**  All rise.

11     **(Recess taken from 10:04 a.m. to 10:30 a.m.)**

12         **UNITED STATES MARSHAL:**  All rise.

13     **(Pause in the proceeding.)**

14         **THE COURT:**  Please be seated.

15     **(Pause in the proceeding.)**

16     **(Voices speaking off the record.)**

17         **THE COURT:**  Okay.

18     **(Voices speaking off the record.)**

19         **THE COURT:**  Good morning.  This is Judge Lopez.  I'm

20  turning my camera back on.  It is 10:30.  I'm calling a hearing

21  in *DocuData.*  Let's see, there's a 212 line, I'm unmuting you.

22     **(Pause in the proceeding.)**

23         **THE COURT:**  Mr. Welch, why don't you tell me where we

24  are.

25     **(Pause in the proceeding.)**

3

1          **MR. WELCH:**  Thank you, your Honor.  Alexander Welch,

2     Latham and Watkins for the Debtors.

3          Here today with me in court, Mr.  —— my partner, Hugh

4     Murtagh, also Ted Davidson, and —— and Phillip Guffy of Hunton.

5     I believe, well, we might be missing Ted.

6          Judge, given where we find ourselves this morning,

7     and I —— I'm really not sure standing here right now where we

8     end up at the end of this.  But I think it's important, you

9     know, we say a few words on our status.

10          **THE COURT:**  Okay.

11          **MR. WELCH:**  And then I'll hand the podium over to

12     Mr. —— Mr. Murtagh for legal argument.

13          Judge, fundamentally the Debtor is a vulnerable

14     thing.  And —— and that's why we talk about Chapter 11 in

15     protection —— in terms of protection.

16          But even where we seek and obtain the protection of

17     the Bankruptcy Court, there are limits to what we provide, and

18     what that protection can provide, and where those limitations

19     start.  That's where the collectively bargaining environment of

20     Chapter 11 begins.

21          We work, or we have, with our stakeholders to get

22     deals where we can.  And where we cannot, in what we are

23     hopefully limited circumstances, we bring those to the Court

24     and ask for your guidance.  We do not do it lightly.  And we do

25     our utmost to not do it without exhausting all other options.

4

1          I've said this before in this building, although not

2   before your Honor, we are the Debtors.  And we do not play dice

3   with the estate.  Others may, but we do not.

4          Some will still persist with their game, not all mind

5   you.  We've received the support of many parties in these

6   cases, cases that certainly have been harder —— case that's

7   certainly been harder than many others I've been involved in.

8          But you've heard also about the remarkable support

9   we've received from other counterparties.  Our securitization

10  program counterparties have supported us on a pre-petition and

11  post-petition basis.

12          More than once, PNC and B Riley (phonetic) have

13  stepped up where others would not.  Our management and our

14  employees continue to show up and do above and beyond what's

15  required of them.  Our customers continue to support us.  And

16  I'm sure are hopeful that we can move on past this chapter and

17  get back to business as usual.

18          And, Judge, as of this week, we can rely on the

19  support of the Committee for these cases.  We've worked

20  tirelessly with those over a holiday weekend and with the

21  majority DIP lenders to reach a global settlement in advance of

22  a final DIP hearing, which is, I'm sure your Honor appreciates,

23  unusual.

24       **(Pause in the proceeding.)**

25       **MR. WELCH:**  Let me turn one second to the DIP.  And I

5

1   won't, as I say, go into legal argument.  But I want the record

2   to be utmost clear on this point.

3          This is not a case where the Debtors have been

4   captured by a majority of their lenders and made to do their

5   bidding.  Quite the opposite, we are held captive by a

6   minority.

7          All we are asking of that minority is that we give ——

8   be given the benefit of the deal we signed up for.  Majority of

9   our DIP lenders support the Debtor Plan of Reorganization, as

10  set out in the new term sheet filed with the plan's support

11  agreement.

12         And, frankly, your Honor, I still believe they would

13  support the initial term sheet that was filed on the docket if

14  it had the support of the minority lenders.

15         However, for reasons out of their control and reasons

16  out of control of the Debtors, that doesn't seem possible.  And

17  that's because certain minority lenders seek your CCUR, HoldCo

18  and OSP, seek to exercise a veto over these Chapter 11 cases

19  for one purpose and one purpose alone, to get for themselves

20  better recoveries in similarly situated creditors.  Just call

21  it what it is.

22         They can say they have concerns about the capital

23  structure, or they would prefer a 363, but they are unwilling.

24      **(Pause in the proceeding.)**

25         **MR. WELCH:**  Your Honor, we ask to pause for one

6

1  second.

2      **(Pause in the proceeding.)**

3          **MR. WELCH:**  Your Honor, it seems like I prepared two

4  sets of notes for this morning.  And I had hoped not to have to

5  use the ones I have in front of me now.

6          If I —— if I could have your indulgence, yet again.

7  And I know I have asked so much of it.  I think I'm being told

8  that we do have a deal.

9          **THE COURT:**  You need a few minutes to confirm?

10          **MR. WELCH:**  And I think I need a few minutes to

11  confirm and be able to bring it to you and read it into the

12  record.

13          **THE COURT:**  What —— does ten minutes make sense?

14          **MR. WELCH:**  Ten minutes makes sense, your Honor.

15          **THE COURT:**  Okay.  We'll come back in ten minutes.

16  Thank you.

17          **UNITED STATES MARSHAL:**  All rise.

18      **(Recess taken from 10:35 a.m. to 10:46 a.m.)**

19          **UNITED STATES MARSHAL:**  All rise.

20          **THE COURT:**  Please be seated.

21      **(Pause in the proceeding.)**

22          **THE COURT:**  Okay.  We are back on the record in

23  *DocuData*.  Mr. Welch ——

24          **MR. WELCH:**  Thank you.

25          **THE COURT:**  —— what can you tell me.

7

1          **MR. WELCH:**  Thank you, your Honor.  Alexander Welch,

2    Latham and Watkins for the Debtor.

3          Your Honor, we have reached an agreement amongst our

4    DIP lenders.  I will forego the intro I would have provided if

5    it had started the morning that way.

6          However, I think it is important for the case for the

7    Debtors, for your Honor, and for others, that I read the

8    settlement terms into the record.

9          **THE COURT:**  Okay.

10          **MR. WELCH:**  And let you know where we plan to go from

11    here.

12          **THE COURT:**  Okay.

13          **MR. WELCH:**  So as I said, we have reached a

14    settlement amongst the DIP lenders.  And that will provide

15    access to DIP funding which is, as I said, much needed.

16          We will work on a final order amongst the parties and

17    file that under COC today.  But I think I plan to turn this

18    into a regular way DIP hearing.

19          **THE COURT:**  Okay.

20          **MR. WELCH:**  On that basis, we have —— we intend to

21    move the evidence we filed on Exhibit List at 364 and on that

22    list are the declarations of Randall (phonetic) Eisenberg

23    (phonetic) at 364-2 and the declaration of Steve Spitzer at

24    364-3.  I'd ask that those declarations be moved into evidence.

25          Both Mr. Eisenberg and Mr. Spitzer are available here

8

1    for cross examination should the parties wish.

2            **THE COURT:**  Any objection to the admission of the

3    Spitzer or Eisenberg declaration for purposes of today's

4    hearing?

5            **MR. TAYLOR:**  Your Honor, Mark Taylor for CCUR

6    Holdings, no objection.

7            **THE COURT:**  Okay.  Thank you.

8            Anyone else?

9        **(Pause in the proceeding.)**

10           **MR. STARK:**  Your Honor, it's —— your Honor, it's

11   Robert Stark.  Can you hear me okay?

12           **THE COURT:**  Just fine.

13           **MR. STARK:**  Thank you, your Honor.

14           I —— I don't —— we don't object to the inclusion of

15   (telephonic interruption – indiscernible) in for of you with

16   evidence.  But I do ask your Honor, given that we have a

17   settlement, hopefully settlements mature to final documentation

18   and closing.

19           But in order to preserve the status quo, I'd ask only

20   that evidence is submitted for this hearing be contained only

21   for the purpose of this hearing and the fact that we're not

22   admitting it —— we're not objecting does not mean —— does not

23   preclude us from doing so in another hearing.

24           **THE COURT:**  I'm only admitted the declarations for

25   purposes of today's hearing.

9

1        **(Debtor's Exhibit Number 364-2 and 364-3 were received**

2  **into evidence.)**

3                **MR. WELCH:**  Understood.  Of course, your Honor.

4                **THE COURT:**  Okay.  Thank you.

5        **(Pause in the proceeding.)**

6                **MR. WELCH:**  So, your Honor, the settlement is as

7  follows subject to entry of the DIP order on the terms agreed

8  and under certification of counsel.

9                The rest of the DIP funding, roughly $30 million will

10  be initially funded by Avenue and Gates (phonetic), provided

11  that all noteholders shall be entitled to fund their pro rata

12  portion under that DIP if they wish to do so.

13                That is also consistent with our settlement with

14  Mr. Stark and the UCC.  Of course, we'll have to work that out

15  on the back end, your Honor.  But we want to make sure that

16  that option is available to those who want to participate.

17                **THE COURT:**  Okay.

18                **MR. WELCH:**  Importantly, as a condition to

19  participating in the DIP, it ── it will be a condition that all

20  lenders who participate in the DIP will be required to roll

21  into the exit facility, as that term is defined in the Plan

22  Support Agreement, subject to the following terms of the

23  settlement that we just reached this morning.

24                **THE COURT:**  Okay.

25                **MR. WELCH:**  The minority lenders, as we've described

1  them, will get 6 million of their DIP loans converted into the

2  super — new super senior debt facility, sometimes referred to

3  as the Blue Torch Take Out Facility or the Gates Backstop

4  Facility.

5          And that those loans will be peri with that facility

6  or either incorporated into that facility on the same terms

7  with customary sacred rights.

8          In consideration for such treatment, the minority

9  lenders agree to forego $4 million of their DIP loans, or exit

10  loans as they will be upon the emergence.  Those notes will be

11  cancelled.

12          **THE COURT:**  Okay.

13          **MR. WELCH:**  So just illustratively, your Honor, as

14  the current DIP claim is 36 million, it will be satisfied with

15  6 million of — of take back on the senior and 26 million of

16  exit notes.

17          And another amendment, or adjustment, or perhaps on

18  clarification, depending on your perspective with respect to

19  the exit facility, that will be cash pay, as opposed to pick

20  (phonetic).  Debtors were already prepared on that basis.

21          The Debtors will agree to reimburse up to $500,000 of

22  legal expenses for the minority lenders.  The DIP credit

23  agreement will be amended to remove the veto right and revised

24  only to provide customary language with respect to sacred

25  rights or material adverse changes to a individual holder.  The

1  RSA will so reflect that there's no veto right under there as

2  well, in terms of consent rights going forward.

3          Upon the roll-up of the DIP loans into the exit

4  facility, your Honor, also the Debtors will waive any claims

5  under the Exit Commitment Letter absolving the lenders

6  thereunder from additional funding obligations and for the

7  avoidance of doubt, the separate obligations provided for in

8  the PSA will not be affected by — by that waiver.

9          And finally, well almost finally, your Honor, the

10  parties will pursue the — the reorganization contemplated by

11  the PSA that has been filed, and will be amended to reflect

12  these changes.

13          Importantly, your Honor, we are going to settle a DIP

14  order and file that under COC on the record and based on these

15  negotiations, and — and the settlement we reached today.  I

16  believe we are prepared to include good faith findings in

17  your — in that order and request that your Honor enter them on

18  that basis.

19          **THE COURT:**  Okay.

20          **MR. WELCH:**  And I would say it is a condition of

21  funding that they are — of this deal that they are.

22          With that, your Honor, I believe that recites the —

23  the terms of the settlements, unless I have missed anything, I

24  believe I have not, we will not take any more of your time

25  today, unless there are others —

12

1          **MR. BROWN:**  Well, your Honor before we —— before we

2 adjourn, if I may be ——

3          **THE COURT:**  Okay. Wait.  Hold —— hold on a second.

4 I —— I got to do it one at a time.  So I'm going to start with

5 folks in the courtroom to see if anyone has comments.  And then

6 I'll open it up.

7          Mr. Welch, is there anything else you wish to say?

8          **MR. WELCH:**  No, your Honor.

9          **THE COURT:**  Anyone else in the courtroom have

10 anything to say?

11          **MR. TAYLOR:**  Your Honor, one comment, and then I'll

12 turn it over to Mr. —— well, actually, anyone in the courtroom.

13 But go ahead.

14          Well, no, your Honor, I was going to say —— again,

15 Mark Taylor for CCUR Holdings.  I think the good faith findings

16 were agreed to that they be part of the final DIP order.  And I

17 thought the language Mr. Welch gave the Court is a little mushy

18 on that.

19          And so I want to make sure that there is a —— an

20 agreement ——

21          **THE COURT:**  I ——

22          **MR. TAYLOR:**  —— that we're going to get the good

23 faith findings.

24          **MR. WELCH:**  I didn't think they were mushy, your

25 Honor.  We are going to ask for the good faith findings.

13

1          **MR. TAYLOR:**  Okay.  Good.

2          **THE COURT:**  Yeah.  Okay.

3          **MR. ROOSE:**  Your Honor, Matt Roose from Ropes and

4    Gray on behalf of the pre-petition noteholders and Ad Hoc ——

5    and DIP lenders.

6          I think what Mr. Welch said accurately reflects the

7    settlement that we have reached.  We thank the Court for your

8    indulgence over the last couple of weeks as we've moved a lot

9    of hearings around to get to this point.

10         But I think we're, you know, pleased with the

11   settlement we got.  And we hope this sets this case off on a

12   much smoother footing going forward.  Thank you.

13         **THE COURT:**  Thank you very much.

14         Anyone else in the courtroom?

15     **(No response.)**

16         **THE COURT:**  Okay.  Mr. Brown?

17         **MR. BROWN:**  One clarification, your Honor.  I —— I

18   heard Mr. Welch talk about an amendment to the DIP agreement.

19   And that was —— it was not my understanding that any amendments

20   to the DIP agreement were part of the settlement.  So I just

21   want to confirm that issue.  Because that —— that was news to

22   me.

23     **(Pause in the proceeding.)**

24         **MR. WELCH:**  Um, let me, if I may seek some

25   clarification on that.  I —— I don't understand Mr. Brown to be

14

1   asking on behalf of his client to continue after the following

2   settlement to exercise a veto right over these cases through

3   the DIP credit agreement.  I understood that that was resolved.

4            **THE COURT:**  Mr. Brown?

5            **MR. BROWN:**  Well, I —— my understanding is that any

6   amendments to the DIP agreement were never discussed.  That

7   seems to be something that, you know, maybe they think that

8   will be the result of —— of the settlement.

9            But he's —— he mentioned the DIP amendment.  And ——

10  and that's just not something that we agreed to.  We've agreed

11  to roll the exit —— into the exit, subject to the terms, the

12  economic terms ——

13           **THE COURT:**  Do ——

14           **MR. BROWN:**  —— he laid out.

15           **THE COURT:**  Do you believe you have a veto right?

16           **MR. BROWN:**  Well, your Honor, I believe that the ——

17  the DIP agreement says what it says.

18           **THE COURT:**  Right.  No that ——

19           **MR. BROWN:**  We don't have a veto right.  But the DIP

20  agreement says what it says.

21           **THE COURT:**  No.  No.  No.  But, yeah.  But, let me

22  just clarify.  Cause I just want there to be right.

23           Is there a veto right on consent?  Do you think you

24  have it, yes or no, based on this deal.

25           **MR. BROWN:**  We cannot stop —— we cannot stop the

15

1    roll, your Honor ⸺

2            THE COURT:  That's ⸺

3            MR. BROWN:  ⸺ based on this deal.

4            THE COURT:  I'm asking you a different question.  Do

5    you think you have a veto right on consent?

6        **(Pause in the proceeding.)**

7            MR. BROWN:  I'm ⸺ I'm ⸺ I guess I ⸺ consent for

8    what, your Honor?

9            THE COURT:  It ⸺ huh?  No, I'm just asking you.  Do

10   you think you have veto right on anything?  What do you think

11   you have a veto right on?  I get it's subject to final

12   documentation.

13           But once final documentation takes whatever form it

14   takes, do you have ⸺ do you think your client has a veto

15   right?  In other words, I'm just trying to smoke out so

16   everybody's really clear about what the deal is.

17           If someone's going to show up and say, subject to

18   final documentation, I still have a veto right over some other

19   portion of it.  And I want it to be clear, because I didn't

20   enter in a DIP amendment and the original DIP credit agreement

21   says what it says.

22           MR. BROWN:  Well, I think the ⸺ the required lenders

23   have a veto right vis-à-vis changes to the DIP agreement.  I

24   think that would ⸺ that would still be the case, your Honor.

25   But the ⸺ I ⸺ I just ⸺ I ⸺ my ears perked up when I heard

16

1   Mr. Welch say an amendment to the DIP agreement.  And I

2   don't —— I honestly don't exactly know what he's talking about.

3   But that's not something that I've heard that we agreed to.

4          **THE COURT:**  Okay.  Mr. Roose, maybe ——

5          **MR. ROOSE:**  It was our understanding that once we

6   move forward and we have a normal way DIP Credit Agreement, we

7   would have normal consent rights, a required lender definition

8   that, you know, 50 percent of DIP lenders.  And then everyone's

9   protected by sacred rights that you normally get in a credit

10  agreement.

11         Um, I —— I think maybe we could just take this off

12  line.  Cause I don't think this should be really a point of

13  dispute.  We're —— the veto right was in there for the RSA.

14  That has been resolved.  So I don't see —— I don't see it as

15  serving a purpose anymore.

16         We're not changing the DIP Credit Agreement going

17  forward.  We're not impairing anyone's rights going forward.

18  But I think if we just take this offline, we can deal with it

19  in the DIP Credit Agreement we —— we submit under certification

20  of counsel.

21         **THE COURT:**  Sounds like a drafting —— sounds like a

22  drafting.  I —— I got it.  I'll preserve everyone's right.  But

23  it sounds like a drafting.

24         **MR. ROOSE:**  I agree, your Honor.

25         **THE COURT:**  Okay.  So ——

1          **MR. BROWN:**  I think you, your Honor.

2          **THE COURT:**  Yeah.  No worries.

3          So, Mr. Welch, let me ask you this.  In terms of

4    timing, final order ⸺

5          **MR. WELCH:**  Today, your Honor.

6          **THE COURT:**  ⸺ gets uploaded.

7        **(Pause in the proceeding.)**

8          **THE COURT:**  And when do we come back again?  Or what

9    do ⸺ what do you think you're going to need over the next 20,

10   30 days.  I'm just thinking out loud since we're ⸺ since

11   we're ⸺ we're all here.  And there's going to be new ⸺ and I

12   got everybody's rights are preserved.

13         I'm just saying, assuming I sign an order today that

14   everybody agrees on, kind of what do the next 20, 30 days look

15   like?  Or should ⸺ maybe I should just say the month of May.

16         **MR. WELCH:**  Yeah.  It's a great question, your Honor.

17         So under the PSA, we have an obligation to get a ⸺ a

18   plan and disclosure on file in pretty quick order.  I think

19   it's seven days.  We're going to try and beat that, because

20   we're obviously trying to get out as soon as we can with the

21   path we have.

22         If ⸺ if your Honor would permit us to come back

23   perhaps on a status conference to schedule with you what the

24   next steps look like in terms of a disclosure statement, and in

25   terms of confirmation hearing, I think that ⸺ that would be

18

```
 1   helpful.
 2           I just worry doing it on the fly, we'll — we'll run
 3   into something —
 4           THE COURT:  No.  No.  No.  No.  I think —
 5           MR. WELCH:  — we won't think about.
 6           THE COURT:  If you're looking to get something on
 7   file, really quite frankly, by — by Friday by — by next
 8   Friday, right?
 9           MR. WELCH:  Right, your Honor.
10           THE COURT:  You're really looking at?
11       (Pause in the proceeding.)
12           THE COURT:  I —
13       (Pause in the proceeding.)
14           THE COURT:  Just pencil it in.  Just get with my Case
15   Manager.  Maybe we can just have a status conference.  I'm —
16   I'm out 5, 6, and 7.  But maybe like May 8th or May 9th, if it
17   make — if it makes sense.  I don't want to — but I know those
18   dates, somewhere in there would — would work for me.
19           I — I do think I want a status conference just to
20   kind of make sure that things are rolling where they're — kind
21   of in the right direction and that —
22           MR. WELCH:  We — we agree.
23           THE COURT:  — things are moving.
24           And — and if we need to have dates that we can
25   pencil in dates and kind of just get a firmer understanding as
```

19

1    to where we — where we are.

2          But let me just note —

3       **(Pause in the proceeding.)**

4       **THE COURT:**  I think it's always in the best interest

5    of parties, and especially with multiple parties that coming

6    together made a lot of sense to me.

7          I think, quite frankly, I didn't know where this was

8    going to go.  But it could have gone a bunch of different ways

9    for a bunch of different parties.

10         So, I — I'm happy.  And I'm not going to say

11   anything about the economic deal.  I think there's — things

12   are still being held together.

13         And so I think, subject to final documentation, means

14   subject to final documentation.  And — and — but I do

15   appreciate the parties' hard work.  I know that a lot of work

16   went on over the weekend, last weekend, which was not an easy

17   weekend to kind of work through.

18         And a lot of work went through this morning.  I will

19   stand ready to sign what you all need me to sign.  And if there

20   are additional times whenever you need, I will make myself

21   available for any party.

22         But let's plan on me signing an order today.  Let my

23   Case Manager know the minute it's up.  And then let's plan on

24   meeting May 8th or 9th at that point, maybe just to kind of

25   talk.

20

1          And I —— I'm just out the 5th, the 6th, and 7th.

2     **(Pause in the proceeding.)**

3          **THE COURT:**  I just think it makes sense maybe to

4 get —— get something on file.  Give us all a chance to look at

5 it.  And then we can all kind of pick dates.

6          But what I am saying is if, you know, it —— I'm

7 throwing stuff out.  If —— if, you know ——

8          **MR. WELCH:**  We'll take you up on it.

9          **THE COURT:**  —— pitching for like conditional approval

10 or any of that stuff, you know, go ahead and like don't call it

11 an omnibus date.  But you know you got the date there if you

12 need to tee something up, go ahead and tee it up on that day

13 and let's —— let's keep this going.

14          I —— I —— I want to move with efficiency in

15 connection with this case and get —— get what you need.  So

16 keep this —— if this is going to get back on track, then let's

17 keep it on track and let's get it right where it needs to go.

18          So, I appreciate it.  Anything else we need to talk

19 about?  Anyone wish to be heard in the courtroom before I turn

20 to the phone?

21     **(No response.)**

22          **THE COURT:**  Anyone on the line wish to be heard about

23 anything?

24          **MR. BROWN:**  Your Honor, I just want to thank the

25 Court for the repeated indulgence of the extensions.  I —— I

**TRINITY TRANSCRIPTION SERVICES**

21

1  believe, you know, with the agreement to roll, we've given the

2  Debtor what they need to move forward.  And —— and we're

3  looking forward to a resolution.

4      **THE COURT:**  All right, folks.  Thank you very much.

5  Have a good day.  Thank you.

6      **MR. WELCH:**  Thank you, your Honor.

7      **THE COURT:**  Everyone's excuse.

8      **(This proceeding was adjourned at 01:25 p.m.)**

9

10                    * * * * * * * * *

11

12                    CERTIFICATION

13

14      I certify that the foregoing is a correct transcript

15  from the electronic sound recording of the proceedings in the

16  above-entitled matter.

17

18  _/s/ Cheryl L. Battaglia_          April 25, 2025

19     Transcriber                      Date

20  4:25-BK-90023

21  04/23/25 – 04/25/25