# IN THE UNITED STATES BANKRUPTCY COURT FOR SOUTHERN DISTRICT OF TEXAS

|  |  |  |
|---|---|---|
| | ) | |
| **In re** | ) | **Chapter 11** |
| | ) | |
| **DOCUDATA SOLUTIONS L.C., et al.** | ) | **Case No. 25-90023 (Jointly Administered)** |
| | ) | |
| **Debtors.** | ) | |
| | ) | |

## STATEMENT OF FINANCIAL AFFAIRS FOR

### HOV Services, Inc.

### CASE NO. 25-90045

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | |
|---|---|
| In re: | : Chapter 11 |
| | : |
| DOCUDATA SOLUTIONS, L.C., *et al.*, | : 25-90023 (CML) |
| | : |
| Debtors.[1] | : (Jointly Administered) |
| | : |
| | : |

**GLOBAL NOTES, METHODOLOGY, AND SPECIFIC DISCLOSURES**
**REGARDING THE DEBTORS' SCHEDULES OF ASSETS AND**
**LIABILITIES AND STATEMENTS OF FINANCIAL AFFAIRS**

DOCUDATA SOLUTIONS, L.C. ("Docudata") and its debtor affiliates, as debtors and debtors in possession in the above-captioned chapter 11 cases (collectively, the "Debtors"), filed their respective Schedules of Assets and Liabilities (each, a "Schedule" and, collectively, the "Schedules") and Statements of Financial Affairs (each, a "Statement" and, collectively, the "Statements" and, together with the Schedules, the "Schedules and Statements") with the United States Bankruptcy Court for the Southern District of Texas (the "Court"). The Debtors, with the assistance of their legal and financial advisors, prepared the unaudited Schedules and Statements in accordance with section 521 of title 11 of the United States Code, 11 U.S.C. §§ 101-1532 (the "Bankruptcy Code"), rule 1007 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), and rule 1007-1 of the Bankruptcy Local Rules for the Southern District of Texas.

These global notes and statements of limitations, methodology, and disclaimers regarding the Debtors' Schedules and Statements (the "Global Notes") pertain to, are incorporated by reference in, and comprise an integral part of, all of the Schedules and Statements, and should be referred to, and referenced in connection with, any review of the Schedules and Statements.

The Schedules and Statements reflect the Debtors' reasonable efforts to report certain financial information of each Debtor on a stand-alone, unconsolidated basis. These Schedules and Statements neither purport to represent financial statements prepared in accordance with Generally Accepted Accounting Principles in the United States ("GAAP"), nor are they intended to be fully reconciled with the financial statements of each Debtor. The Schedules and Statements are unaudited and contain information that is subject to further review and potential adjustment.

In preparing the Schedules and Statements, the Debtors relied on financial data derived from their books and records that was available at the time of such preparation. Although the

---

[1]  A complete list of each of the Debtors in these chapter 11 cases may be obtained on the website of the Debtors' proposed claims and noticing agent at https://omniagentsolutions.com/DocuDataSolutions. The Debtors' mailing address for the purposes of these cases is 2701 E. Grauwyler Road, Irving, TX 75061 USA.

Debtors have made commercially reasonable efforts to ensure the accuracy and completeness of the Schedules and Statements, subsequent information or discovery may result in material changes to the Schedules and Statements. As a result, inadvertent errors or omissions may exist. Accordingly, the Debtors and their directors, managers, officers, agents, attorneys and financial advisors do not guarantee or warrant the accuracy or completeness of the data that is provided herein, and shall not be liable for any loss or injury arising out of or caused in whole or in part by the acts, errors, or omissions, whether negligent or otherwise, in procuring, compiling, collecting, interpreting, reporting, communicating, or delivering the information contained herein or the Schedules and Statements. In no event shall the Debtors or their directors, managers, officers, agents, attorneys and financial advisors be liable to any third party for any direct, indirect, incidental, consequential, or special damages (including, but not limited to, damages arising from the disallowance of a potential claim against the Debtors or damages to business reputation, lost business, or lost profits), whether foreseeable or not and however caused, even if the Debtors or their directors, managers, officers, agents, attorneys, and financial advisors are advised of the possibility of such damages.

The Schedules and Statements have been signed by Matthew Brown, who is Interim Chief Financial Officer of and an authorized signatory for each of the Debtors. In reviewing and signing the Schedules and Statements, Matthew Brown has relied upon the efforts, statements, advice, and representations of personnel of the Debtors and the Debtors' advisors and other professionals. Given the scale of the Debtors' businesses, Matthew Brown has not (and practically could not have) personally verified the accuracy of each statement and representation in the Schedules and Statements including, but not limited to, statements and representations concerning amounts owed to creditors, classification of such amounts, and creditor addresses.

Subsequent receipt of information or an audit may result in material changes in financial data requiring amendment of the Schedules and Statements. Accordingly, the Schedules and Statements remain subject to further review and verification by the Debtors. The Debtors reserve their right to amend the Schedules and Statements from time-to-time as may be necessary or appropriate.

## <u>Global Notes and Overview of Methodology</u>

1. **<u>Description of the Cases</u>**. The Debtors commenced these voluntary cases under chapter 11 of the Bankruptcy Code on March 3, 2025 (the "<u>Petition Date</u>"). The Debtors are authorized to operate their businesses and manage their properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code. On March 4, 2025, the Court entered an order authorizing the joint administration of the cases pursuant to Bankruptcy Rule 1015(b) [Docket No. 45]. Notwithstanding the joint administration of the Debtors' cases for procedural purposes, each Debtor has filed its own Schedules and Statements.

2. **<u>Global Notes Control</u>**. In the event that the Schedules or Statements differ from any of the Global Notes, the Global Notes shall control.

3. **<u>Reservation of Rights</u>**. Reasonable efforts have been made to prepare and file complete and accurate Schedules and Statements; however, as noted above, inadvertent errors or omissions may exist. The Debtors reserve all rights to amend and supplement the Schedules and

Statements as may be necessary or appropriate but do not undertake any obligation to do so; *provided*, that the Debtors, their agents, and their advisors expressly do not undertake any obligation to update, modify, revise, or recategorize the information provided herein or to notify any third party should the information be updated, modified, revised, or recategorized, except as required by applicable law, from time to time. Nothing contained in the Schedules, Statements, or Global Notes shall constitute a waiver of rights with respect to these chapter 11 cases including, but not limited to, any rights or claims of the Debtors against any third party or issues involving substantive consolidation, defenses, statutory or equitable subordination, and/or causes of action arising under the provisions of chapter 5 of the Bankruptcy Code and any other relevant non-bankruptcy laws to recover assets or avoid transfers. Any specific reservation of rights contained elsewhere in the Global Notes does not limit in any respect the general reservation of rights contained in this paragraph.

a. **No Admission.** Nothing contained in the Schedules and Statements is intended as, or should be construed as, an admission or stipulation of the validity of any claim against any Debtor, any assertion made therein or herein, or a waiver of any of the Debtors' rights to dispute any claim or assert any cause of action or defense against any party.

b. **Claims Description.** Any failure to designate a claim listed on the Schedules and Statements as "disputed," "contingent," or "unliquidated" does not constitute an admission by the Debtors that such amount is not "disputed," "contingent," or "unliquidated." Each Debtor reserves the right to dispute and to assert setoff rights, counterclaims, and defenses to any claim reflected on its Schedules or Statements on any grounds, including, but not limited to, amount, liability, priority, status, and classification, and to otherwise subsequently designate any claim as "disputed," "contingent," or "unliquidated." The listing of a claim does not constitute an admission of liability by the Debtors, and the Debtors reserve the right to amend the Schedules and Statements accordingly.

c. **Recharacterization.** The Debtors have made reasonable efforts to correctly characterize, classify, categorize, and designate the claims, assets, executory contracts, unexpired leases, and other items reported in the Schedules and Statements. Nevertheless, due to the complexity of the Debtors' businesses, the Debtors may not have accurately characterized, classified, categorized, or designated certain items and/or may have omitted certain items. Accordingly, the Debtors reserve all of their rights to recharacterize, reclassify, recategorize, or redesignate items reported in the Schedules and Statements at a later time as necessary or appropriate, including, without limitation, whether contracts or leases listed herein were deemed executory or unexpired as of the Petition Date and remain executory and unexpired postpetition.

d. **Classifications.** The listing of (a) a claim (i) on Schedule D as "secured," or (ii) on Schedule E/F as either "priority" or "unsecured," or (b) a contract or lease on Schedule G as "executory" or "unexpired" does not constitute

an admission by the Debtors of the legal rights of the claimant or contract counterparty, or a waiver of the Debtors' rights to recharacterize or reclassify such claim or contract pursuant to a schedule amendment, claim objection or otherwise. Moreover, although the Debtors may have scheduled claims of various creditors as secured claims for informational purposes, no current valuation of the Debtors' assets in which such creditors may have a security interest has been undertaken. Except as provided in an order of the Court, the Debtors reserve all rights to dispute and challenge the secured nature or amount of any such creditor's claims or the characterization of the structure of any transaction, or any document or instrument related to such creditor's claim, including whether a lien or security interest is properly perfected under applicable law or subject to any potential avoidance actions.

e.    **Estimates and Assumptions**.   The preparation of the Schedules and Statements required the Debtors to make certain reasonable estimates and assumptions with respect to the reported amounts of assets and liabilities, the amount of contingent assets and contingent liabilities, and the reported amounts of revenues and expenses as of the Petition Date. Actual results could differ materially from such estimates. The Debtors reserve all rights to amend the reported amounts of assets and liabilities to reflect changes in those estimates or assumptions.

f.    **Causes of Action**.   Despite reasonable efforts, the Debtors may not have identified and/or set forth all of their causes of action (filed or potential) against third parties as assets in their Schedules and Statements, including, without limitation, avoidance actions arising under chapter 5 of the Bankruptcy Code and actions under other relevant bankruptcy and non-bankruptcy laws to recover assets. The Debtors reserve all rights with respect to any causes of action (including avoidance actions), controversy, right of setoff, cross claim, counterclaim, or recoupment and any claim on contracts or for breaches of duties imposed by law or in equity, demand, right, action, lien, indemnity, guaranty, suit, obligation, liability, damage, judgment, account, defense, power, privilege, license, and franchise of any kind or character whatsoever, known, unknown, fixed or contingent, matured or unmatured, suspected or unsuspected, liquidated or unliquidated, disputed or undisputed, secured or unsecured, assertable directly or derivatively, whether arising before, on, or after the Petition Date, in contract or in tort, in law or in equity, or pursuant to any other theory of law they may have (collectively, "Causes of Action"), and neither the Global Notes nor the Schedules and Statements shall be deemed a waiver of any such claims, Causes of Action, or avoidance actions, or in any way prejudice or impair the assertion of such claims or Causes of Action.

g.    **Property Rights**.   Exclusion of certain property rights, including without limitation intellectual, real, personal, or otherwise, from the Schedules and

4

Statements should not be construed as an admission that such property rights have been abandoned, have been terminated or otherwise expired by their terms, or have been assigned or otherwise transferred pursuant to a sale, acquisition, or other transaction. Conversely, inclusion of certain property rights shall not be construed to be an admission that such property rights have not been abandoned, have not been terminated, or otherwise have not expired by their terms, or have not been assigned or otherwise transferred pursuant to a sale, acquisition, or other transaction. The Debtors have made every effort to attribute property rights to the rightful Debtor owner, however, in some instances, property rights owned by one Debtor may, in fact, be owned by another. Accordingly, the Debtors reserve all of their rights with respect to the legal status of any and all property rights.

h. **Insiders**. In the circumstances where the Schedules and Statements require information regarding "insiders," the Debtors have included information with respect to the individuals and entities whom the Debtors believe may be included in the definition of "insider" set forth in section 101(31) of the Bankruptcy Code during the relevant time periods. Such individuals may no longer serve in such capacities. The listing or omission of a party as an "insider" for the purposes of the Schedules and Statements is for informational purposes and is not intended to be nor should be construed as an admission that those parties are insiders for purposes of section 101(31) of the Bankruptcy Code. Information regarding the individuals or entities listed as insiders in the Schedules and Statements may not be used for: (a) the purposes of determining (i) control of the Debtors; (ii) the extent to which any individual or entity exercised management responsibilities or functions; (iii) corporate decision-making authority over the Debtors; or (iv) whether such individual or entity (or the Debtors) could successfully argue that they are not an insider under applicable law, including the Bankruptcy Code and federal securities laws, or with respect to any theories of liability or (b) any other purpose. Furthermore, certain of the individuals or entities identified as insiders may not have been insiders for the entirety of the twelve-month period before the Petition Date, but the Debtors have included them herein out of an abundance of caution. The Debtors reserve all rights with respect thereto.

i. **Use of Artificial Intelligence**. In certain situations, the Debtors and/or the Debtors' advisors may have used artificial intelligence and/or machine learning technology in preparation of the information included in the SOFAs and Schedules. AI has many benefits including the ability to review large amounts of data in a relatively short period of time, and generate complex output based upon such data. However, AI technology has inherent limitations and can produce inaccurate results. In all cases where AI was utilized, the Debtors and/or the Debtors' advisors made reasonable efforts to have a human review and edit the final content.

However, inaccuracies may occur and consequently no assurances can be made regarding the information derived based upon AI technology that was included in the SOFAs and Schedules.

## 4. **Methodology**

a. **Basis of Presentation**.  For financial reporting purposes, the Debtors generally prepare consolidating financial statements, which include financial information for both the Debtors and certain non-Debtor subsidiaries and affiliates.  Combining the assets and liabilities set forth in the Debtors' Schedules and Statements would result in amounts that would be substantially different from financial information that would be prepared on a consolidated basis under GAAP, due to eliminations related to intercompany and other transactions recorded on the Debtors' financial statements.  Therefore, these Schedules and Statements neither purport to represent financial statements prepared in accordance with GAAP nor are they intended to fully reconcile to the financial statements prepared by the Debtors.  Unlike the consolidating financial statements, these Schedules and Statements, except where otherwise indicated, reflect the assets and liabilities of each separate Debtor. Information contained in the Schedules and Statements has been derived from the Debtors' books and records and historical financial statements.  Intercompany balances reflect available information at the time of filing and are subject to material change.  The Debtors do not net intercompany accounts on a monthly basis, and certain balances may reflect intercompany transactions that occurred over the course of multiple years.

The Debtors attempted to attribute the assets and liabilities to the proper Debtor entity.  However, due to limitations within Debtors' accounting systems, it is possible that not all assets or liabilities have been recorded with the correct legal entity on the Schedules and Statements.  Accordingly, the Debtors reserve all rights to supplement and/or amend the Schedules and Statements in this regard.

Given the uncertainty surrounding the collection, ownership, and valuation of certain assets and the amount and nature of certain liabilities, including contingent liabilities, a Debtor may report more assets than liabilities.  Such report shall not constitute an admission that such Debtor was solvent on the Petition Date or at any time prior to or after the Petition Date.  Likewise, a Debtor reporting more liabilities than assets shall not constitute an admission that such Debtor was insolvent on the Petition Date or at any time prior to or after the Petition Date.  For the avoidance of doubt, nothing contained in the Schedules and Statements is indicative of the Debtors' enterprise value.  The Schedules and Statements contain unaudited information that is subject to further review and potential adjustment.

b. **Reporting Date**.  Unless otherwise noted, the Schedules and Statements generally reflect the Debtors' books and records as of the close of business on February 28, 2025, and as of the Petition Date for liabilities, adjusted for certain authorized payments under the First Day Orders (as defined herein).

c.     **Confidentiality or Sensitive Information**.  There may be instances in which certain information in the Schedules and Statements intentionally has been redacted due to, among other things, the nature of an agreement between a Debtor and a third party, local restrictions on disclosure, concerns about the confidential or commercially sensitive nature of certain information (*e.g.*, personally identifiable information of individuals), or concerns for the privacy of the Debtors' creditors, employees, and customers.  The alterations will be limited to only what is necessary to protect the Debtors or the applicable third party.  The Debtors may also be authorized or required to redact certain information from the public record pursuant to orders of the Court authorizing the Debtors to redact, seal, or otherwise protect such information from public disclosure.[2]

d.     **Consolidated Entity Accounts Payable and Disbursement Systems**.  Receivables and payables among the Debtors and among the Debtors and their non-Debtor affiliates are reported on Statement 4, Schedule A/B, and Schedule E/F, respectively, per the Debtors' unaudited books and records.  As described more fully in the *Emergency Motion Of Debtors For Entry Of Interim And Final Orders (I) Authorizing Debtors To (A) Continue Existing Cash Management System, (B) Maintain Existing Business Forms, And (C) Continue Intercompany Arrangements And Transactions And (II) Graning Related Relief* [Docket No. 10] (the "Cash Management Motion"), the Debtors utilize an integrated, centralized cash management system in the ordinary course of business to collect, concentrate, and disburse funds generated by their operations (the "Cash Management System").  The Debtors maintain a consolidated accounts payable and disbursements system to pay operating and administrative expenses through various disbursement accounts.

The listing of any amounts with respect to such receivables and payables is not, and should not be construed as, an admission or conclusion of the Debtors regarding the allowance, classification, validity, or priority of such account or characterization of such balances as debt, equity, or otherwise.  For the avoidance of doubt, the Debtors reserve all rights, claims, and defenses in connection with any and all intercompany receivables and payables including, but not limited to, with respect to the characterization of intercompany claims, loans, and notes.

Prior to the Petition Date, the Debtors and certain non-Debtor affiliates and subsidiaries engaged in intercompany transactions (the "Intercompany Transactions") in the ordinary course of business, which resulted in intercompany receivables and payables (the "Intercompany Claims").  The Debtors maintain strict records of the Intercompany Claims and can ascertain, trace, and account for each of the Intercompany Transactions.  Pursuant to the final order approving the Cash Management Motion [Docket No. 307], the Court has granted the Debtors

---

[2]  Such as the *Order (I) Authorizing the Debtors to File a Consolidated Creditor Matrix and List of the 30 Largest Unsecured Creditors; (II) Authorizing the Debtors to Redact Certain Personally Identifiable Information; (III) Approving Form and Manner of Notice of Commencement ; and (IV) Granting Related Relief* [Docket No. 56].

authority to continue to engage in Intercompany Transactions in the ordinary course of business subject to certain limitations set forth therein. Thus, intercompany balances as of the Petition Date, as set forth in Schedule A/B and Schedule E/F may not accurately reflect current positions.

In addition, certain of the Debtors act on behalf of or make payments for other Debtors and certain non-Debtor affiliates and subsidiaries. Reasonable efforts have been made to indicate the ultimate beneficiary of a payment or obligation. Whether a particular payment or obligation was incurred by the entity actually making the payment or incurring the obligation is a complex question of applicable non-bankruptcy law, and nothing herein constitutes an admission that any Debtor entity is an obligor with respect to any such payment. The Debtors reserve all rights to reclassify any payment or obligation as attributable to another entity and all rights with respect to the proper accounting and treatment of such payments and liabilities.

e.   **Duplication**. Certain of the Debtors' assets, liabilities, and prepetition payments may properly be disclosed in response to multiple parts of the Statements and Schedules. To the extent these disclosures would be duplicative, the Debtors have endeavored to only list once such assets, liabilities, and prepetition payments.

f.   **Net Book Value of Assets**. In many instances, current market valuations are not maintained by or readily available to the Debtors. It would be prohibitively expensive, unduly burdensome, and an inefficient use of estate resources for the Debtors to obtain current market valuations for all assets. As such, unless otherwise indicated, net book values as of the Petition Date are presented for all assets. When necessary, the Debtors have indicated that the value of certain assets is "Unknown" or "Undetermined." Amounts ultimately realized may vary materially from net book value (or other value so ascribed). Accordingly, the Debtors reserve all rights to amend, supplement, and adjust the asset values set forth in the Schedules and Statements. Assets that have been fully depreciated or that were expensed for accounting purposes either do not appear in these Schedules and Statements or are listed with a zero-dollar value, as such assets have no net book value. The omission of an asset from the Schedules and Statements does not constitute a representation regarding the ownership of such asset, and any such omission does not constitute a waiver of any rights of the Debtors with respect to such asset. Nothing in the Debtors' Schedules and Statements shall be, or shall be deemed to be, an admission that any Debtor was solvent or insolvent as of the Petition Date or any time prior to the Petition Date.

g.   **Currency**. All amounts shown in the Schedules and Statements are in U.S. Dollars, unless otherwise indicated.

h.   **Payment of Prepetition Claims Pursuant to First Day Orders**. Following the Petition Date, the Court entered various orders authorizing the Debtors to, among other things, pay certain prepetition: (i) service fees and charges assessed by the Debtors' banks; (ii) insurance obligations; (iii) employee wages, salaries, and related items (including, but not limited to, obligations arising under employee

benefit programs and supplemental workforce obligations); (iv) taxes and assessments; (v) customer program obligations; and (vi) critical vendor obligations (collectively, with other relief granted by the Court with respect to motions filed by the Debtors on or immediately after the Petition Date, the "<u>First Day Orders</u>"). Accordingly, outstanding liabilities may have been reduced by any Court-approved postpetition payments made on prepetition payables.  To the extent these prepetition liabilities have been satisfied, they are not listed in the Schedules and Statements, unless otherwise indicated.  The Debtors reserve the right to update the Schedules and Statements to reflect additional payments made pursuant to an order of the Court (including the First Day Orders).

i.    **Other Paid Claims**.  To the extent the Debtors have reached any postpetition settlement with a vendor or other creditor, the terms of such settlement will prevail, supersede amounts listed in the Schedules and Statements, and shall be enforceable agreement by all parties, subject to any necessary Court approval.  To the extent the Debtors pay any of the claims listed in the Schedules and Statements pursuant to any orders entered by the Court, the Debtors reserve all rights to amend and supplement the Schedules and Statements and take other action, such as filing claims objections, as is necessary and appropriate to avoid overpayment or duplicate payment for such liabilities.

j.    **Setoffs**.  The Debtors routinely incur setoffs in the ordinary course of business that arise from various items including, but not limited to, intercompany transactions, related-party transactions, counterparty settlements, pricing discrepancies, overpayments, returns, warranties, charge backs, credits, rebates, returns, refunds, negotiations, and/or disputes between the Debtors and their customers and/or suppliers.  These normal, ordinary course setoffs and nettings are common in the Debtors' line of business.  Due to the voluminous nature of setoffs and nettings, it would be unduly burdensome and costly for the Debtors to list each such transaction. Therefore, these setoffs are not independently accounted for, and, accordingly, are excluded from the Schedules and Statements.  Any setoff of a prepetition debt to be applied against the Debtors is subject to the automatic stay and must comply with section 553 of the Bankruptcy Code.

k.    **Accounts Receivable**.  The accounts receivable information listed on the Schedules includes receivables from the Debtors' customers and are calculated net of any amounts that, as of the Petition Date, may be owed to such customers in the form of offsets or other price adjustments pursuant to the Debtors' customer program policies and day-to-day operating policies and any applicable Court order.  Certain intercompany receivables listed on the Schedules have been incurred pursuant to one or  more of  the Company's Receivables Facilities[3] (as described in greater detail in Section II.F of the Disclosure Statement).  The Debtors believe that the transactions underlying these receivables constitute true

---

[3]    As defined in the *Disclosure Statement for Joint Plan of Reorganization of DocuData Solutions, L.C. and Its Debtor Affiliates Under Chapter 11 of the Bankruptcy Code* [Docket No. 437] (the "<u>Disclosure Statement</u>").

sales but nevertheless have included them on the Schedules out of an abundance of caution.

l.  **Property and Equipment**.  Unless otherwise indicated, owned property and equipment are stated at net book value.  The Debtors may lease furniture, fixtures, and equipment from certain third-party lessors, or may have secured financing arrangements with third parties for the payment of such equipment.  To the extent possible, any such leases are set forth in the Schedules and Statements.  Nothing in the Statements or Schedules is or shall be construed as an admission or determination as to the legal status of any lease (including whether any lease is a true lease or a financing arrangement), and the Debtors reserve all rights with respect to any of such issues including, but not limited to, the recharacterization thereof.

m.  **Liens**.  The inventory, property, and equipment listed in the Statements and Schedules are presented without consideration of any asserted mechanics', materialmen, or other liens that may attach (or have attached) to such property and equipment.  UCC liens as of the Petition Date, if any, are listed on Schedule D.  The Debtors reserve their right to dispute or challenge the validity, perfection, or immunity from avoidance of any lien purported to be perfected by a creditor.

n.  **Excluded Assets and Liabilities**.  Certain liabilities resulting from accruals, liabilities recognized in accordance with GAAP, and/or estimates of long-term liabilities either are not payable at this time or have not yet been reported.  Therefore, they do not represent specific claims as of the Petition Date and are not otherwise set forth in the Schedules.  Additionally, certain deferred assets, charges, accounts or reserves recorded for GAAP reporting purposes only, and certain assets with a net book value of zero are not included in the Schedules.  Excluded categories of assets and liabilities include, but are not limited to, deferred tax assets and liabilities, deferred income, deferred charges, self-insurance reserves, favorable lease rights, and unfavorable lease liabilities.  In addition, and as set forth above, the Debtors may have excluded amounts for which the Debtors have paid or have been granted authority to pay pursuant to the First Day Orders or other order that may be entered by the Court.  Other immaterial assets and liabilities may have been excluded.

o.  **Undetermined Amounts**.  The description of an amount as "unknown," or "undetermined" is not intended to reflect upon the materiality of such amount.

p.  **Totals**.  All totals that are included in the Schedules and Statements represent totals of all the known amounts included in the Schedules and Statements and exclude items identified as "unknown" or "undetermined."  If there are unknown or undetermined amounts, the actual totals may be materially different from the listed totals.  To the extent a Debtor is a guarantor of debt held by another Debtor, the amounts reflected in these Schedules are inclusive of each Debtor's guarantor obligations.

q.      **Credits and Adjustments**.  The claims of individual creditors for, among other things, goods, products, services, or taxes are listed as the amounts entered on the Debtors' books and records and may either (i) not reflect credits, allowances, or other adjustments due from such creditors to the Debtors or (ii) be net of accrued credits, allowances, or other adjustments that are actually owed by a creditor to the Debtors on a postpetition basis on account of such credits, allowances, or other adjustments earned from prepetition payments and postpetition payments, if applicable.  The Debtors reserve all of their rights with regard to such credits, allowances, and other adjustments, including but not limited to, the right to assert claims objections and/or setoffs with respect to the same.

r.      **Guarantees and Other Secondary Liability Claims**.  The Debtors exercised their reasonable efforts to locate and identify guarantees and other secondary liability claims (the "Guarantees") in their secured financings, debt instruments, and other agreements.  However, a review of these agreements, specifically the Debtors' unexpired leases and executory contracts, is ongoing.  Where such Guarantees have been identified, they have been included in the relevant Schedules G and H for the affected Debtor or Debtors.  The Debtors have reflected the obligations under the Guarantees for both the primary obligor and the guarantors with respect to their secured financings and debt instruments on Schedule H.  Guarantees embedded in the Debtors' executory contracts, unexpired leases, secured financings, debt instruments, and other agreements inadvertently may have been omitted.  The Debtors may identify additional Guarantees as they continue their review of their books and records and contractual agreements.  The Debtors reserve their rights, but are not required, to amend the Schedules and Statements if additional Guarantees are identified.

s.      **Leases**.  In the ordinary course of their business, the Debtors may lease property from certain third-party lessors for use in the daily operation of their business.  Any such leases are set forth in Schedule G and any amount due under such leases that was outstanding as of the Petition Date is listed on Schedule E/F.  The property subject to any of such leases is not reflected in Schedule A/B as either owned property or assets of the Debtors nor is such property reflected in the Debtors' Statements as property or assets of third parties within the control of the Debtors.  However, in accordance with ASC 842, the Debtors have listed the value of the right of use assets related to such leases in the schedule of assets.

t.      **Executory Contracts and Unexpired Leases**.  Although the Debtors made diligent efforts to attribute each executory contract and unexpired lease to its rightful Debtor, in certain instances, the Debtors may have inadvertently failed to do so.  Accordingly, the Debtors reserve all of their rights with respect to the named parties of any and all executory contracts and unexpired leases, including the right to amend Schedule G.  In addition, although the Debtors have made diligent attempts to properly identify executory contracts and unexpired leases, the inclusion or omission of a contract or lease on Schedule G does not constitute an admission or waiver as to the executory or unexpired nature (or non-executory or expired nature) of the contract or lease, or an admission as to the existence or

11

validity of any Claims held by any counterparty to such contract or lease. Furthermore, while the Debtors have made diligent attempts to properly identify all executory contracts and unexpired leases, inadvertent errors, omissions, or over-inclusion may have occurred.

u.  **Allocation of Liabilities**.  The Debtors, in consultation with their advisors, have sought to allocate liabilities between the prepetition and postpetition periods based on the information and research that was conducted in connection with the preparation of the Schedules and Statements.  As additional information becomes available and further research is conducted, the allocation of liabilities between prepetition and postpetition periods may change.  The Debtors reserve the right to amend and/or supplement the Schedules and Statements as they deem appropriate in this regard.

v.  **Unliquidated Claim Amounts**.  Claim amounts that could not be readily quantified by the Debtors are scheduled as "unliquidated."

## Specific Schedule Disclosures

Schedules A/B, D, E/F, G, and H may contain explanatory or qualifying notes that pertain to the information provided in the Schedules.  Those Schedule-specific notes are incorporated herein by reference.  Unless otherwise noted, the asset totals listed on the Schedules are derived from amounts included in the Debtors' books and records as of February 28, 2025.  To the extent there are unknown or undetermined amounts, the actual total may be different from the total listed.

1.  **Schedule A/B**

a.  **Part 1**.  As more particularly described in the Cash Management Motion, the Debtors' Cash Management System is composed of ninety-two (92) bank accounts, (each, a "Bank Account" and, collectively, the "Bank Accounts").  A majority of the Debtors' Bank Accounts are located in the United States and are maintained with PNC Bank, National Association ("PNC"), Bank of America Corporation ("BoA"), Wells Fargo Bank, N.A. ("Wells Fargo"), and The Bank of Texas ("Bank of Texas").  Two Bank Accounts are maintained in Canada at Royal Bank of Canada ("RBC").  Further details with respect to the Cash Management System are provided in the Cash Management Motion.

b.  **Part 2**.  The Debtors maintain certain deposits in the ordinary course of their business operations.  These deposits are included in the Schedules for the appropriate legal entity.  Types of deposits include, among other things, security deposits, and utility deposits.  Certain prepaid or amortized assets are not listed in Part 2 in accordance with the Debtors' accounting policies.  The amounts listed in Part 2 do not necessarily reflect values that the Debtors will be able to collect or realize.

c.    **Part 3**.  The accounts receivable balances in this section exclude intercompany receivables.  The Debtors believe that the transactions underlying the Company's Receivables Facilities constitute true sales but nevertheless have included them on the Schedules out of an abundance of caution.

d.    **Part 4**.  Part 4 identifies only subsidiaries owned directly by the Debtors.  Subsidiaries owned indirectly by the Debtors are not listed.

e.    **Part 5**.  The Debtors' inventory is valued on a cost basis. Furthermore, the Debtors may have acquired certain inventory within twenty (20) days before the Petition Date, but the Debtors may have not yet determined the amount or value of such inventory.  The Debtors reserve all rights with respect to the valuation of any inventories.

f.    **Part 7**.  Actual realizable values may vary significantly relative to net book values as of the Petition Date.

g.    **Part 8**.  Property leased by the Debtors is listed in Schedule G and is not listed in Part 8 of Schedule A/B, with the exception of any lease or security deposits for such property, which is listed on Schedule A/B.  Actual realizable values of the assets identified may vary significantly relative to net book values as of the Petition Date.

h.    **Part 9**.  The Debtors' net book value as of February 28, 2025 is based on right-of-use asset in accordance with ASC 842.  This is not the valuation of the applicable landlord's land and building.  Rather, the net book value reflects the carrying value of the Debtors' balance sheet as accounted for under Accounting Standards Codification 842 Leases.

i.    **Part 10**.  Part 10 identifies the various trademarks, patents, and website domains owned and maintained by the Debtors.  The Schedules do not list the value of such intangible assets.  Various software licenses the Debtors use for their operations which are easily obtainable and hold minimal value are not included.

j.    **Part 11**.  The Debtors maintain a portfolio of insurance policies to protect against unforeseen incidents and losses and describe such policies in the *Order (I) Authorizing the Debtors to (A) Pay Prepetition Insurance Obligations, (B) Maintain Insurance Policies Postpetition, (C) Maintain the Bonding Program, (D) Maintain Postpetition Financing of Insurance Premiums; and (E) Honor Letters of Credit; and (II) Granting Related Relief* [Docket No. 64] (the "Insurance Order").  Such policies are maintained by an affiliate of the Debtors, Exela Technologies, Inc., for the benefit of the Debtors.  This listing does not include any policies owned by suppliers to which one or more Debtor entities may have been added as a beneficiary.

2.  **Schedule D**

a.    The claims listed on Schedule D, as well as the guarantees of those claims listed on Schedule H, arose and were incurred on various dates.  To the best of the Debtors'

13

knowledge, all claims listed on Schedule D arose, or were incurred before the Petition Date.

b.      Except as otherwise agreed or stated pursuant to a stipulation, agreed order, or general order entered by the Court that is or becomes final, the Debtors and/or their estates reserve their right to dispute and challenge the validity, perfection, or immunity from avoidance of any lien purported to be granted or perfected in any specific asset to a creditor listed on Schedule D of any Debtor and, subject to the foregoing limitations, note as follows:   (a) although the Debtors may have scheduled claims of various creditors as secured claims for informational purposes, no current valuation of the Debtors' assets in which such creditors may have a lien has been undertaken, and (b) the descriptions provided on Schedule D are intended to be a summary.   Reference to the applicable loan agreements and related documents is necessary for a complete description of the collateral and the nature, extent, and priority of any liens.

c.      The Debtors have not listed on Schedule D any parties whose claims may be secured through rights of setoff, deposits, or advance payments posted by, or on behalf of, the Debtors, or judgment or statutory lien rights.  The Debtors have not investigated which of the claims may include such rights, and their population is currently unknown.

d.      The amount of the claims listed on Schedule D include both principal and any interest accrued through February 28, 2025.

## 3.  Schedule E/F

a.      **Part 1**.  The claims listed on Part 1 arose and were incurred on various dates.  A determination of the date upon which each claim arose or was incurred would be unduly burdensome and cost prohibitive.  Accordingly, no such dates are included for each claim listed on Part 1.  To the best of the Debtors' knowledge, all claims listed on Part 1 arose or were incurred before the Petition Date.

The Debtors have not listed on Part 1 any wage or wage-related obligations or any tax or tax-related obligations that the Debtors have paid pursuant to the First Day Orders on Part 1.  The Debtors believe that a majority of such claims for wages, salaries, expenses, benefits and other compensation that accrued prepetition, as described in the First Day Orders, have been or will be satisfied in the ordinary course during these chapter 11 cases pursuant to the authority granted to the Debtors in the relevant First Day Orders.

Pursuant to the *Motion of Debtors for Entry of an Order Authorizing the Debtors to Pay Prepetition Compensation Owed to a Key Employee* [Docket No. 430] (the "***Key Employee Motion***"), the Debtors have sought authorization to pay prepetition amounts owed to a key employee for amounts in excess of the priority wage cap imposed by section 507(a)(4) of the Bankruptcy Code.  Amounts sought to be paid in the Key Employee Motion total $596,347.  The Debtors reserve their right to

14

dispute or challenge whether creditors listed on Part 1 are entitled to priority claims under the Bankruptcy Code.

In the ordinary course of business, the Debtors maintain certain deposits on behalf of their customers. Although the Debtors continue to receive these customer deposits, they have specifically included the customer deposit amounts as of February 28, 2025, in Part 1.

Claims potentially owed to various taxing authorities by the Debtors are included in Part 1. As the company operates as a consolidated tax group, the Debtors have made efforts to provide all known information regarding their consolidated tax payment obligations. Consequently, any joint and several tax liabilities are noted in this section. Additionally, some of these tax claims may be subject to ongoing audits, or the Debtors may be unable to determine the exact amounts of the remaining claims listed in Part 1 with certainty.

Therefore, the Debtors have listed all such claims as contingent and unliquidated, pending final resolution of ongoing audits or other outstanding issues.

b.   **Part 2**. The Debtors have exercised their reasonable efforts to list all liabilities on Part 2 of each applicable Debtor's Schedule. As a result of the Debtors' consolidated operations, however, Part 2 for each Debtor should be reviewed in these cases for a complete understanding of the unsecured claims against the Debtors. Certain creditors listed on Part 2 may owe amounts to the Debtors and, as such, the Debtors may have valid setoff and recoupment rights with respect to such amounts. The amounts listed on Part 2 may not reflect any such right of setoff or recoupment, and the Debtors reserve all rights to assert the same and to dispute and challenge any setoff and/or recoupment rights that may be asserted against the Debtors by a creditor. Additionally, certain creditors may assert mechanics' or other similar liens against the Debtors for amounts listed on Part 2. The Debtors reserve their right to dispute and challenge the validity, perfection, and immunity from avoidance of any lien purported to be perfected by a creditor listed on Part 2 of any Debtor. In addition, certain claims listed on Part 2 may potentially be entitled to priority under section 503(b)(9) of the Bankruptcy Code.

The Debtors have made reasonable efforts to include all unsecured creditors on Part 2 including, but not limited to, software companies, landlords, utility companies, consultants, and other service providers. The Debtors, however, believe the possibility exists that there are instances where creditors have yet to provide proper invoices for prepetition goods or services. While the Debtors maintain general accruals to account for these liabilities in accordance with GAAP, these amounts are estimates and have not been included on Part 2.

Unless otherwise noted, the claims listed on Part 2 are based on the Debtors' books and records as of February 28, 2025. The Debtors have excluded workers' compensation claims from the Statements because the Debtors are fully insured for and continue to honor their workers' compensation obligations in the ordinary

course in accordance with the *Order (I) Authorizing the Debtors to (A) Pay Certain Employee Compensation and Benefits and (B) Maintain and Continue Such Benefits and Other Employee-Related Programs; (II) Granting Relief from Automatic Stay with Respect to Workers' Compensation Claims; and (III) Related Relief Emergency Motion* [Docket No. 62] (the "Wages Order").

Part 2 does not include certain balances including deferred liabilities, accruals, or reserves. Such amounts are, however, reflected on the Debtors' books and records as required in accordance with GAAP. Such accruals primarily represent estimates of liabilities and do not represent specific claims as of the Petition Date.

Notwithstanding their unsecured nature, bonds listed in Part 2 will receive treatment that is *pari passu* with the Debtors' secured debt.

Part 2 does not include reserves for liabilities that may have arisen under litigation in which a Debtor is a defendant unless there is a final judgment or a settlement agreement.

The claims of individual creditors may not reflect credits and/or allowances due from creditors to the applicable Debtor. The Debtors reserve all of their rights with respect to any such credits and/or allowances, including the right to assert objections and/or setoffs or recoupments with respect to same.

The Court has authorized the Debtors to pay, in their discretion, certain non-priority unsecured claims pursuant to the First Day Orders. To the extent practicable, each Debtor's Schedule E/F is intended to reflect the balance as of the Petition Date, adjusted for postpetition payments made under some or all of the First Day Orders. Each Debtor's Schedule E/F will reflect all or a portion of Debtor's payment of certain claims pursuant to the First Day Orders, and, to the extent an unsecured claim has been paid or may be paid in full, it is possible such claim is not included on Schedule E/F. Certain Debtors may pay additional claims listed on Schedule E/F during these chapter 11 cases pursuant to the First Day Orders and other orders of the Court and the Debtors reserve all of their rights to update Schedule E/F to reflect such payments or to modify the claims register to account for the satisfaction of such claims. Additionally, Schedule E/F does not include potential rejection damage claims, if any, of the counterparties to executory contracts and unexpired leases that may be rejected.

As of the time of filing of the Schedules and Statements, the Debtors have not received all invoices for payables, expenses, and other liabilities that may have accrued prior to the Petition Date. Accordingly, the information contained in Schedules D and E/F may be incomplete. The Debtors reserve their rights, but undertake no obligations, to amend Schedules D and E/F if, or when, the Debtors receive such invoices. The Debtors have scheduled liabilities related to accounts payable based on the legal entities listed in association with the applicable charges in the Debtors' various accounts payable systems. Accordingly, the legally liable Debtor entities (if any) may differ from the entities scheduled.

16

4.  **Schedule G**

   a.    Although reasonable efforts have been made to ensure the accuracy of Schedule G regarding executory contracts and unexpired leases (collectively, the "<u>Agreements</u>"), the Debtors' review process of the Agreements is ongoing and inadvertent errors, omissions, or over-inclusion may have occurred. The Debtors may have entered into various other types of Agreements in the ordinary course of their businesses, such as indemnity agreements, supplemental agreements, amendments/letter agreements, and confidentiality agreements which may not be set forth in Schedule G. Omission of a contract or agreement from Schedule G does not constitute an admission that such omitted contract or agreement is not an executory contract or unexpired lease. Schedule G may be amended at any time to add any omitted Agreements. Likewise, the listing of an Agreement on Schedule G does not constitute an admission that such Agreement is an executory contract or unexpired lease or that such Agreement was in effect on the Petition Date or is valid or enforceable. The Agreements listed on Schedule G may have expired or may have been modified, amended, or supplemented from time to time by various amendments, restatements, waivers, estoppel certificates, letters and other documents, instruments, and agreements which may not be listed on Schedule G.

   b.    Contracts and leases listed in the Schedules and Statements may be umbrella or master agreements that cover relationships with some or all of the Debtors. Where relevant, such agreements have been listed in the Schedules and Statements only for the Debtor entity that signed the original umbrella or master agreement. Other Debtors, however, may be liable together with such Debtor on account of such agreements and the Debtors reserve all rights to amend the Schedules to reflect changes regarding the liability of the Debtors with respect to such agreements, if appropriate. The master service agreements have been listed in Schedule G, but do not reflect any decision by the applicable Debtor as to whether or not such agreements are executory in nature. Additionally, the Debtors may also place work and purchase orders under umbrella or master agreements, which may be considered executory contracts. Disclosure of all of these purchase and work orders, however, is impracticable and unduly burdensome. Accordingly, to the extent the Debtors have determined to disclose non-confidential umbrella or master agreements in Schedule G, purchase and work orders placed thereunder may have been omitted.

   c.    Due to concerns about potential harm to their business if their customer names were publicly disclosed, the Debtors have not listed customer contracts on Schedule G. Such customer contracts are filed under seal and are available by request. The Debtors have not listed non-disclosure, confidentiality, or related agreements on Schedule G.

5.  **Schedule H**

   a.    The Debtors are party to various debt agreements which were executed by multiple Debtors. In the ordinary course of their businesses, the Debtors are involved in

17

pending or threatened litigation and claims arising out of the conduct of their businesses. Some of these matters may involve multiple plaintiffs and defendants, some or all of whom may assert cross-claims and counter-claims against other parties. To the extent such claims are listed elsewhere in the Schedules of each applicable Debtor, they have not been set forth individually on Schedule H. In the event that two or more Debtors are co-obligors with respect to a scheduled debt or guaranty, such debt or guaranty is listed in the Schedules and Statements of each such Debtor at the full amount of such potential claim. No claim set forth on the Schedules and Statements of any Debtor is intended to acknowledge claims of creditors that are otherwise satisfied or discharged by other Debtors or non-Debtors. To the extent these Global Notes include notes specific to Schedules D-G, such Global Notes also apply to the co-Debtors listed in Schedule H. The Debtors reserve all of their rights to amend the Schedules to the extent that additional guarantees are identified or such guarantees are discovered to have expired or be unenforceable.

### **Specific Notes with Respect to the Debtors' Statements of Financial Affairs**

1. **Statement 1**. The income stated in the Debtors' response to Statement 1 is consistent with the consolidated sales disclosed in compliance with GAAP. The Debtors' fiscal year ends on December 31 of each calendar year:

    a. **FY 2023**: Comprised of consolidated revenues for the fiscal year ended December 31, 2023.

    b. **FY 2024**: Comprised of consolidated revenues for the fiscal year ended December 31, 2024.

    c. **Stub Period 2025**: Comprised of consolidated revenues for the 2 months ending February 28, 2025.

2. **Statement 3**. As described in the Cash Management Motion, the Debtors utilize their integrated, centralized Cash Management System to collect, concentrate, and disburse funds generated by their operations. Due to the centralized nature of the Cash Management System, only a few Debtors disburse payments, such as SourceHOV LLC, Exela Enterprise Solutions, Inc., Regulus Integrated Solutions, LLC, and BancTec, Inc.

    a. The payments disclosed in Statement 3 are based on payments made by the Debtors with payment dates from December 3, 2024 to March 3, 2025. Amounts still owed to creditors will appear on the Schedules for each Debtor, as applicable.

    b. Non-U.S. Dollar transactions are converted to U.S. Dollar using prevailing exchange rate for the week.

    c. The response to Statement 3 excludes payments and disbursements or transfers for this period, which are listed, to the extent required, on Statement 4.

      d.    The response to Statement 3 excludes payments for services of any entities that provided consultation concerning debt counseling or restructuring services, relief under the Bankruptcy Code, or preparation of a petition in bankruptcy for this period, which are listed on Statement 11.

3. **Statement 4.** As outlined in the Cash Management Motion, the Debtors operate a centralized Cash Management System that allows them to disburse funds on behalf of non-Debtor affiliates. Such disbursements include payments to counterparties and service providers to whom non-Debtor affiliates are indebted and then charged to the non-Debtor entity through an intercompany transaction. Payments to third-parties on behalf of non-Debtor affiliates are listed on Statement 4.

Although Statement 4 accounts for payments to counterparties providing direct services to non-Debtor affiliate insiders, it does not include payments to umbrella programs and service providers, such as insurance policies, that may also ultimately benefit the Debtors.

The Debtors make disbursements to certain non-Debtor affiliates who, in turn, pay certain insiders of the Debtors through payroll. To ensure completeness, the Debtors have listed both the payments made to non-Debtor affiliates as well as the insider payroll amounts in Statement 4. However, this may result in double counting the amounts transferred.

There are instances in which non-Debtor entities pay amounts on behalf of insiders for travel expenses and then seek reimbursement from the Debtors. Such amounts are less than $10,000 and are not listed in Statement 4.

4. **Statement 7**. Information provided on Statement 7 includes only those legal disputes and administrative proceedings that are formally recognized by an administrative, judicial, or other adjudicative forum. While the Debtors believe they were diligent in their efforts, it is possible that certain suits and proceedings may have been inadvertently excluded in the Debtors' response to Statement 7. The Debtors reserve all of their rights to amend or supplement their response to Statement 7.

5. **Statement 11**. All payments for services of any entities that provided consultation concerning debt counseling or restructuring services, relief under the Bankruptcy Code, or preparation of a petition in bankruptcy within one year immediately preceding the Petition Date are listed on the applicable Debtor's response to Statement 11. Additional information regarding the Debtors' retention of professional service firms is more fully described in individual retention applications filed with the Court and related orders.

In addition, the Debtors have listed payments made to professionals retained by the Debtors but not payments made to advisors of their postpetition lenders or other parties.

6. **Statement 16**. The Debtors collect a limited amount of information about customers and their representatives. Examples of the types of information collected by the Debtors include, among other things, name, mailing address, telephone number and banking information.

7. **Statement 21**. In the ordinary course of business, the Debtors maintain certain deposits on behalf of their customers for postal services. Although the Debtors continue to receive these

customer deposits, they have specifically included the customer deposit amounts as of February 28, 2025.

8. **Statement 25**.  The Debtors have used their reasonable efforts to identify the beginning and ending dates of all businesses in which the Debtors were a partner or owned 5 percent or more of the voting or equity securities within the six years immediately preceding the Petition Date.

Businesses with no Employer Identification Number listed are foreign businesses.

9. **Statement 26**.  The Debtors provide certain parties such as banks, auditors, potential investors, vendors and financial advisors with financial statements that may not be part of a public filing. The Debtors do not maintain detailed records tracking such disclosures.

10. **Statement 26**.  The Debtors do not conduct regular inventory counts of their supplies.

11. **Statement 29**.  Due to the absence of a precise and comprehensive record of the periods of service for each director and officer at each of the Debtors, the Debtors have opted to adopt an overinclusive approach in their listing.  The Debtors have attempted to list every person who may be considered to have been in control of each Debtor at the time of the filing of the case to ensure that all potential individuals who may have held such positions are accounted for.

12. **Statement 30**.  Refer to Section 4 (*Methodology*) regarding all payments to insiders.

| Fill in this information to identify the case and this filing: |  |
|---|---|
| Debtor Name: | HOV Services, Inc. |
| United States Bankruptcy Court: | Southern District of Texas |
| Case Number (if known): | 25-90045 |

Form 207

# Statement of Financial Affairs for Non-Individuals Filing for Bankruptcy

**The debtor must answer every question. If more space is needed, attach a separate sheet to this form. On the top of any additional pages, write the debtor's name and case number (if known).**

**Part 1:**    **Income**

1. **Gross Revenue from business**

    ☐ None.

| Identify the Beginning and Ending Dates of the Debtor's Fiscal Year, which may be a Calendar Year | Sources of Revenue (Check all that apply) | Gross Revenue (Before Deductions and Exclusions) |
|---|---|---|
| **From the beginning of the fiscal year to filing date:** From 01/01/2025 to 02/28/2025   MM/DD/YYYY   MM/DD/YYYY | ☑ Operating a business ☐ Other _____ | $14,132,855.12 |
| **For prior year** From 01/01/2024 to 12/31/2024   MM/DD/YYYY   MM/DD/YYYY | ☑ Operating a business ☐ Other _____ | $148,753,982.35 |
| **For the year before that** From 01/01/2023 to 12/31/2023   MM/DD/YYYY   MM/DD/YYYY | ☑ Operating a business ☐ Other _____ | $156,628,981.15 |

| **Part 1:** | Income |
| --- | --- |

2.  **Non-business revenue**

Include revenue regardless of whether that revenue is taxable. Non-business income may include interest, dividends, money collected from lawsuits, and royalties. List each source and the gross revenue for each separately. Do not include revenue listed in line 1.

☑ None.

| | Description of Sources of Revenue | Gross Revenue (Before Deductions and Exclusions) |
| --- | --- | --- |

| **Part 2:** | List Certain Transfers Made Before Filing for Bankruptcy |
| --- | --- |

3. **Certain payments or transfers to creditors within 90 days before filing this case**

List payments or transfers — including expense reimbursements — to any creditor, other than regular employee compensation, within 90 days before filing this case unless the aggregate value of all property transferred to that creditor is less than $8,575. (This amount may be adjusted on 04/01/28 and every 3 years after that with respect to cases filed on or after the date of adjustment.)

☑ None.

| Creditor's Name and Address | Dates | Total Amount or Value | Reasons for Payment or Transfer |
| --- | --- | --- | --- |

| Part 2: | List Certain Transfers Made Before Filing for Bankruptcy |
|---------|----------------------------------------------------------|

4. **Payments or other transfers of property made within 1 year before filing this case that benefited any insider**

List payments or transfers, including expense reimbursements, made within 1 year before filing this case on debts owed to an insider or guaranteed or cosigned by an insider unless the aggregate value of all property transferred to or for the benefit of the insider is less than $8,575. (This amount may be adjusted on 04/01/28 and every 3 years after that with respect to cases filed on or after the date of adjustment.) Do not include any payments listed in line 3. Insiders include officers, directors, and anyone in control of a corporate debtor and their relatives; general partners of a partnership debtor and their relatives; affiliates of the debtor and insiders of such affiliates; and any managing agent of the debtor. 11 U.S.C. § 101(31).

☑ None.

| Insider's Name and Address and Relationship to Debtor | Dates | Amount | Reasons for Payment |
|-------------------------------------------------------|-------|--------|---------------------|

| **Part 2:** | **List Certain Transfers Made Before Filing for Bankruptcy** |
|---|---|

5. **Repossessions, foreclosures, and returns**

List all property of the debtor that was obtained by a creditor within 1 year before filing this case, including property repossessed by a creditor, sold at a foreclosure sale, transferred by a deed in lieu of foreclosure, or returned to the seller. Do not include property listed in line 6.

☑ None.

| Creditor's Name and Address | Description of the property | Date | Value of Property |
|---|---|---|---|
| | | | |

| Part 2: | List Certain Transfers Made Before Filing for Bankruptcy |
|---------|----------------------------------------------------------|

6. **Setoffs**

List any creditor, including a bank or financial institution, that within 90 days before filing this case set off or otherwise took anything from an account of the debtor without permission or refused to make a payment at the debtor's direction from an account of the debtor because the debtor owed a debt.

☑ None.

| Creditor's Name and Address | Description of Action Creditor Took | Date Action Taken | Account Number | Amount |
|-----------------------------|-------------------------------------|-------------------|----------------|--------|

| Part 3: | Legal Actions or Assignments |
|---------|------------------------------|

7. **Legal actions, administrative proceedings, court actions, executions, attachments, or governmental audits**

List the legal actions, proceedings, investigations, arbitrations, mediations, and audits by federal or state agencies in which the debtor was involved in any capacity—within 1 year before filing this case.

☐ None.

| Caption of Suit and Case Number | Nature of Proceeding | Court or Agency and Address | Status of Case |
|---------------------------------|----------------------|------------------------------|----------------|
| 7.1 ASG TECHNOLOGIES GROUP, INC. V. HOV SERVICES, INC. INDEX NO. 657346/2020 | CIVIL- BREACH OF CONTRACT | SUPREME COURT OF THE STATE OF NEW YORK, COUNTY OF NEW YORK COMMERCIAL DIVISION PART 53 60 CENTRE ST NEW YORK, NY 10013 | CONCLUDED |
| 7.2 KIMBERLY HOM V. HOV SERVICES INC., EXELA TECHNOLOGIES, INC. NO. 24-10601 | TITLE VII OF THE CIVIL RIGHTS ACT OF 1964 | E.D. MICH. SOUTHERN DIVISION 231 W. LAFAYETTE BLVD., ROOM 599 DETROIT, MI 48226 | PENDING |

| Part 3: | Legal Actions or Assignments |

8. **Assignments and receivership**

List any property in the hands of an assignee for the benefit of creditors during the 120 days before filing this case and any property in the hands of a receiver, custodian, or other court-appointed officer within 1 year before filing this case.

☑ None.

| Custodian's Name and Address | Court Name and Address | Case Title and Number | Date | Description of Property | Value |
|---|---|---|---|---|---|

## Part 4:     Certain Gifts and Charitable Contributions

9.  **List all gifts or charitable contributions the debtor gave to a recipient within 2 years before filing this case unless the aggregate value of the gifts to that recipient is less than $1,000**

☑ None.

| Recipient's Name and Address | Recipient's Relation to Debtor | Description of the Gifts and Contributions | Dates Given | Value |
|---|---|---|---|---|

| **Part 5:** | Certain Losses |
|---|---|

10. **All losses from fire, theft, or other casualty within 1 year before filing this case.**

☑ None.

| Description of the property lost and how the lost occurred | Amount of Payments Received for the Loss | Date of Loss | Value of Property Lost |
|---|---|---|---|
| | If you have received payments to cover the loss, for example, from insurance, government compensation, or tort liability, list the total received.<br><br>List unpaid claims on Official Form 106A/B (Schedule A/B: Assets - Real and Personal Property). | | |

| Part 6: | Certain Payments or Transfers |
|---------|-------------------------------|

11. **Payments related to bankruptcy**

List any payments of money or other transfers of property made by the debtor or person acting on behalf of the debtor within 1 year before the filing of this case to another person or entity, including attorneys, that the debtor consulted about debt consolidation or restructuring, seeking bankruptcy relief, or filing a bankruptcy case.

☑ None.

| Who was Paid or Who Received the Transfer? Address | Email / Website | Who Made the Payment, if not Debtor | If not Money, Describe any Property Transferred | Dates | Value |
|---|---|---|---|---|---|

| Part 6: | Certain Payments or Transfers |
|---|---|

12. **Self-settled trusts of which the debtor is a beneficiary**

List any payments or transfers of property made by the debtor or a person acting on behalf of the debtor within 10 years before the filing of this case to a self-settled trust or similar device. Do not include transfers already listed on this statement.

☑ None.

| Name of Trust or Device | Trustee | Describe any Property Transfered | Dates Transfers Were Made | Total Amount / Value |
|---|---|---|---|---|

| Part 6: | Certain Payments or Transfers |
|---------|-------------------------------|

13. **Transfers not already listed on this statement**

List any transfers of money or other property - by sale, trade, or any other means - made by the debtor or a person acting on behalf of the debtor within 2 years before the filing of this case to another person, other than property transferred in the ordinary course of business or financial affairs. Include both outright transfers and transfers made as security. Do not include gifts or transfers previously listed on this statement.

☑ None.

| Name and Address of Transferee, Relationship to Debtor | Description of Property | Date Transfer was Made | Total Amount or Value |
|--------------------------------------------------------|------------------------|------------------------|-----------------------|

| Part 7: | Previous Locations |
|---------|--------------------|

14. **Previous Addresses**

List all previous addresses used by the debtor within 3 years before filing this case and the dates the addresses were used.

☑ None.

| Address | Dates of Occupancy |
|---------|--------------------|

**Part 8:**   Health Care Bankruptcies

15. **Health Care bankruptcies**

Is the debtor primarily engaged in offering services and facilities for:
- diagnosing or treating injury, deformity, or disease, or
- providing any surgical, psychiatric, drug treatment, or obstetric care?

☑ None.

| Facility Name and Address | Nature of the Business Operation, Including Type of Services the Debtor Provides | Location Where Patient Records are Maintained (if Different from Facility Address). If Electronic, Identify any Service Provider | If Debtor Provides Meals and Housing, Number of Patients in Debtor's Care | How are Records Kept? |
|---|---|---|---|---|

| Part 9: | Personally Identifiable Information |
|---|---|

16. **Does the debtor collect and retain personally identifiable information of customers?**

☐ No

☑ Yes. State the nature of the information collected and retained.

Customer Lists

Does the debtor have a privacy policy about that information?

☐ No

☑ Yes

| Part 9: | Personally Identifiable Information |
|---|---|

17. **Within 6 years before filing this case, have any employees of the debtor been participants in any ERISA, 401(k), 403(b), or other pension or profit-sharing plan made available by the debtor as an employee benefit?**

☑ No. Go to Part 10.
☐ Yes. Does the debtor serve as plan administrator?

    ☐ No. Go to Part 10.
    ☐ Yes

| Part 10: | Certain Financial Accounts, Safe Deposit Boxes, and Storage Units |
| --- | --- |

18. **Closed financial accounts**

Within 1 year before filing this case, were any financial accounts or instruments held in the debtor's name, or for the debtor's benefit, closed, sold, moved, or transferred?

Include checking, savings, money market, or other financial accounts; certificates of deposit; and shares in banks, credit unions, brokerage houses, cooperatives, associations, and other financial institutions.

☑ None.

| Financial Institution Name and Address | Last 4 Digits of Account Number | Type of Account | Date of Closing | Last Balance |
| --- | --- | --- | --- | --- |

| **Part 10:** | Certain Financial Accounts, Safe Deposit Boxes, and Storage Units |
|---|---|

19. **Safe deposit boxes**

List any safe deposit box or other depository for securities, cash, or other valuables the debtor now has or did have within 1 year before filing this case.

☑ None.

| Depository Institution Name and Address | Names of Anyone with Access to it and Address | Description of the Contents | Does Debtor still have it? |
|---|---|---|---|

| **Part 10:** | Certain Financial Accounts, Safe Deposit Boxes, and Storage Units |
|---|---|

20. **Off-premises storage**

List any property kept in storage units or warehouses within 1 year before filing this case. Do not include facilities that are in a part of a building in which the debtor does business.

☑ None.

| Facility Name and Address | Names of Anyone with Access to it | Address | Description of the Contents | Does Debtor still have it? |
|---|---|---|---|---|

| **Part 11:** | Property the Debtor Holds or Controls That the Debtor Does Not Own |
|---|---|

**21. Property held for another**

List any property that the debtor holds or controls that another entity owns. Include any property borrowed from, being stored for, or held in trust. Do not list leased or rented property.

☐ None.

| Owner's Name and Address | Location of the Property | Description of the Property | Value |
|---|---|---|---|
| 21.1 [REDACTED ADDRESS] | SEGREGATED BANK ACCOUNTS | CUSTOMER DEPOSITS | $868.18 |
| 21.2 [REDACTED NAME] [REDACTED ADDRESS] | SEGREGATED BANK ACCOUNTS | CUSTOMER DEPOSITS | $3,620.96 |
| 21.3 [REDACTED NAME] [REDACTED ADDRESS] | SEGREGATED BANK ACCOUNTS | CUSTOMER DEPOSITS | $30,028.00 |
| 21.4 [REDACTED NAME] [REDACTED ADDRESS] | SEGREGATED BANK ACCOUNTS | CUSTOMER DEPOSITS | $19,440.00 |
| 21.5 [REDACTED NAME] [REDACTED ADDRESS] | SEGREGATED BANK ACCOUNTS | CUSTOMER DEPOSITS | $4,343.00 |
| 21.6 [REDACTED NAME] [REDACTED ADDRESS] | SEGREGATED BANK ACCOUNTS | CUSTOMER DEPOSITS | $7,500.00 |
| 21.7 [REDACTED NAME] [REDACTED ADDRESS] | SEGREGATED BANK ACCOUNTS | CUSTOMER DEPOSITS | $297.00 |
| 21.8 [REDACTED NAME] [REDACTED ADDRESS] | SEGREGATED BANK ACCOUNTS | CUSTOMER DEPOSITS | $400.00 |
| 21.9 [REDACTED NAME] [REDACTED ADDRESS] | SEGREGATED BANK ACCOUNTS | CUSTOMER DEPOSITS | $2,000.00 |
| 21.10 [REDACTED NAME] [REDACTED ADDRESS] | SEGREGATED BANK ACCOUNTS | CUSTOMER DEPOSITS | $750.00 |
| 21.11 [REDACTED NAME] [REDACTED ADDRESS] | SEGREGATED BANK ACCOUNTS | CUSTOMER DEPOSITS | $1,000.00 |
| 21.12 [REDACTED NAME] [REDACTED ADDRESS] | SEGREGATED BANK ACCOUNTS | CUSTOMER DEPOSITS | $4,719.74 |
| 21.13 [REDACTED NAME] [REDACTED ADDRESS] | SEGREGATED BANK ACCOUNTS | CUSTOMER DEPOSITS | $1,700.00 |
| 21.14 [REDACTED NAME] [REDACTED ADDRESS] | SEGREGATED BANK ACCOUNTS | CUSTOMER DEPOSITS | $450.00 |
| 21.15 [REDACTED NAME] [REDACTED ADDRESS] | SEGREGATED BANK ACCOUNTS | CUSTOMER DEPOSITS | $2,200.00 |
| 21.16 [REDACTED NAME] [REDACTED ADDRESS] | SEGREGATED BANK ACCOUNTS | CUSTOMER DEPOSITS | $318.37 |
| 21.17 [REDACTED NAME] [REDACTED ADDRESS] | SEGREGATED BANK ACCOUNTS | CUSTOMER DEPOSITS | $29,999.99 |
| 21.18 [REDACTED NAME] [REDACTED ADDRESS] | SEGREGATED BANK ACCOUNTS | CUSTOMER DEPOSITS | $118,938.07 |
| 21.19 [REDACTED NAME] [REDACTED ADDRESS] | SEGREGATED BANK ACCOUNTS | CUSTOMER DEPOSITS | $172.09 |
| 21.20 [REDACTED NAME] [REDACTED ADDRESS] | SEGREGATED BANK ACCOUNTS | CUSTOMER DEPOSITS | $35,860.00 |

| **Part 11:** | **Property the Debtor Holds or Controls That the Debtor Does Not Own** |

| 21.21 | [REDACTED NAME]<br>[REDACTED ADDRESS] | SEGREGATED BANK ACCOUNTS | CUSTOMER DEPOSITS | $16,756.46 |
|---|---|---|---|---|
| 21.22 | [REDACTED NAME]<br>[REDACTED ADDRESS] | SEGREGATED BANK ACCOUNTS | CUSTOMER DEPOSITS | $209,901.45 |
| 21.23 | [REDACTED NAME]<br>[REDACTED ADDRESS] | SEGREGATED BANK ACCOUNTS | CUSTOMER DEPOSITS | $67,190.00 |
| 21.24 | [REDACTED NAME]<br>[REDACTED ADDRESS] | SEGREGATED BANK ACCOUNTS | CUSTOMER DEPOSITS | $11,750.00 |
| 21.25 | [REDACTED NAME]<br>[REDACTED ADDRESS] | SEGREGATED BANK ACCOUNTS | CUSTOMER DEPOSITS | $78.12 |
| 21.26 | [REDACTED NAME]<br>[REDACTED ADDRESS] | SEGREGATED BANK ACCOUNTS | CUSTOMER DEPOSITS | $5,500.00 |
| 21.27 | [REDACTED NAME]<br>[REDACTED ADDRESS] | SEGREGATED BANK ACCOUNTS | CUSTOMER DEPOSITS | $4,000.00 |
| 21.28 | [REDACTED NAME]<br>[REDACTED ADDRESS] | SEGREGATED BANK ACCOUNTS | CUSTOMER DEPOSITS | $20,000.00 |
| 21.29 | [REDACTED NAME]<br>[REDACTED ADDRESS] | SEGREGATED BANK ACCOUNTS | CUSTOMER DEPOSITS | $2,623.00 |
| 21.30 | [REDACTED NAME]<br>[REDACTED ADDRESS] | SEGREGATED BANK ACCOUNTS | CUSTOMER DEPOSITS | $1,470.00 |
| 21.31 | [REDACTED NAME]<br>[REDACTED ADDRESS] | SEGREGATED BANK ACCOUNTS | CUSTOMER DEPOSITS | $4,050.00 |
| 21.32 | [REDACTED NAME]<br>[REDACTED ADDRESS] | SEGREGATED BANK ACCOUNTS | CUSTOMER DEPOSITS | $5,600.00 |
| 21.33 | [REDACTED NAME]<br>[REDACTED ADDRESS] | SEGREGATED BANK ACCOUNTS | CUSTOMER DEPOSITS | $904.45 |
| 21.34 | [REDACTED NAME]<br>[REDACTED ADDRESS] | SEGREGATED BANK ACCOUNTS | CUSTOMER DEPOSITS | $955.00 |
| 21.35 | [REDACTED NAME]<br>[REDACTED ADDRESS] | SEGREGATED BANK ACCOUNTS | CUSTOMER DEPOSITS | $7,569.51 |
| 21.36 | [REDACTED NAME]<br>[REDACTED ADDRESS] | SEGREGATED BANK ACCOUNTS | CUSTOMER DEPOSITS | $143,025.00 |
| 21.37 | [REDACTED NAME]<br>[REDACTED ADDRESS] | SEGREGATED BANK ACCOUNTS | CUSTOMER DEPOSITS | $3,200.00 |
| 21.38 | [REDACTED NAME]<br>[REDACTED ADDRESS] | SEGREGATED BANK ACCOUNTS | CUSTOMER DEPOSITS | $9,763.00 |
| 21.39 | [REDACTED NAME]<br>[REDACTED ADDRESS] | SEGREGATED BANK ACCOUNTS | CUSTOMER DEPOSITS | $120.00 |
| 21.40 | [REDACTED NAME]<br>[REDACTED ADDRESS] | SEGREGATED BANK ACCOUNTS | CUSTOMER DEPOSITS | $900.00 |
| 21.41 | [REDACTED NAME]<br>[REDACTED ADDRESS] | SEGREGATED BANK ACCOUNTS | CUSTOMER DEPOSITS | $6,683.33 |
| 21.42 | [REDACTED NAME]<br>[REDACTED ADDRESS] | SEGREGATED BANK ACCOUNTS | CUSTOMER DEPOSITS | $466.82 |
| 21.43 | [REDACTED NAME]<br>[REDACTED ADDRESS] | SEGREGATED BANK ACCOUNTS | CUSTOMER DEPOSITS | $1,100.00 |
| 21.44 | [REDACTED NAME]<br>[REDACTED ADDRESS] | SEGREGATED BANK ACCOUNTS | CUSTOMER DEPOSITS | $8,000.00 |

**Part 11:**     Property the Debtor Holds or Controls That the Debtor Does Not Own

| | | | |
|---|---|---|---|
| 21.45 [REDACTED NAME] [REDACTED ADDRESS] | SEGREGATED BANK ACCOUNTS | CUSTOMER DEPOSITS | $6,000.00 |
| 21.46 [REDACTED NAME] [REDACTED ADDRESS] | SEGREGATED BANK ACCOUNTS | CUSTOMER DEPOSITS | $1,683.00 |
| 21.47 [REDACTED NAME] [REDACTED ADDRESS] | SEGREGATED BANK ACCOUNTS | CUSTOMER DEPOSITS | $7,254.77 |
| 21.48 [REDACTED NAME] [REDACTED ADDRESS] | SEGREGATED BANK ACCOUNTS | CUSTOMER DEPOSITS | $45,000.00 |
| 21.49 [REDACTED NAME] [REDACTED ADDRESS] | SEGREGATED BANK ACCOUNTS | CUSTOMER DEPOSITS | $1,000.00 |
| 21.50 [REDACTED NAME] [REDACTED ADDRESS] | SEGREGATED BANK ACCOUNTS | CUSTOMER DEPOSITS | $1,500.00 |
| 21.51 [REDACTED NAME] [REDACTED ADDRESS] | SEGREGATED BANK ACCOUNTS | CUSTOMER DEPOSITS | $750.00 |
| 21.52 [REDACTED NAME] [REDACTED ADDRESS] | SEGREGATED BANK ACCOUNTS | CUSTOMER DEPOSITS | $700.00 |
| 21.53 [REDACTED NAME] [REDACTED ADDRESS] | SEGREGATED BANK ACCOUNTS | CUSTOMER DEPOSITS | $4,000.00 |
| 21.54 [REDACTED NAME] [REDACTED ADDRESS] | SEGREGATED BANK ACCOUNTS | CUSTOMER DEPOSITS | $250,000.00 |
| 21.55 [REDACTED NAME] [REDACTED ADDRESS] | SEGREGATED BANK ACCOUNTS | CUSTOMER DEPOSITS | $2,601.64 |
| 21.56 [REDACTED NAME] [REDACTED ADDRESS] | SEGREGATED BANK ACCOUNTS | CUSTOMER DEPOSITS | $1,000.00 |
| 21.57 [REDACTED NAME] [REDACTED ADDRESS] | SEGREGATED BANK ACCOUNTS | CUSTOMER DEPOSITS | $2,256.11 |
| 21.58 [REDACTED NAME] [REDACTED ADDRESS] | SEGREGATED BANK ACCOUNTS | CUSTOMER DEPOSITS | $196,217.65 |
| 21.59 [REDACTED NAME] [REDACTED ADDRESS] | SEGREGATED BANK ACCOUNTS | CUSTOMER DEPOSITS | $474.55 |
| 21.60 [REDACTED NAME] [REDACTED ADDRESS] | SEGREGATED BANK ACCOUNTS | CUSTOMER DEPOSITS | $974.51 |
| 21.61 [REDACTED NAME] [REDACTED ADDRESS] | SEGREGATED BANK ACCOUNTS | CUSTOMER DEPOSITS | $13,050.00 |
| 21.62 [REDACTED NAME] [REDACTED ADDRESS] | SEGREGATED BANK ACCOUNTS | CUSTOMER DEPOSITS | $385,961.00 |
| 21.63 [REDACTED NAME] [REDACTED ADDRESS] | SEGREGATED BANK ACCOUNTS | CUSTOMER DEPOSITS | $295,991.69 |
| 21.64 [REDACTED NAME] [REDACTED ADDRESS] | SEGREGATED BANK ACCOUNTS | CUSTOMER DEPOSITS | $3,568.64 |
| 21.65 [REDACTED NAME] [REDACTED ADDRESS] | SEGREGATED BANK ACCOUNTS | CUSTOMER DEPOSITS | $1,500.00 |
| 21.66 [REDACTED NAME] [REDACTED ADDRESS] | SEGREGATED BANK ACCOUNTS | CUSTOMER DEPOSITS | $3,268.52 |
| 21.67 [REDACTED NAME] [REDACTED ADDRESS] | SEGREGATED BANK ACCOUNTS | CUSTOMER DEPOSITS | $38,040.00 |
| 21.68 [REDACTED NAME] [REDACTED ADDRESS] | SEGREGATED BANK ACCOUNTS | CUSTOMER DEPOSITS | $10,500.00 |

| **Part 11:** | **Property the Debtor Holds or Controls That the Debtor Does Not Own** |
|---|---|

| 21.69 | [REDACTED NAME] [REDACTED ADDRESS] | SEGREGATED BANK ACCOUNTS | CUSTOMER DEPOSITS | $9,431.66 |
|---|---|---|---|---|
| 21.70 | [REDACTED NAME] [REDACTED ADDRESS] | SEGREGATED BANK ACCOUNTS | CUSTOMER DEPOSITS | $4,536.00 |
| 21.71 | [REDACTED NAME] [REDACTED ADDRESS] | SEGREGATED BANK ACCOUNTS | CUSTOMER DEPOSITS | $726.00 |
| 21.72 | [REDACTED NAME] [REDACTED ADDRESS] | SEGREGATED BANK ACCOUNTS | CUSTOMER DEPOSITS | $800.00 |
| 21.73 | [REDACTED NAME] [REDACTED ADDRESS] | SEGREGATED BANK ACCOUNTS | CUSTOMER DEPOSITS | $7,100.42 |
| 21.74 | [REDACTED NAME] [REDACTED ADDRESS] | SEGREGATED BANK ACCOUNTS | CUSTOMER DEPOSITS | $16,572.63 |
| 21.75 | [REDACTED NAME] [REDACTED ADDRESS] | SEGREGATED BANK ACCOUNTS | CUSTOMER DEPOSITS | $4,000.00 |
| 21.76 | [REDACTED NAME] [REDACTED ADDRESS] | SEGREGATED BANK ACCOUNTS | CUSTOMER DEPOSITS | $579.33 |
| 21.77 | [REDACTED NAME] [REDACTED ADDRESS] | SEGREGATED BANK ACCOUNTS | CUSTOMER DEPOSITS | $150.13 |
| 21.78 | [REDACTED NAME] [REDACTED ADDRESS] | SEGREGATED BANK ACCOUNTS | CUSTOMER DEPOSITS | $239,842.00 |
| 21.79 | [REDACTED NAME] [REDACTED ADDRESS] | SEGREGATED BANK ACCOUNTS | CUSTOMER DEPOSITS | $130,000.00 |
| 21.80 | [REDACTED NAME] [REDACTED ADDRESS] | SEGREGATED BANK ACCOUNTS | CUSTOMER DEPOSITS | $16,339.00 |
| 21.81 | [REDACTED NAME] [REDACTED ADDRESS] | SEGREGATED BANK ACCOUNTS | CUSTOMER DEPOSITS | $40,000.00 |
| 21.82 | [REDACTED NAME] [REDACTED ADDRESS] | SEGREGATED BANK ACCOUNTS | CUSTOMER DEPOSITS | $9,996.00 |
| 21.83 | [REDACTED NAME] [REDACTED ADDRESS] | SEGREGATED BANK ACCOUNTS | CUSTOMER DEPOSITS | $200.00 |
| 21.84 | [REDACTED NAME] [REDACTED ADDRESS] | SEGREGATED BANK ACCOUNTS | CUSTOMER DEPOSITS | $4,900.00 |
| 21.85 | [REDACTED NAME] [REDACTED ADDRESS] | SEGREGATED BANK ACCOUNTS | CUSTOMER DEPOSITS | $720.00 |
| 21.86 | [REDACTED NAME] [REDACTED ADDRESS] | SEGREGATED BANK ACCOUNTS | CUSTOMER DEPOSITS | $1,328.00 |
| 21.87 | [REDACTED NAME] [REDACTED ADDRESS] | SEGREGATED BANK ACCOUNTS | CUSTOMER DEPOSITS | $3,624.00 |
| 21.88 | [REDACTED NAME] [REDACTED ADDRESS] | SEGREGATED BANK ACCOUNTS | CUSTOMER DEPOSITS | $13,050.00 |
| 21.89 | [REDACTED NAME] [REDACTED ADDRESS] | SEGREGATED BANK ACCOUNTS | CUSTOMER DEPOSITS | $1,833.72 |
| 21.90 | [REDACTED NAME] [REDACTED ADDRESS] | SEGREGATED BANK ACCOUNTS | CUSTOMER DEPOSITS | $2,000.00 |
| 21.91 | [REDACTED NAME] [REDACTED ADDRESS] | SEGREGATED BANK ACCOUNTS | CUSTOMER DEPOSITS | $174,494.59 |
| 21.92 | [REDACTED NAME] [REDACTED ADDRESS] | SEGREGATED BANK ACCOUNTS | CUSTOMER DEPOSITS | $145,088.66 |

**Part 11:** **Property the Debtor Holds or Controls That the Debtor Does Not Own**

| | | | |
|---|---|---|---|
| 21.93 [REDACTED NAME]<br>[REDACTED ADDRESS] | SEGREGATED BANK ACCOUNTS | CUSTOMER DEPOSITS | $822,326.04 |
| 21.94 [REDACTED NAME]<br>[REDACTED ADDRESS] | SEGREGATED BANK ACCOUNTS | CUSTOMER DEPOSITS | $150,000.00 |
| 21.95 [REDACTED NAME]<br>[REDACTED ADDRESS] | SEGREGATED BANK ACCOUNTS | CUSTOMER DEPOSITS | $1,500.00 |
| 21.96 [REDACTED NAME]<br>[REDACTED ADDRESS] | SEGREGATED BANK ACCOUNTS | CUSTOMER DEPOSITS | $55,000.00 |
| 21.97 [REDACTED NAME]<br>[REDACTED ADDRESS] | SEGREGATED BANK ACCOUNTS | CUSTOMER DEPOSITS | $31,033.15 |
| 21.98 [REDACTED NAME]<br>[REDACTED ADDRESS] | SEGREGATED BANK ACCOUNTS | CUSTOMER DEPOSITS | $1,000.00 |
| 21.99 [REDACTED NAME]<br>[REDACTED ADDRESS] | SEGREGATED BANK ACCOUNTS | CUSTOMER DEPOSITS | $18,505.69 |
| 21.100 [REDACTED NAME]<br>[REDACTED ADDRESS] | SEGREGATED BANK ACCOUNTS | CUSTOMER DEPOSITS | $1,000.00 |
| 21.101 [REDACTED NAME]<br>[REDACTED ADDRESS] | SEGREGATED BANK ACCOUNTS | CUSTOMER DEPOSITS | $28,270.60 |
| 21.102 [REDACTED NAME]<br>[REDACTED ADDRESS] | SEGREGATED BANK ACCOUNTS | CUSTOMER DEPOSITS | $44,000.00 |
| 21.103 [REDACTED NAME]<br>[REDACTED ADDRESS] | SEGREGATED BANK ACCOUNTS | CUSTOMER DEPOSITS | $8,640.00 |
| 21.104 [REDACTED NAME]<br>[REDACTED ADDRESS] | SEGREGATED BANK ACCOUNTS | CUSTOMER DEPOSITS | $465.00 |
| 21.105 [REDACTED NAME]<br>[REDACTED ADDRESS] | SEGREGATED BANK ACCOUNTS | CUSTOMER DEPOSITS | $335.00 |
| 21.106 [REDACTED NAME]<br>[REDACTED ADDRESS] | SEGREGATED BANK ACCOUNTS | CUSTOMER DEPOSITS | $5,000.00 |
| 21.107 [REDACTED NAME]<br>[REDACTED ADDRESS] | SEGREGATED BANK ACCOUNTS | CUSTOMER DEPOSITS | $2,808.00 |
| 21.108 [REDACTED NAME]<br>[REDACTED ADDRESS] | SEGREGATED BANK ACCOUNTS | CUSTOMER DEPOSITS | $30,000.00 |
| 21.109 [REDACTED NAME]<br>[REDACTED ADDRESS] | SEGREGATED BANK ACCOUNTS | CUSTOMER DEPOSITS | $13,973.72 |
| 21.110 [REDACTED NAME]<br>[REDACTED ADDRESS] | SEGREGATED BANK ACCOUNTS | CUSTOMER DEPOSITS | $3,680.00 |
| 21.111 [REDACTED NAME]<br>[REDACTED ADDRESS] | SEGREGATED BANK ACCOUNTS | CUSTOMER DEPOSITS | $60,139.00 |
| 21.112 [REDACTED NAME]<br>[REDACTED ADDRESS] | SEGREGATED BANK ACCOUNTS | CUSTOMER DEPOSITS | $100,000.00 |
| 21.113 [REDACTED NAME]<br>[REDACTED ADDRESS] | SEGREGATED BANK ACCOUNTS | CUSTOMER DEPOSITS | $2,800.00 |
| 21.114 [REDACTED NAME]<br>[REDACTED ADDRESS] | SEGREGATED BANK ACCOUNTS | CUSTOMER DEPOSITS | $2,999.96 |
| 21.115 [REDACTED NAME]<br>[REDACTED ADDRESS] | SEGREGATED BANK ACCOUNTS | CUSTOMER DEPOSITS | $2,300.00 |
| 21.116 [REDACTED NAME]<br>[REDACTED ADDRESS] | SEGREGATED BANK ACCOUNTS | CUSTOMER DEPOSITS | $4,890.00 |

**Part 11:**   Property the Debtor Holds or Controls That the Debtor Does Not Own

| 21.117 | [REDACTED NAME]<br>[REDACTED ADDRESS] | SEGREGATED BANK<br>ACCOUNTS | CUSTOMER DEPOSITS | $396.00 |
|---|---|---|---|---|
| 21.118 | [REDACTED NAME]<br>[REDACTED ADDRESS] | SEGREGATED BANK<br>ACCOUNTS | CUSTOMER DEPOSITS | $75,000.00 |
| 21.119 | [REDACTED NAME]<br>[REDACTED ADDRESS] | SEGREGATED BANK<br>ACCOUNTS | CUSTOMER DEPOSITS | $74,201.39 |
| 21.120 | [REDACTED NAME]<br>[REDACTED ADDRESS] | SEGREGATED BANK<br>ACCOUNTS | CUSTOMER DEPOSITS | $309.00 |
| 21.121 | [REDACTED NAME]<br>[REDACTED ADDRESS] | SEGREGATED BANK<br>ACCOUNTS | CUSTOMER DEPOSITS | $107.74 |
| 21.122 | [REDACTED NAME]<br>[REDACTED ADDRESS] | SEGREGATED BANK<br>ACCOUNTS | CUSTOMER DEPOSITS | $187.44 |
| 21.123 | [REDACTED NAME]<br>[REDACTED ADDRESS] | SEGREGATED BANK<br>ACCOUNTS | CUSTOMER DEPOSITS | $1,000.00 |
| 21.124 | [REDACTED NAME]<br>[REDACTED ADDRESS] | SEGREGATED BANK<br>ACCOUNTS | CUSTOMER DEPOSITS | $1,000.00 |
| 21.125 | [REDACTED NAME]<br>[REDACTED ADDRESS] | SEGREGATED BANK<br>ACCOUNTS | CUSTOMER DEPOSITS | $4,320.00 |
| 21.126 | [REDACTED NAME]<br>[REDACTED ADDRESS] | SEGREGATED BANK<br>ACCOUNTS | CUSTOMER DEPOSITS | $511.40 |
| 21.127 | [REDACTED NAME]<br>[REDACTED ADDRESS] | SEGREGATED BANK<br>ACCOUNTS | CUSTOMER DEPOSITS | $1,000.00 |
| 21.128 | [REDACTED NAME]<br>[REDACTED ADDRESS] | SEGREGATED BANK<br>ACCOUNTS | CUSTOMER DEPOSITS | $3,500.00 |
| 21.129 | [REDACTED NAME]<br>[REDACTED ADDRESS] | SEGREGATED BANK<br>ACCOUNTS | CUSTOMER DEPOSITS | $30,000.00 |
| 21.130 | [REDACTED NAME]<br>[REDACTED ADDRESS] | SEGREGATED BANK<br>ACCOUNTS | CUSTOMER DEPOSITS | $60,000.00 |
| 21.131 | [REDACTED NAME]<br>[REDACTED ADDRESS] | SEGREGATED BANK<br>ACCOUNTS | CUSTOMER DEPOSITS | $4,000.00 |
| 21.132 | [REDACTED NAME]<br>[REDACTED ADDRESS] | SEGREGATED BANK<br>ACCOUNTS | CUSTOMER DEPOSITS | $500.00 |
| 21.133 | [REDACTED NAME]<br>[REDACTED ADDRESS] | SEGREGATED BANK<br>ACCOUNTS | CUSTOMER DEPOSITS | $3,000.00 |
| 21.134 | [REDACTED NAME]<br>[REDACTED ADDRESS] | SEGREGATED BANK<br>ACCOUNTS | CUSTOMER DEPOSITS | $9,087.00 |
| 21.135 | [REDACTED NAME]<br>[REDACTED ADDRESS] | SEGREGATED BANK<br>ACCOUNTS | CUSTOMER DEPOSITS | $168.69 |
| 21.136 | [REDACTED NAME]<br>[REDACTED ADDRESS] | SEGREGATED BANK<br>ACCOUNTS | CUSTOMER DEPOSITS | $3,000.00 |
| 21.137 | [REDACTED NAME]<br>[REDACTED ADDRESS] | SEGREGATED BANK<br>ACCOUNTS | CUSTOMER DEPOSITS | $5,000.00 |
| 21.138 | [REDACTED NAME]<br>[REDACTED ADDRESS] | SEGREGATED BANK<br>ACCOUNTS | CUSTOMER DEPOSITS | $2,589.84 |
| 21.139 | [REDACTED NAME]<br>[REDACTED ADDRESS] | SEGREGATED BANK<br>ACCOUNTS | CUSTOMER DEPOSITS | $135,000.00 |
| 21.140 | [REDACTED NAME]<br>[REDACTED ADDRESS] | SEGREGATED BANK<br>ACCOUNTS | CUSTOMER DEPOSITS | $25,000.00 |

**Part 11:** Property the Debtor Holds or Controls That the Debtor Does Not Own

| | | | |
|---|---|---|---|
| 21.141 | [REDACTED NAME] [REDACTED ADDRESS] | SEGREGATED BANK ACCOUNTS | CUSTOMER DEPOSITS | $121.58 |
| 21.142 | [REDACTED NAME] [REDACTED ADDRESS] | SEGREGATED BANK ACCOUNTS | CUSTOMER DEPOSITS | $3,179.96 |
| 21.143 | [REDACTED NAME] [REDACTED ADDRESS] | SEGREGATED BANK ACCOUNTS | CUSTOMER DEPOSITS | $2,500.00 |
| 21.144 | [REDACTED NAME] [REDACTED ADDRESS] | SEGREGATED BANK ACCOUNTS | CUSTOMER DEPOSITS | $20,000.00 |
| 21.145 | [REDACTED NAME] [REDACTED ADDRESS] | SEGREGATED BANK ACCOUNTS | CUSTOMER DEPOSITS | $1,000.00 |
| 21.146 | [REDACTED NAME] [REDACTED ADDRESS] | SEGREGATED BANK ACCOUNTS | CUSTOMER DEPOSITS | $1,675.00 |
| 21.147 | [REDACTED NAME] [REDACTED ADDRESS] | SEGREGATED BANK ACCOUNTS | CUSTOMER DEPOSITS | $26.50 |
| 21.148 | [REDACTED NAME] [REDACTED ADDRESS] | SEGREGATED BANK ACCOUNTS | CUSTOMER DEPOSITS | $800.00 |
| 21.149 | [REDACTED NAME] [REDACTED ADDRESS] | SEGREGATED BANK ACCOUNTS | CUSTOMER DEPOSITS | $200.00 |
| 21.150 | [REDACTED NAME] [REDACTED ADDRESS] | SEGREGATED BANK ACCOUNTS | CUSTOMER DEPOSITS | $600.00 |
| 21.151 | [REDACTED NAME] [REDACTED ADDRESS] | SEGREGATED BANK ACCOUNTS | CUSTOMER DEPOSITS | $2,400.00 |
| 21.152 | [REDACTED NAME] [REDACTED ADDRESS] | SEGREGATED BANK ACCOUNTS | CUSTOMER DEPOSITS | $6,000.00 |
| 21.153 | [REDACTED NAME] [REDACTED ADDRESS] | SEGREGATED BANK ACCOUNTS | CUSTOMER DEPOSITS | $6,000.00 |
| 21.154 | [REDACTED NAME] [REDACTED ADDRESS] | SEGREGATED BANK ACCOUNTS | CUSTOMER DEPOSITS | $793.42 |
| 21.155 | [REDACTED NAME] [REDACTED ADDRESS] | SEGREGATED BANK ACCOUNTS | CUSTOMER DEPOSITS | $18,000.00 |
| 21.156 | [REDACTED NAME] [REDACTED ADDRESS] | SEGREGATED BANK ACCOUNTS | CUSTOMER DEPOSITS | $4,926.38 |
| 21.157 | [REDACTED NAME] [REDACTED ADDRESS] | SEGREGATED BANK ACCOUNTS | CUSTOMER DEPOSITS | $191.63 |
| 21.158 | [REDACTED NAME] [REDACTED ADDRESS] | SEGREGATED BANK ACCOUNTS | CUSTOMER DEPOSITS | $9,928.00 |
| 21.159 | [REDACTED NAME] [REDACTED ADDRESS] | SEGREGATED BANK ACCOUNTS | CUSTOMER DEPOSITS | $562.85 |
| 21.160 | [REDACTED NAME] [REDACTED ADDRESS] | SEGREGATED BANK ACCOUNTS | CUSTOMER DEPOSITS | $150.00 |
| 21.161 | [REDACTED NAME] [REDACTED ADDRESS] | SEGREGATED BANK ACCOUNTS | CUSTOMER DEPOSITS | $15,000.00 |
| 21.162 | [REDACTED NAME] [REDACTED ADDRESS] | SEGREGATED BANK ACCOUNTS | CUSTOMER DEPOSITS | $20,000.00 |
| 21.163 | [REDACTED NAME] [REDACTED ADDRESS] | SEGREGATED BANK ACCOUNTS | CUSTOMER DEPOSITS | $1,400.00 |
| 21.164 | [REDACTED NAME] [REDACTED ADDRESS] | SEGREGATED BANK ACCOUNTS | CUSTOMER DEPOSITS | $1,800.00 |

| **Part 11:** | **Property the Debtor Holds or Controls That the Debtor Does Not Own** |

| 21.165 | [REDACTED NAME] [REDACTED ADDRESS] | SEGREGATED BANK ACCOUNTS | CUSTOMER DEPOSITS | $137,500.00 |
|---|---|---|---|---|
| 21.166 | [REDACTED NAME] [REDACTED ADDRESS] | SEGREGATED BANK ACCOUNTS | CUSTOMER DEPOSITS | $100.00 |
| 21.167 | [REDACTED NAME] [REDACTED ADDRESS] | SEGREGATED BANK ACCOUNTS | CUSTOMER DEPOSITS | $252,800.00 |
| 21.168 | [REDACTED NAME] [REDACTED ADDRESS] | SEGREGATED BANK ACCOUNTS | CUSTOMER DEPOSITS | $893,096.00 |
| 21.169 | [REDACTED NAME] [REDACTED ADDRESS] | SEGREGATED BANK ACCOUNTS | CUSTOMER DEPOSITS | $416,128.00 |
| 21.170 | [REDACTED NAME] [REDACTED ADDRESS] | SEGREGATED BANK ACCOUNTS | CUSTOMER DEPOSITS | $370.00 |
| 21.171 | [REDACTED NAME] [REDACTED ADDRESS] | SEGREGATED BANK ACCOUNTS | CUSTOMER DEPOSITS | $10,000.00 |
| 21.172 | [REDACTED NAME] [REDACTED ADDRESS] | SEGREGATED BANK ACCOUNTS | CUSTOMER DEPOSITS | $89,000.00 |
| 21.173 | [REDACTED NAME] [REDACTED ADDRESS] | SEGREGATED BANK ACCOUNTS | CUSTOMER DEPOSITS | $2,200.00 |
| 21.174 | [REDACTED NAME] [REDACTED ADDRESS] | SEGREGATED BANK ACCOUNTS | CUSTOMER DEPOSITS | $1,000.00 |
| 21.175 | [REDACTED NAME] [REDACTED ADDRESS] | SEGREGATED BANK ACCOUNTS | CUSTOMER DEPOSITS | $6,744.00 |
| 21.176 | [REDACTED NAME] [REDACTED ADDRESS] | SEGREGATED BANK ACCOUNTS | CUSTOMER DEPOSITS | $17,151.00 |
| 21.177 | [REDACTED NAME] [REDACTED ADDRESS] | SEGREGATED BANK ACCOUNTS | CUSTOMER DEPOSITS | $500.00 |
| 21.178 | [REDACTED NAME] [REDACTED ADDRESS] | SEGREGATED BANK ACCOUNTS | CUSTOMER DEPOSITS | $4,000.00 |
| 21.179 | [REDACTED NAME] [REDACTED ADDRESS] | SEGREGATED BANK ACCOUNTS | CUSTOMER DEPOSITS | $47,048.00 |
| 21.180 | [REDACTED NAME] [REDACTED ADDRESS] | SEGREGATED BANK ACCOUNTS | CUSTOMER DEPOSITS | $525,000.00 |
| 21.181 | [REDACTED NAME] [REDACTED ADDRESS] | SEGREGATED BANK ACCOUNTS | CUSTOMER DEPOSITS | $1,500.00 |
| 21.182 | [REDACTED NAME] [REDACTED ADDRESS] | SEGREGATED BANK ACCOUNTS | CUSTOMER DEPOSITS | $213,016.10 |
| 21.183 | [REDACTED NAME] [REDACTED ADDRESS] | SEGREGATED BANK ACCOUNTS | CUSTOMER DEPOSITS | $750,000.00 |
| 21.184 | [REDACTED NAME] [REDACTED ADDRESS] | SEGREGATED BANK ACCOUNTS | CUSTOMER DEPOSITS | $6,613.20 |
| 21.185 | [REDACTED NAME] [REDACTED ADDRESS] | SEGREGATED BANK ACCOUNTS | CUSTOMER DEPOSITS | $3,100.00 |
| 21.186 | [REDACTED NAME] [REDACTED ADDRESS] | SEGREGATED BANK ACCOUNTS | CUSTOMER DEPOSITS | $5,000.00 |
| 21.187 | [REDACTED NAME] [REDACTED ADDRESS] | SEGREGATED BANK ACCOUNTS | CUSTOMER DEPOSITS | $3,261.00 |
| 21.188 | [REDACTED NAME] [REDACTED ADDRESS] | SEGREGATED BANK ACCOUNTS | CUSTOMER DEPOSITS | $1,081,909.00 |

| **Part 11:** | **Property the Debtor Holds or Controls That the Debtor Does Not Own** |
|---|---|

| | | | |
|---|---|---|---|
| 21.189 [REDACTED NAME] [REDACTED ADDRESS] | SEGREGATED BANK ACCOUNTS | CUSTOMER DEPOSITS | $30,000.00 |
| 21.190 [REDACTED NAME] [REDACTED ADDRESS] | SEGREGATED BANK ACCOUNTS | CUSTOMER DEPOSITS | $40,000.00 |
| 21.191 [REDACTED NAME] [REDACTED ADDRESS] | SEGREGATED BANK ACCOUNTS | CUSTOMER DEPOSITS | $20,000.00 |
| 21.192 [REDACTED NAME] [REDACTED ADDRESS] | SEGREGATED BANK ACCOUNTS | CUSTOMER DEPOSITS | $10,000.00 |
| 21.193 [REDACTED NAME] [REDACTED ADDRESS] | SEGREGATED BANK ACCOUNTS | CUSTOMER DEPOSITS | $58.00 |
| 21.194 [REDACTED NAME] [REDACTED ADDRESS] | SEGREGATED BANK ACCOUNTS | CUSTOMER DEPOSITS | $173.80 |
| 21.195 [REDACTED NAME] [REDACTED ADDRESS] | SEGREGATED BANK ACCOUNTS | CUSTOMER DEPOSITS | $40,317.00 |
| 21.196 [REDACTED NAME] [REDACTED ADDRESS] | SEGREGATED BANK ACCOUNTS | CUSTOMER DEPOSITS | $400.00 |
| 21.197 [REDACTED NAME] [REDACTED ADDRESS] | SEGREGATED BANK ACCOUNTS | CUSTOMER DEPOSITS | $400.00 |
| 21.198 [REDACTED NAME] [REDACTED ADDRESS] | SEGREGATED BANK ACCOUNTS | CUSTOMER DEPOSITS | $8,002.62 |
| 21.199 [REDACTED NAME] [REDACTED ADDRESS] | SEGREGATED BANK ACCOUNTS | CUSTOMER DEPOSITS | $107,079.41 |
| 21.200 [REDACTED NAME] [REDACTED ADDRESS] | SEGREGATED BANK ACCOUNTS | CUSTOMER DEPOSITS | $11,583.58 |
| 21.201 [REDACTED NAME] [REDACTED ADDRESS] | SEGREGATED BANK ACCOUNTS | CUSTOMER DEPOSITS | $8,000.00 |
| 21.202 [REDACTED NAME] [REDACTED ADDRESS] | SEGREGATED BANK ACCOUNTS | CUSTOMER DEPOSITS | $4,000.00 |
| 21.203 [REDACTED NAME] [REDACTED ADDRESS] | SEGREGATED BANK ACCOUNTS | CUSTOMER DEPOSITS | $1,000.00 |
| 21.204 [REDACTED NAME] [REDACTED ADDRESS] | SEGREGATED BANK ACCOUNTS | CUSTOMER DEPOSITS | $3,000.00 |
| 21.205 [REDACTED NAME] [REDACTED ADDRESS] | SEGREGATED BANK ACCOUNTS | CUSTOMER DEPOSITS | $23,099.63 |
| 21.206 [REDACTED NAME] [REDACTED ADDRESS] | SEGREGATED BANK ACCOUNTS | CUSTOMER DEPOSITS | $1,600.00 |
| 21.207 [REDACTED NAME] [REDACTED ADDRESS] | SEGREGATED BANK ACCOUNTS | CUSTOMER DEPOSITS | $1,440.00 |
| 21.208 [REDACTED NAME] [REDACTED ADDRESS] | SEGREGATED BANK ACCOUNTS | CUSTOMER DEPOSITS | $25,160.67 |

**TOTAL**    **$9,645,966.75**

| **Part 12:** | **Details About Environmental Information** |
|---|---|

For the purpose of Part 12, the following definitions apply:

- Environmental law means any statute or governmental regulation that concerns pollution, contamination, or hazardous material, regardless of the medium affected (air, land, water, or any other medium)
- Site means any location, facility, or property, including disposal sites, that the debtor now owns, operates, or utilizes or that the debtor formerly owned, operated, or utilized.
- Hazardous material means anything that an environmental law defines as hazardous or toxic, or describes as a pollutant, contaminant, or a similarly harmful substance.

**Report all notices, releases, and proceedings known, regardless of when they occurred.**

22. **Has the debtor been a party in any judicial or administrative proceeding under any environmental law? Include settlements and orders.**

☑ None.

| Case Title and Case Number | Court or Agency Name and Address | Nature of Proceeding | Status |
|---|---|---|---|

| Part 12: | Details About Environmental Information |
|---|---|

For the purpose of Part 12, the following definitions apply:

- Environmental law means any statute or governmental regulation that concerns pollution, contamination, or hazardous material, regardless of the medium affected (air, land, water, or any other medium)
- Site means any location, facility, or property, including disposal sites, that the debtor now owns, operates, or utilizes or that the debtor formerly owned, operated, or utilized.
- Hazardous material means anything that an environmental law defines as hazardous or toxic, or describes as a pollutant, contaminant, or a similarly harmful substance.

**Report all notices, releases, and proceedings known, regardless of when they occurred.**

23. **Has any governmental unit otherwise notified the debtor that the debtor may be liable under or in violation of an environmental law?**

☑ None.

| Site Name and Address | Governmental Unit Name and Address | Environmental Law, if Known | Date of Notice |
|---|---|---|---|

**Part 12:**     Details About Environmental Information

For the purpose of Part 12, the following definitions apply:

- Environmental law means any statute or governmental regulation that concerns pollution, contamination, or hazardous material, regardless of the medium affected (air, land, water, or any other medium)
- Site means any location, facility, or property, including disposal sites, that the debtor now owns, operates, or utilizes or that the debtor formerly owned, operated, or utilized.
- Hazardous material means anything that an environmental law defines as hazardous or toxic, or describes as a pollutant, contaminant, or a similarly harmful substance.

**Report all notices, releases, and proceedings known, regardless of when they occurred.**

24. **Has the debtor notified any governmental unit of any release of hazardous material?**

☑ None.

| Site Name and Address | Governmental Unit Name and Address | Environmental Law, if Known | Date of Notice |
|---|---|---|---|

| **Part 13:** | **Details About the Debtor's Business or Connections to Any Business** |
|---|---|

**25.  Other businesses in which the debtor has or has had an interest**

List any business for which the debtor was an owner, partner, member, or otherwise a person in control within 6 years before filing this case. Include this information even if already listed in the Schedules.

☐ None.

| Business Name and Address | Describe the Nature of the Business | Employer Identification Number (Do not include SSN or ITIN) | Dates Business Existed |
|---|---|---|---|
| 25.1 EXELA RECEIVABLES 3 HOLDCO, LLC<br>2701 E. GRAUWYLER ROAD<br>IRVING, TX 75061 | | 84-4093309 | - ONGOING |
| 25.2 EXELA RECEIVABLES 3, LLC<br>2701 E. GRAUWYLER ROAD<br>IRVING, TX 75061 | | 84-4084186 | - ONGOING |
| 25.3 HOV SERVICES (NANCHANG), LTD<br>2701 E. GRAUWYLER ROAD<br>IRVING, TX 75061 | | N/A | - ONGOING |
| 25.4 PROMOTORA DE TECNOLOGIA S.A. DE C.V.<br>2701 E. GRAUWYLER ROAD<br>IRVING, TX 75061 | | N/A | - ONGOING |
| 25.5 SOURCEHOV INDIA PVT. LTD.<br>2701 E. GRAUWYLER ROAD<br>IRVING, TX 75061 | | N/A | - ONGOING |

| Part 13: | Details About the Debtor's Business or Connections to Any Business |
|---|---|

**26. Books, records, and financial statements**

26a. List all accountants and bookkeepers who maintained the debtor's books and records within 2 years before filing this case.

☐ None.

| Name and Address | Dates of Service |
|---|---|
| 26a.1 MATTHEW T. BROWN<br>[REDACTED ADDRESS] | 10/02/2023 - ONGOING |
| 26a.2 SHRIKANT SORTUR<br>[REDACTED ADDRESS] | 05/21/2020 - 10/02/2023 |

| **Part 13:** | **Details About the Debtor's Business or Connections to Any Business** |
|---|---|

### 26. Books, records, and financial statements

26b. List all firms or individuals who have audited, compiled, or reviewed debtor's books of account and records or prepared a financial statement within 2 years before filing this case.

☐ None.

| Name and Address | Dates of Service |
|---|---|
| 26b.1 EISNERAMPER LLP<br>111 WOOD AVE<br>ISELIN, NJ 08830 | - ONGOING |
| 26b.2 ERNST & YOUNG LLP<br>200 PLAZA DRIVE<br>SECAUCUS, NJ 07094 | - ONGOING |
| 26b.3 KPMG LLP<br>150 W JEFFERSON AVE # 1900<br>DETROIT, MI 48226 | - ONGOING |
| 26b.4 RYAN LLC<br>THREE GALLERIA TOWER<br>13155 NOEL ROAD<br>SUITE 100<br>DALLAS, TX 75240 | - ONGOING |

| **Part 13:** | Details About the Debtor's Business or Connections to Any Business |
|---|---|

**26. Books, records, and financial statements**

26c. List all firms or individuals who were in possession of the debtor's books of account and records when this case is filed.

☐ None.

| Name and Address | If any Books of Account and Records are Unavailable, Explain Why |
|---|---|
| 26c.1 EISNERAMPER LLP<br>111 WOOD AVE<br>ISELIN, NJ 08830 | |
| 26c.2 KPMG LLP<br>150 W JEFFERSON AVE # 1900<br>DETROIT, MI 48226 | |

| Part 13: | Details About the Debtor's Business or Connections to Any Business |
|---|---|

**26. Books, records, and financial statements**

26d. List all financial institutions, creditors, and other parties, including mercantile and trade agencies, to whom the debtor issued a financial statement within 2 years before filing this case.

☐ None.

| Name and Address |
|---|

26d.1  B. RILEY FINANCIAL
11100 SANTA MONICA BLVD., SUITE 800
LOS ANGELES, CA 90025

26d.2  BLUE TORCH FINANCE LLC, AS ADMINISTRATIVE AGENT AND COLLATERAL AGENT
C/O BLUE TORCH CAPITAL LP
150 EAST 58TH STREET, 39TH FLOOR
NEW YORK, NY 10155

26d.3  PNC BANK, NATIONAL ASSOCIATION, AS LC BANK AS ADMINISTRATIVE AGENT
THE TOWER AT PNC PLAZA
300 FIFTH AVENUE, 11TH FLOOR
ATTN: BRIAN STANLEY
PITTSBURGH, PA 15222

26d.4  U.S. BANK TRUST COMPANY, NATIONAL ASSOCIATION, AS TRUSTEE
WEST SIDE FLATS
60 LIVINGSTON AVE.
ATTN: ADMINISTRATOR--EXELA INTERMEDIATE LLC
ST. PAUL, MN 55107

| Part 13: | Details About the Debtor's Business or Connections to Any Business |
|---|---|

27. **Inventories**

Have any inventories of the debtor's property been taken within 2 years before filing this case?

☑ None.

| Name of the Person who Supervised the Taking of the Inventory | Name and Address of the Person who has Possession of Inventory Records | Date of Inventory | Dollar Amount | Basis |
|---|---|---|---|---|

| Part 13: | Details About the Debtor's Business or Connections to Any Business |
|----------|-------------------------------------------------------------------|

28. **List the debtor's officers, directors, managing members, general partners, members in control, controlling shareholders, or other people in control of the debtor at the time of the filing of this case.**

☐ None.

| Name and Address | Position and Nature of any Interest | Percent of Interest, if any |
|------------------|-------------------------------------|------------------------------|
| 28.1 MAYUR JOSHI<br>[REDACTED ADDRESS] | VICE PRESIDENT & TREASURER | |
| 28.2 SANDEEP A. SAPRU<br>[REDACTED ADDRESS] | ACTING PRESIDENT & BOARD MEMBER | |
| 28.3 SHILPI JHINGRAN<br>[REDACTED ADDRESS] | SECRETARY | |
| 28.4 SURESH YANNAMANI<br>[REDACTED ADDRESS] | CHIEF EXECUTIVE OFFICER & BOARD MEMBER | |

| Part 13: | Details About the Debtor's Business or Connections to Any Business |
|---|---|

29. **Within 1 year before the filing of this case, did the debtor have officers, directors, managing members, general partners, members in control of the debtor, or shareholders in control of the debtor who no longer hold these positions?**

☑ None.

| Name and Address | Position and Nature of Interest | Period During Which Position Was Held |
|---|---|---|

| Part 13: | Details About the Debtor's Business or Connections to Any Business |
|---|---|

30. **Payments, Distributions, or Withdrawals Credited or Given to Insiders**

Within 1 year before filing this case, did the debtor provide an insider with value in any form, including salary, other compensation, draws, bonuses, loans, credits on loans, stock redemptions, and options exercised?

☑ None.

| Name and Address of Recipient and Relationship to Debtor | Amount | Amount Description | Dates | Reason for Providing the Value |
|---|---|---|---|---|

**Part 13:**    Details About the Debtor's Business or Connections to Any Business

31. **Within 6 years before filing this case, has the debtor been a member of any consolidated group for tax purposes?**

☐ None.

| Name of Parent Corporation | Employer Identification Number of the Parent Corporation |
| --- | --- |
| 31.1   EXELA TECHNOLOGIES, INC. | 47-1347291 |

| Part 13: | Details About the Debtor's Business or Connections to Any Business |
|---|---|

32.  **Within 6 years before filing this case, has the debtor as an employer been responsible for contributing to a pension fund?**

☑ None.

| Name of Pension Fund | Employer Identification Number of the Parent Corporation |
|---|---|

| Part 14: | Signature and Declaration |
|---|---|

WARNING -- Bankruptcy fraud is a serious crime. Making a false statement, concealing property, or obtaining money or property by fraud in connection with a bankruptcy case can result in fines up to $500,000 or imprisonment for up to 20 years, or both. 18 U.S.C. §§ 152, 1341, 1519, and 3571.

I have examined the information in this Statement of Financial Affairs and any attachments and have a reasonable belief that the information is true and correct.

I declare under penalty of perjury that the foregoing is true and correct.

**Executed on:** 05/06/2025

**Signature:** /s/ Matthew T. Brown

Matthew T. Brown, Interim Chief Financial Officer

**Name and Title**

Are additional pages to the Statement of Financial Affairs for Non-Individuals Filing for Bankruptcy (Official Form 207) attached?

☑ No
☐ Yes