IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

------------------------------------------------------------ x
In re:                                                       :   Chapter 11
                                                             :
DOCUDATA SOLUTIONS, L.C., *et al.*,[1]                       :   Case No. 25-90023 (CML)
                                                             :
            Debtors.                                         :   (Jointly Administered)
                                                             :
------------------------------------------------------------ x

### DEBTORS' MOTION FOR ENTRY OF AN ORDER (A) AUTHORIZING ENTRY INTO AND PERFORMANCE UNDER THE SETTLEMENT AGREEMENT WITH EGLOBALTECH, (B) AUTHORIZING REJECTION OF EXECUTORY CONTRACT, AND (C) GRANTING RELATED RELIEF

> **If you object to the relief requested, you must respond in writing. Unless otherwise directed by the Court, you must file your response electronically at https://ecf.txsb.uscourts.gov/ within twenty-one days from the date this motion was filed. If you do not have electronic filing privileges, you must file a written objection that is actually received by the clerk within twenty-one days from the date this motion was filed. Otherwise, the Court may treat the pleading as unopposed and grant the relief requested.**

The above-captioned debtors and debtors in possession (collectively, the "***Debtors***") respectfully state the following in support of this motion (the "***Motion***"):

### RELIEF REQUESTED

1.  eGlobalTech (defined below) is a subcontractor with respect to certain of the Debtors' customer contracts. The Debtors have decided, in their business judgment, that it is in their best interest to perform eGlobalTech's services in house going forward. Accordingly, the Debtors and eGlobalTech have mutually agreed to discontinue and wind down their relationship

---

[1] A complete list of each of the Debtors in these chapter 11 cases may be obtained on the website of the Debtors' claims and noticing agent at https://omniagentsolutions.com/DocuDataSolutions. The Debtors' mailing address for the purposes of these cases is 2701 E. Grauwyler Road, Irving, TX 75061 USA.

and, in connection therewith, have reached a resolution and proposed settlement to resolve all claims between the parties and effectuate the agreed wind-down of their relationship.  Under the proposed settlement, the parties reached agreements regarding payment of certain pre-existing fees, the transition of certain eGlobalTech personnel (the "***Personnel***") to become employees of the Debtors, settlement of certain prepetition outstanding amounts owed from the Debtors to eGlobalTech, and the granting of mutual releases.  The Debtors believe that the Settlement Agreement (defined below) provides valuable benefits to the Debtors' estates by resolving all claims between the Debtors and eGlobalTech and provides stability to the Debtors' operations and services through an orderly transfer of information and personnel, allowing the Debtors to continue to deliver the solutions their customers require without interruption.

## RELIEF REQUESTED

2.  The Debtors seek entry of an order, substantially in the form of the attached proposed order (the "***Proposed Order***"), (a) authorizing the Debtors to enter into and perform under the Wind-Down, Termination, and Settlement Agreement attached to the Proposed Order as **Exhibit A** (the "***Settlement Agreement***"),[2] by and among Debtor Novitex Government Solutions LLC ( "***Novitex***") and Global Tech Inc. ("***eGlobalTech***" and, together with Novitex, the "***Parties***"); and (b) granting related relief.

## JURISDICTION AND VENUE

3.  The United States Bankruptcy Court for the Southern District of Texas (the "***Court***") has jurisdiction to consider this Motion under 28 U.S.C. § 1334.  This is a core proceeding under 28 U.S.C. § 157(b), and this Court may enter a final order consistent with Article III of the United States Constitution.  Venue is proper under 28 U.S.C. §§ 1408 and 1409.

---

[2]  Capitalized terms used but not defined herein have the meanings given to them in the Settlement Agreement.

4. The bases for the relief requested herein are sections 105(a) and 365 of title 11 of the Bankruptcy Code (the "*Bankruptcy Code*"), rules 6006 and 9019 of the Federal Rules of Bankruptcy Procedure (the "*Bankruptcy Rules*"), rule 9013-1 of the Bankruptcy Local Rules for the Southern District of Texas (the "*Bankruptcy Local Rules*"), and the Procedures for Complex Chapter 11 Cases in the Southern District of Texas (the "*Complex Case Procedures*").

## BACKGROUND

5. On March 3, 2025 (the "*Petition Date*"), the Debtors filed voluntary petitions in the Court commencing cases for relief under chapter 11 of the Bankruptcy Code (the "*Chapter 11 Cases*"). The Debtors continue to manage and operate their businesses as debtors in possession under sections 1107 and 1108 of the Bankruptcy Code.

6. On March 19, 2025, the Office of the United States Trustee for the Southern District of Texas (the "*U.S. Trustee*") appointed an official committee of unsecured creditors in the Chapter 11 Cases [Docket No. 139] (as reconstituted from time to time, the "*Creditors' Committee*"). On March 24, 2025, the U.S. Trustee filed a notice of reconstitution of the Creditors' Committee [Docket No. 153]. No request for the appointment of a trustee or an examiner has been made in the Chapter 11 Cases.

7. The factual background regarding the Debtors, including their business operations, their capital and debt structures, and the events leading to the filing of the Chapter 11 Cases, is set forth in detail in the *Declaration of Randall S. Eisenberg in Support of Chapter 11 Petitions and First Day Motions* [Docket No. 6] (the "*First Day Declaration*"), which was filed with this Court on the Petition Date.

3

**EGLOBALTECH TRANSACTION AND RELATIONSHIP**

8. As described in greater detail in the First Day Declaration, the Debtors serve customers across a wide range of industries, including government clients such as the United States House of Representatives, the Architect of the Capitol, and the Library of Congress pursuant to government contracts (collectively, the "*Prime Contracts*"). In connection therewith, in October 2019, Novitex and eGlobalTech entered a contractual relationship pursuant to a Firm Fixed Price Subcontract, dated as of October 1, 2019 (the "*Subcontract*"). Since then, eGlobalTech has supported the Prime Contracts pursuant to the Subcontract and related schedules and statement of work. The performance period for the Subcontract ends on August 31, 2029.

9. Pursuant to the Subcontract, eGlobalTech provided Novitex with three eGlobalTech employees (the "*Transfer Employees*"), who perform technical and management services to support the Prime Contracts. These three individuals undertake the responsibilities contemplated by the Subcontract and ensure that Novitex is fulfilling its performance obligations under the Prime Contracts. During the period of performance under the Subcontract, the Transfer Employees have become indispensable to the Debtors' ability to provide high levels of service and performance under the Prime Contracts.

10. Fulfillment of the Prime Contracts is integral to the Debtors' go forward operations, as they generate valuable revenue for the Debtors' estates and are high-profile contracts that increase the visibility of the high-quality solutions the Debtors offer their customers. Therefore, while the Parties have come to the mutual decision to terminate their contractual relationship, it is essential for the Debtors to (a) ensure there will be no disruption to their performance under the Prime Contracts and (b) maintain the institutional knowledge and know-how of the Transfer Employees. Therefore, the Debtors have sought to employ the Transfer Employees going forward,

and have also negotiated with eGlobalTech to perform transition services to wind down the Parties' relationship in an orderly fashion.

## THE EGLOBALTECH CLAIMS AND SETTLEMENT AGREEMENT

11. The Debtors constantly monitor and seek to optimize their financial and operational performance. Accordingly, the Debtors have determined, in their business judgment, that bringing in-house the services that are currently performed by eGlobalTech under the Subcontract would maximize value and be more favorable to the Debtors than continuing the Subcontract. The Debtors and eGlobalTech engaged in good faith discussions to address their go-forward relationship, as well as certain claims and amounts owed to eGlobalTech for prepetition services. eGlobalTech asserts a prepetition claim against the Debtors in the amount of $491,848.72 (the "*Asserted Prepetition Claim*"). These hard-fought negotiations continued after the Petition Date, and on April 28, 2025, the Parties reached an agreement in principle, which is embodied in the Settlement Agreement and remains subject to this Court's approval.

12. The terms of the Settlement Agreement are straightforward, and the key terms are summarized below.

(a) The Subcontract will be terminated by mutual agreement without cause effective as of the later of (a) May 30, 2025 and (b) the date on which this Court enters an order approving the Settlement Agreement, except to the extent that the Subcontract governs eGlobalTech's continued provision of license and support for the Parascript software to Novitex through September 30, 2025. All dates contemplated under the Settlement Agreement may be mutually extended in good faith by Novitex and eGlobalTech in the event of a delay of the Court approval of the Settlement Agreement.

(b) Novitex will make payments to eGlobalTech in the total amount of $379,575.75 on account of (i) ordinary course postpetition service fees; (ii) maintenance fees paid by eGlobalTech to third parties; and (iii) a settlement amount on account of eGlobalTech's Asserted Prepetition Claim. These payments are to be paid on the schedule set forth on the table in section 2 of the Settlement Agreement.

(c) eGlobalTech agrees to take all reasonable steps to assist Novitex in hiring the Transfer Employees by June 2, 2025. Payments owed to eGlobalTech will be

        reduced in the event the Debtors do not hire the Transfer Employees, as set forth in the Settlement Agreement.

(d)     eGlobalTech agrees to convey all right and title to, and shall deliver to Novitex, the equipment listed in Exhibit A of the Settlement Agreement.

(e)     eGlobalTech will assist Novitex with the transition, including by ensuring staff have system access credentials that provide access and use permissions equivalent to the access and use permissions held by eGlobalTech's Personnel.

(f)     The Parties shall grant the mutual releases set forth in sections 7 and 8 of the Settlement Agreement.

13.     The Settlement Agreement is in the best interests of the Debtors and their creditors. It resolves the Asserted Prepetition Claim for substantially less than its asserted amount. More importantly, the Settlement Agreement allows the Debtors' performance to continue under the Prime Contracts without disruption. It also allows the Debtors to exit an undesirable contract while retaining important personnel and institutional knowledge that will allow the Debtors to continue providing services to the customers under the Prime Contracts. If the Debtors were instead to seek to reject the Subcontract, they would not receive the benefit of transition services of the Transfer Employees, and their performance under the Prime Contracts would likely suffer, posing critical risks to the Debtors' business relationships with the United States government. Finally, the Settlement Agreement will settle all of eGlobalTech's prepetition claims without the need for potential costly litigation, which will serve to increase recoveries for other general unsecured creditors under the Debtors' proposed chapter 11 plan. Lastly, the Creditors' Committee has indicated that it had no objection to the relief sought herein and the proposed Settlement Agreement.

**BASIS FOR RELIEF**

**I.    SETTLEMENTS ARE FAVORED IN BANKRUPTCY, AND A DEBTORS' BUSINESS JUDGMENT IS GIVEN SIGNIFICANT DEFERENCE.**

14.    Bankruptcy Rule 9019(a) provides, in relevant part:

> On motion by the [debtor in possession] and after notice and a hearing, the court may approve a compromise or settlement. Notice shall be given to creditors, the United States trustee . . . and indenture trustee as provided in Rule 2002 and to any other entity as the court may direct.

Fed. R. Bankr. P. 9019(a). "To minimize litigation and expedite the administration of a bankruptcy estate, compromises are favored in bankruptcy." *Myers v. Martin (In re Martin)*, 91 F.3d 389, 393 (3d Cir. 1996) (internal quotations omitted) (citing 9 Collier on Bankruptcy ¶ 9019.03[1] (15th ed. 1993)). Settlements are considered a "desirable and wise method[] of bringing to a close proceedings otherwise lengthy, complicated, and costly." *Rivercity v. Herpel (In re Jackson Brewing Co.)*, 624 F.2d 599, 602 (5th Cir. 1980) (citations omitted) (decided under the Bankruptcy Act).

15.    Pursuant to Bankruptcy Rule 9019(a), a bankruptcy court may, after appropriate notice and a hearing, approve a compromise or settlement so long as the proposed settlement is fair, reasonable, and in the best interest of the estate. *See In re Age Ref. Inc.*, 801 F.3d 530, 540 (5th Cir. 2015). Ultimately, approval of a compromise is within the "sound discretion" of the bankruptcy court. *United States v. AWECO, Inc. (In re AWECO, Inc.)*, 725 F.2d 293, 298 (5th Cir. 1984); *see also Jackson Brewing Co.*, 624 F.2d at 602–03 (same).

16.    Generally, the role of the bankruptcy court is not to decide the issues in dispute when evaluating a settlement. *Watts v. Williams*, 154 B.R. 56, 59 (S.D. Tex. 1993). Instead, the court should determine whether the settlement as a whole is fair and equitable. *Protective Comm. for Indep. Stockholders of TMT Trailer Ferry, Inc. v. Anderson*, 390 U.S. 414, 424 (1968).

17. "Great judicial deference is given to the [debtor's] exercise of business judgment." *GBL Holding Co., Inc. v. Blackburn/Travis/Cole, Ltd. (In re State Park Bldg. Grp., Ltd.)*, 331 B.R. 251, 254 (Bankr. N.D. Tex. 2005) (citation omitted). "As long as [the decision] appears to enhance a debtor's estate, court approval of a debtor-in-possession's decision . . . should only be withheld if the debtor's judgment is clearly erroneous, too speculative, or contrary to the provisions of the Bankruptcy Code." *Richmond Leasing Co.*, 762 F.2d 1303, 1309 (5th Cir. 1985) (citation omitted).

II. **THE SETTLEMENT AGREEMENT SATISFIES THE THREE-FACTOR TEST COURTS IN THE FIFTH CIRCUIT EMPLOY TO ANALYZE PROPOSED SETTLEMENTS.**

18. The Fifth Circuit has established the following three-factor balancing test under which bankruptcy courts are to analyze the reasonableness of proposed settlements: (a) "[t]he probability of success in [litigating the claim subject to settlement,] with due consideration for the uncertainty in fact and law; (b) [t]he complexity and likely duration of litigation and any attendant expense, inconvenience, and delay; and (c) [a]ll other factors bearing on the wisdom of the compromise." *Official Comm. of Unsecured Creditors v. Cajun Elec. Power Coop., Inc. (In re Cajun Elec. Power Coop.)*, 119 F.3d 349, 356 (5th Cir.1997); *Jackson Brewing,* 624 F.2d at 602.

19. Under the rubric of the third factor referenced above, the Fifth Circuit has specified two additional factors that bear on the decision to approve a proposed settlement. ***First***, the court should consider "the paramount interest of creditors with proper deference to their reasonable views." *Conn. Gen. Life Ins. Co. v. United Cos. Fin. Corp. (In re Foster Mortg. Corp.)*, 68 F.3d 914, 917 (5th Cir. 1995); *see also Age Ref. Inc.*, 801 F.3d at 540 (noting the *Foster Mortgage* factors). ***Second***, the court should consider the "extent to which the settlement is truly

8

the product of arms-length bargaining, and not of fraud or collusion." *Age Ref. Inc.*, 801 F.3d at 540; *Foster Mortg. Corp.*, 68 F.3d at 918 (citations omitted).

20. All of the foregoing factors favor approval of the Settlement Agreement. First, resolution of eGlobalTech's claims, including the Asserted Prepetition Claim, in the absence of the Settlement Agreement are uncertain. Those claims include claims for alleged non-payment and indemnity. Resolution of these claims would involve disputed issues of fact and law, including the adequacy of services performed, right to payment, and determination of damages. While the Debtors are confident that they would prevail, the likelihood of summary resolution is low, and the outcome is not a foregone conclusion. Moreover, the Debtors require transition services from eGlobalTech, as well as employment of the Transfer Employees.

21. Second, in light of the above, litigation of the Parties' disputes would be time-consuming, expensive, distracting, and disruptive. In the absence of the Settlement Agreement, the Parties would likely be forced to litigate eGlobalTech's purported right to payment and indemnity, as well as the adequacy of eGlobalTech's performance and calculation of damages. These disputes would, as noted, involve disputed issues of fact as well as of law, likely requiring discovery, and evidentiary development. In the meantime, the ability of the Debtors to continue to deliver top quality solutions under the Prime Contracts may suffer in the absence of eGlobalTech's transition services and the benefit of hiring the Transfer Employees.

22. Third, given the risks and costs associated with continuing the Parties' disputes, and the substantial benefits of resolving those disputes through the Settlement Agreement, the Settlement Agreement is a prudent compromise. The Settlement Agreement delivers comprehensive resolution of disputes, elimination of substantial prepetition claims, and comfort for the Debtors that they will continue to perform under the Prime Contracts with the same, high

level of service.  Finally, the Settlement Agreement is not only fair and reasonable, it is also the product of hard-fought, good faith, and arms' length negotiations.  For the reasons set forth herein, the Debtors submit that entry into the Settlement Agreement will serve to maximize the value of their estates for the benefit of all stakeholders and should be approved.

### III.  REJECTION OF THE SUBCONTRACT IS AN APPROPRIATE EXERCISE OF THE DEBTORS' BUSINESS JUDGEMENT

23. Section 365(a) of the Bankruptcy Code provides that a debtor, "subject to the court's approval, may assume or reject any executory contract or unexpired lease of the debtor." 11 U.S.C. § 365(a).  A debtor's rejection of an executory contract or unexpired lease is ordinarily governed by the "business judgment" standard.  *See, e.g.*, *In re Tex. Sheet Metals, Inc.*, 90 B.R. 260, 264 (Bankr. S.D. Tex. 1988) ("The traditional business judgment standard governs the rejection of ordinary executory contracts.").  In applying the business judgment standard, courts have held that rejection of an executory contract or an unexpired lease is appropriate where such rejection would benefit the estate.  *See In re Pisces Energy, LLC*, No. 09-36591-H5-11, 2009 WL 7227880, at *6 (Bankr. S.D. Tex. Dec. 21, 2009) ("Courts apply the 'business judgment test,' which requires a showing that the proposed course of action will be advantageous to the estate and the decision be based on sound business judgment.").

24. As part of the Settlement Agreement, the Parties have agreed to terminate the Subcontract.  Rejection of the Subcontract is thus necessary to implement the Settlement Agreement, which, as discussed above, will provide substantial benefit to the Debtors' estates.  Accordingly, the Debtors have determined in their business judgment to reject the Subcontract.

### NOTICE

25. Notice of the Motion will be given to:  (a) the Office of the United States Trustee for the Southern District of Texas; (b) counsel to the DIP Agent; (c) counsel to the Ad Hoc Group;

(d) counsel to the Prepetition Indenture Trustee; (e) counsel to the administrative agent under the ER3 Securitization Program; (f) counsel to B. Riley; (g) the creditors listed on the Debtors' consolidated list of thirty (30) creditors holding the largest unsecured claims; (h) eGlobalTech; (i) counsel to the Creditors' Committee; (j) the United States Attorney for the Southern District of Texas; (k) the Internal Revenue Service; (l) the Securities and Exchange Commission; (m) the state attorneys general for states in which the Debtors conduct business; and (n) any party that has requested notice pursuant to Bankruptcy Rule 2002.  The Debtors submit that, under the circumstances, no other or further notice is required.

26. A copy of the Motion is available on (a) the Court's website, at www.txs.uscourts.gov, and (b) the website maintained by the Debtors' claims and noticing agent, Omni Agent Solutions, Inc., at https://omniagentsolutions.com/DocuDataSolutions.

WHEREFORE, the Debtors request that the Court enter the Proposed Order, granting the relief requested in this Motion, and granting such other and further relief as is appropriate under the circumstances.

Signed May 13, 2025  
      Houston, Texas

Respectfully Submitted,

*/s/  Timothy A. ("Tad") Davidson II*  
Timothy A. ("Tad") Davidson II (Texas Bar No. 24012503)  
Ashley L. Harper (Texas Bar No. 24065272)  
Philip M. Guffy (Texas Bar No. 24113705)  
600 Travis Street, Suite 4200  
Houston, TX 77002  
Telephone:  (713) 220-4200  
Email:   taddavidson@hunton.com  
         ashleyharper@hunton.com  
         pguffy@hunton.com

- and –

**LATHAM & WATKINS LLP**  
Ray C. Schrock (NY Bar No. 4860631)  
Alexander W. Welch (NY Bar No. 5624861)  
Hugh Murtagh (NY Bar No. 5002498)  
Adam S. Ravin (NY Bar No. 4079190)  
Jonathan J. Weichselbaum (NY Bar No. 5676143)  
1271 Avenue of the Americas  
New York, NY 10020  
Telephone: (212) 906-1200  
Email:   ray.schrock@lw.com  
         alex.welch@lw.com  
         hugh.murtagh@lw.com  
         adam.ravin@lw.com  
         jon.weichselbaum@lw.com

*Co-Counsel for the Debtors and Debtors in Possession*

**CERTIFICATE OF SERVICE**

I certify that on May 13, 2025, I caused a copy of the foregoing document to be served by the Electronic Case Filing System for the United States Bankruptcy Court for the Southern District of Texas.

*/s/  Timothy A. ("Tad") Davidson II*
Timothy A. ("Tad") Davidson II
