IN THE UNITED STATES BANKRUPTCY COURT

FOR THE SOUTHERN DISTRICT OF TEXAS

HOUSTON DIVISION

| | | |
|---|---|---|
| IN RE: | § | CASE NO. 25-90023-11 |
| | § | HOUSTON, TEXAS |
| DOCUDATA SOLUTIONS, L.C., | § | WEDNESDAY, |
| ET AL, | § | APRIL 16, 2025 |
| DEBTORS. | § | 10:01 A.M. TO 2:01 P.M. |

## **FINAL DIP HEARING (VIA ZOOM)**

BEFORE THE HONORABLE CHRISTOPHER M. LOPEZ
UNITED STATES BANKRUPTCY JUDGE

APPEARANCES:                          SEE NEXT PAGE

COURTROOM DEPUTY:                     YESENIA LILA

ELECTRONIC RECORDING OFFICER:         YESENIA LILA

TRANSCRIPTION SERVICE BY:

JUDICIAL TRANSCRIBERS OF TEXAS, LLC
935 Eldridge Road, #144
Sugar Land, TX 77478
281-277-5325
www.judicialtranscribers.com

Proceedings recorded by electronic sound recording,
transcript produced by transcription service.

**<u>APPEARANCES (VIA ZOOM)</u>:**

FOR THE DEBTORS:                        HUNTON ANDREWS KURTH, LLP
                                        Philip Guffy, Esq.
                                        600 Travis Street, Ste. 4200
                                        Houston, TX  77002
                                        713-220-4200

                                        LATHAM & WATKINS, LLP
                                        Ray Schrock, Esq.
                                        Alexander Welch, Esq.
                                        1271 Avenue of the Americas
                                        New York, NY  10020
                                        212-906-1200

                                        LATHAM & WATKINS, LLP
                                        Daniel G. Brown, Esq.
                                        555 Eleventh Street, NW
                                        Suite 1000
                                        Washington, DC  20004
                                        202-637-2200


FOR THE OFFICIAL COMMITTEE
OF UNSECURED CREDITORS:                 MCDERMOTT WILL & EMERY
                                        Charles R. Gibbs, Esq.
                                        2801 N. Harwood Street
                                        Suite 2600
                                        Dallas, TX  75201
                                        214-295-8000

                                        BROWN RUDNICK
                                        Robert J. Stark, Esq.
                                        7 Times Square
                                        New York, NY  10036
                                        212-209-4800


FOR CCUR HOLDINGS, INC.                 KANE RUSSELL COLEMAN LOGAN
                                        Mark Taylor, Esq.
                                        401 Congress Avenue
                                        Suite 2100
                                        Austin, TX  78701
                                        512-487-6650

**APPEARANCES (CONT'D - VIA ZOOM):**

| | |
|---|---|
| FOR AD HOC GROUP: | ROPES & GRAY, LLP<br>Matthew M. Roose, Esq.<br>1211 Avenue of the Americas<br>New York, NY  10036-8704<br>212-596-9000 |
| FOR BLUE TORCH FINANCE: | PAUL HASTINGS<br>Charles Persons, Esq.<br>2001 Ross Avenue, Ste. 2700<br>Dallas, TX  75201<br>972-936-7500 |
| FOR US TRUSTEE: | OFFICE OF THE US TRUSTEE<br>Jana Whitworth, Esq.<br>515 Rusk Street, Ste. 3516<br>Houston, TX  77002<br>713-718-4650 |
| FOR ETI ENTITY: | CLEARY GOTTLIEG<br>Luke A, Barefoot, Esq.<br>One Liberty Plaza<br>New York, NY  10006<br>212-225-2000 |
| FOR PNC BANK: | MAYER BROWN<br>Dabin Chung, Esq.<br>1221 Avenue of the Americas<br>New York, NY  10020-1001<br>212-506-2500 |
| FOR HOLDCO ASSET MANAGEMENT: | WILLIAMS BARBER MOREL<br>Daniel R. Brown, Esq.<br>233 S. Wacker Dr., Ste. 6800<br>Chicago, IL  60606<br>312-443-3200 |
| FOR O'BRIEN-STALEY PARTNERS: | JENNER & BLOCK<br>Catherine Steege, Esq.<br>353 N. Clark Street<br>Chicago, IL  60654-3456<br>312-222-9350 |

(Please also see Electronic Appearances.)

1     **HOUSTON, TEXAS; WEDNESDAY, APRIL 16, 2024; 10:01 A.M.**

2          COURT SECURITY OFFICER:  All rise.

3          THE COURT:  Please be seated.

4          Okay.  Good morning, everyone.  This is Judge Lopez.

5     It is 10:00 a.m., April 16th.  I'm going to call Case

6     Number 25-90023, DocuData.  It is here in connection with a

7     final DIP hearing.

8          It is my understanding that the parties wish to

9     start at 11:00 a.m.  There are a number of people on the line.

10          Counsel, can you just confirm that for me?  I've got

11    no issues with it, I just wanted to make sure that we at least

12    called the hearing and just confirm that that was the case.

13          MR. GUFFY:  Yes, Your Honor.  For the Record, Philip

14    Guffy from Hunton Andrews Kurth on behalf of the Debtors.

15          We did request if we could start at 11:00 today.

16          THE COURT:  Okay.  Not a problem at all.

17          Just for the folks on the line, we will keep the

18    line open.  I will just mute the line, but keep in mind that

19    folks within the line may be able to hear you.

20          We'll come back at 11:00 o'clock.

21          Thank you very much.

22          MR. GUFFY:  Thank you, Your Honor.

23          COURT SECURITY OFFICER:  All rise.

24        (Recess taken from 10:02 a.m. to 11:00 a.m.)

25          THE CLERK:  Good morning.  This is Judge Lopez's Law

1　Clerk.  A further continuance has been granted and the hearing

2　will begin at 1:30 p.m.

3　　　　　　We will now hang up the line and restart before

4　then.

5　　　　(Recess taken from 11:00 a.m. to 1:29 p.m.)

6　　　　　　THE COURT:  Okay.  Let me call 25-90023, DocuData

7　Solutions.  Why don't I take appearances in the courtroom, and

8　then on the line?

9　　　　　　Mr. Schrock, good afternoon.

10　　　　　　MR. SCHROCK:  Good afternoon, Your Honor, Ray

11　Schrock and Alex Welch on behalf of the Debtors.

12　　　　　　THE COURT:  Okay.  Good afternoon.

13　　　　　　MR. GIBBS:  Good afternoon, Your Honor.  Chuck Gibbs

14　with McDermott, Will & Emery, proposed co-counsel for the

15　Committee.  With me is Robert Stark and others from Brown

16　Rudnick, and they'll be handling anything that goes forward

17　today with respect to the DIP.

18　　　　　　THE COURT:  Okay.  Good afternoon.

19　　　　　　MR. TAYLOR:  Good afternoon, Your Honor, Mark Taylor

20　with Kane Russell, here on behalf of CCUR Holdings, Inc., a

21　prepetition noteholder and DIP lender.

22　　　　　　THE COURT:  Okay.  Good afternoon.

23　　　　　　MR. ROOSE:  Good afternoon, Your Honor, Matthew

24　Roose from Ropes & Gray, on behalf of the Ad Hoc Group of

25　prepetition noteholders and DIP lenders.

1          THE COURT:  Good afternoon.
2          MR. PERSONS:  Good afternoon, Your Honor, Charles
3     Persons of Paul Hastings, on behalf of Blue Torch Finance.
4          THE COURT:  Thank you.  Good afternoon.
5          MS. WITWORTH:  Good afternoon, Judge Lopez.  Jana
6     Witworth on behalf of the United States Trustee.
7          THE COURT:  Good afternoon.
8          Okay.  Let me see who's on the line.
9        (Pause in the proceedings.)
10          THE COURT:  All right.  Okay.  There's an 847
11     number.
12          MR. BROWN:  Good afternoon, Your Honor, Daniel Brown
13     on behalf of HoldCo Asset Management.
14          THE COURT:  Okay.  Good afternoon.
15          And here's a 212 number.
16          MR. BAREFOOT:  Good afternoon, Your Honor, Luke
17     Barefoot from Cleary Gottlieb Steen & Hamilton, on behalf of
18     the ETI entity.
19          THE COURT:  Okay.  Good afternoon.
20          Anyone else on the line who wish to make an
21     appearance, please hit five star and I will unmute your line.
22          A 312 number?
23          MS. STEEGE:  Good afternoon, Your Honor, Catherine
24     Steege, on behalf of O'Brien-Staley Partners.
25          THE COURT:  Okay.  Good afternoon.

1           Okay.  Mr. Schrock, why don't I turn things over to
2      you?
3           For the lines that I've unmuted, just please mute
4      yourselves.  I'm going to keep your lines unmuted just so we
5      can all hear each other.  Thank you.
6           Good afternoon, Mr. Schrock.
7           MR. SCHROCK:  Good afternoon, Your Honor.  Again,
8      Ray Schrock, Latham Watkins, for the Debtors.
9           Your Honor, I'm here to provide a status report with
10     some favorable news --
11          THE COURT:  Okay.
12          MR. SCHROCK:  -- in the case.  Recently, we just
13     filed a notice of filing of Plan Support Agreement.  We do
14     have copies available here in the courtroom.  If Your Honor
15     likes, I'm happy to bring one up for you, or --
16          THE COURT:  I started reading and then I had to kind
17     of get to the one.
18          MR. SCHROCK:  Okay.  Very good, Your Honor.
19          So what I'd like to do is just provide you status on
20     where we are, what we'd like to do moving forward.  And I'll
21     have Mr. Welch who's going to give you just an overview of
22     some of the salient terms of the RSA.
23          But at this point, Your Honor, the Debtors, the ETI
24     parties which are the parent parties as well as the two DIP
25     lenders and members of the Ad Hoc Group and the Debtors have

1    signed an RSA that's about they'll hold approximately 65

2    percent of all outstanding secured notes, and over 68 percent

3    of the DIP loan.

4          The goals of the RSA, Your Honor, are pretty

5    straightforward.  It's to reorganize the company.  Without

6    being able to rely on conditional exit commitments, provided

7    in connection with the DIP, or the certainty or agreement from

8    all the DIP lenders that the DIP loans will roll into the exit

9    facility as was contemplated, you may recall, under the term

10   sheet when we first filed these cases.

11         We've had to source those funds from other locations

12   so there's been a lot of negotiating with those parties to try

13   and get to what I'd say is the core point of a deal.  We

14   successfully sourced the capital commitments needed to address

15   the funding cap created by the new money commitments.

16         But we want to be clear that the RSA we filed only

17   works if all of the DIP lenders agree to roll their DIP loans

18   into the exit facility.  So as Your Honor and the parties here

19   are very well aware, there was a brewing dispute with the

20   minority of the DIP lenders.

21         We have been in contact with them.  We've

22   negotiated, you know, some with them.  We still -- frankly we

23   have to negotiate with the unsecured creditors committee, and

24   I was out -- you know, just talking with Mr. Stark prior to

25   the hearing.

1          What we need to do -- so we don't have a DIP -- I
2     don't have a DIP loan right now to say listen, we're going to
3     present it and move forward with it.  But I feel like we're
4     making a lot of progress to get there and to be able to move
5     this forward expeditiously.
6          Timing is absolutely critical for this company in
7     terms of getting new funding into this company.  As I outlined
8     at the first day hearing, Your Honor, this company, it's sole,
9     you know, value, both to all the thousands of employees that
10    are out there, to the numerous businesses, you know, and
11    Fortune 500 businesses that rely on it for payment processing,
12    and I do want to say parenthetically, it's a critical part of
13    payment processing and other systems within the financial
14    system.
15         They all depend -- it all depends on the company
16    continuing to operate and reorganize.  So there's a lot of
17    very good reasons, I think, this company's cashflow positive
18    on an operating basis.  It has a sustainable debt load we
19    believe coming out, and there's a real need to reorganize this
20    company.
21         But we have to get that deal with the minority DIP
22    lenders, or we have to find a way that listen, we're going to
23    proceed on some other basis.  So where do I think that leaves
24    us.
25         We could certainly sit up here, and all parties

1    could, you know, who aren't in the deal yet, could excoriate

2    the other side.  I don't think that's the best use of time.  I

3    think we need to get to a deal, and what I'd like to do is

4    just preview what I think would be productive is for the

5    Debtors and the parties that aren't in the deal yet to sit

6    down today and you know, over the next 12, 18 hours see what

7    we can do.

8         Come back to Court if Your Honor had time tomorrow,

9    if we could impose on Your Honor, and then we'd be prepared to

10   move forward.  I think the most we're going to be prepared to

11   move forward on, Your Honor, is probably just another interim

12   funding arrangement, not really a final DIP financing

13   arrangement.

14        I'd have to reserve, you know, on that particular

15   point.  But I don't anticipate, you know, this week is the

16   week, and certainly that's what I'm counseling, you know, our

17   side, our client.  This is not the week that we need to have a

18   full blown DIP trial.

19        We need to spend the time instead trying to

20   negotiate, get to a deal, get this company out of Chapter 11

21   quickly.  I'm extremely excited.  I'm grateful to the lenders

22   with whom we have struck a deal with.

23        But it's going to take a little bit of time just to,

24   you know, I think button this up and get to where we need to

25   be.  If we can't get there, then listen, there could be a need

1    for us to say, listen, we need to put on some evidence around

2    what's actually happened up to this point and why we believe,

3    you know, there's been some improprieties with the actions of

4    parties.

5            I'm sure they would have a different version of

6    events as well.  I'm hopeful that won't be the case, but this

7    company, you know, it's only going to make it if we can solve

8    this issue.  And so this DIP -- you know, this is what was

9    contemplated in the initial RSA.

10           We think it's a better deal frankly.  We've

11   eliminated the need for the minority lenders to really fund

12   going forward.  It's just a matter of just rolling their loans

13   into the exit.

14           And so we are -- we're hopeful that we get there.

15   But I want Mr. Welch to be able to tell you like some of the,

16   you know, really key points just for -- not just for you,

17   Judge, but for some of the parties in interest.

18           We could certainly let other parties come up here.

19   And then I would just ask Your Honor if we're able to reserve

20   some time with you for tomorrow, or as soon as you have it

21   available but preferably -- it's a strong preference for

22   tomorrow morning if it's available, and then we can decide how

23   to move forward from there.

24           THE COURT:  Thank you.

25           MR. SCHROCK:  Okay.  Thank you.

1          MR. WELCH:  Thank you, Your Honor.  For the record,

2    Alexander Welch, Latham Watkins, for the Debtors.  As Mr.

3    Schrock noted, we filed the RSA on the docket.  That's at 334.

4    Some may have noticed, it is not an executed or there's no sig

5    pages attached to that.

6          That was really just a matter of time.  We thought

7    it was better to get it on the docket rather than to delay any

8    further.  Mr. Schrock represented to the Court, and I believe

9    we could say wholly accurate, this is supported by the

10   following parties.

11         The Debtors, the ETI supporting parties and the DIP

12   lenders who represent over 68 percent of DIP loans, that's

13   Avenue and Gates.  Those sig pages are being collected and

14   we'll have an executed version shortly after this hearing.

15         On that, Your Honor, of course having an executed

16   RSA is still subject to the matters that make it effective,

17   and as Mr. Schrock alluded to, it will be effective upon the

18   agreement of all DIP lenders to roll those loans into exit

19   loans, and not until then.

20         It doesn't necessarily them to become a party to the

21   RSA.  That could either be done by written agreement, or a

22   final order of the Court.  We're hoping for agreement, Your

23   Honor.

24         As Mr. Schrock said, the goals of the RSA are

25   completely clear.  It is a plan of reorganization.  And it is

1       a plan of reorganization to preserve a going concern.  But it

2       was a requirement given the circumstances we found ourselves

3       in that we source new avenues or new areas of funding to plug

4       the hole that may exist because we cannot rely on the

5       conditional commitments that we thought we would be able to

6       rely on, albeit and admittedly subject to diligence.

7               So it also provides a commitment from the

8       signatories from the DIP lenders that they would agree to fund

9       100 percent of the remaining DIP loans.  That's $30 million,

10      Your Honor, under the final DIP order with a one-to-one roll

11      up, you might recall.

12              Because we've had to go and source those funds to

13      plug this potential hole, we've gone back to ETI which is the

14      ultimate parent of the Debtors.  And they have agreed to

15      provide financial support in the form of guarantees, and being

16      able to go and arrange -- or a commitment to go and collect

17      commitments for funding, either from themselves or from an

18      alternative source, or from the source of our future merger

19      party.  That's XCV, you might remember that from the first day

20      hearing.

21              But that's not a hollow promise, Your Honor.  I just

22      want to point out that they are committed and there are

23      penalties if that's not achieved.  So that is something we

24      feel like we'll be able to get, and if not, it will have to be

25      adjusted.

1          We've also been in discussions with our existing

2     lenders.  Counsel, Mr. Persons is here for Blue Torch.  We've

3     been in discussions with them.  But they're willing just to

4     roll.  Of course, we'd appreciate the support from them but I

5     can't guarantee it here today, and I don't know if he can

6     subject to diligence and underwriting.

7          But because we were conscious of that, we made sure

8     we had a backstop for that, or for the Gates backstop.  And

9     that's a backstop for one of the existing DIP lenders to

10    underwrite the amount needed for that.

11         I want to make sure it's clear because this isn't

12    just for you, Your Honor, but for others listening.  That

13    facility if we were to elect to use it would be in part

14    available to all noteholders who wanted to participate in

15    that, but it comes with the usual backstop fee as well.

16         The other key point of this is it really boils down

17    to sources and uses.  The key part is whether or not we can

18    get the DIP loans to roll.  If they roll as was originally

19    contemplated under the restructuring term sheet that was

20    filed, this works, and we have a dog that hunts.

21         There are other terms in here that I'll just draw

22    your attention to, but I think, you know, we sometimes get

23    lost in the fact that there are a lot of financial

24    institutions at the table, angling for their splits, their

25    fees and what they're getting or giving in a restructuring

1    term sheet.

2          I can't stress enough, this is a plan of

3    reorganization term sheet.  This is a go forward, going

4    concern.  This assumes the majority if not all of commercial

5    contracts.  This will provide for the assumption of employees

6    and employee obligations.

7          This will keep people in their jobs and the business

8    operating as a going concern if we can get this confirmed.

9    And I don't want that point to get lost.  Of course, it also

10   addresses as I foreshadowed last hearing, the fact that we

11   would have to revisit the position of unsecured creditors in

12   this case.

13         Of course, the plan term sheet we filed provided

14   little recovery for those classes.  Of course, we could always

15   argue whether --

16         THE COURT:  Requires committee support as well,

17   right?

18         MR. WELCH:  It does.

19         THE COURT:  There's always that provision.

20         MR. WELCH:  So we are expecting, we are hoping that

21   we will have committee support before we leave, or we come to

22   the disclosure statement, or at least a confirmation.  And

23   with a view to that, we were able to negotiate on behalf of

24   the Debtors and all the parties for some increased recoveries

25   there.

1          You may have noticed in terms of the July, 2026

2     notes which are the stub notes, maybe as a carve out of

3     collateral, be treated effectively -- well, not effectively,

4     they'll be treated pari with the other prepetition notes.

5          That's just a little bit of the recovery of equity.

6     And the splits have been adjusted, Your Honor.  They're not

7     exactly prorata distributions.  They are a settlement

8     distribution.

9          But I'll say this, the party getting less than their

10    prorata share is the party agreeing to get less than their

11    prorata share, and that's the ETI parties.  So the rest of the

12    noteholders are actually doing better out of this deal than

13    they otherwise would in a true prorata distribution of the

14    reorganized equity.

15         Other things to note, Your Honor, and I think just

16    so that it's said, it also addresses tax claims.  The priority

17    tax claims is part of this plan.  We paid in accordance with

18    1129, albeit over five years in five equal installments.  And

19    we'll have to address that in confirmation, but we believe

20    when compared to the treatment of the general creditors, it

21    does meet the requirements of the bankruptcy code.

22         So unless Your Honor has any questions, I know

23    you've only had a chance to begin to read it.  That is it in

24    terms of the key points under the RSA.  We'll be using the

25    time tirelessly to try and get others to support it, make the

1    case for why it's the best deal out there.  Frankly, it's the

2    only deal out there, and why parties should support it.

3            THE COURT:  Just in terms of timing, I have time --

4    I've got a plan confirmation hearing at 11:00 a.m., my time at

5    11:00, and then I have a hearing that should last, I don't

6    know, 30, 45 minutes at 1:00.  So just depending on where

7    things are, I could view kind of a 9:00 a.m. or a 2:00 p.m.

8    would be the time periods.

9            MR. WELCH:  Just looking over my shoulder to canvas

10   the reaction.

11           THE COURT:  I'm just throwing that out there for --

12           MR. WELCH:  Yeah.

13           THE COURT:  -- everyone, just as they kind of think

14   about it, in terms of what may work.  I just know that that

15   works for me.  Next Friday is the only day that I guarantee

16   that I don't -- that I take off in the entire year.  And so

17   that -- I will not be here on Friday.

18           I'm just looking at my schedule.  Just so next --

19   and no one's asking for this.  I'm just giving you --

20   everyone, just kind of the next couple of days.  9:00, to

21   10:45, in the morning, and then after 2:00 o'clock, free.  And

22   it goes from Monday, probably afternoon on Monday, and then

23   looks like afternoon on Tuesday as well.  Wednesday, the 23rd,

24   and then I'm out the 24th, the 25th.

25           So just -- that's just what the next week looks like

1    for me, and I don't know if anyone needed to hear all that.

2    But it's just giving you the lay of the land for the next four

3    or five days just in case where things go.

4             MR. WELCH:  Very helpful, Your Honor.  I think

5    prudence suggests we try to take the 2:00 p.m.  That way, if

6    there's anything that needs to be done over the evening, we're

7    giving folks a little bit more time to turn in notice,

8    including yourself.

9             THE COURT:  Okay.  Thank you.

10            MR. WELCH:  One other point, Your Honor.

11            THE COURT:  Yeah.

12            MR. WELCH:  I just don't want to go unsaid.  Of

13   course, last time we were here before you, there was quite a

14   bit of back and forth regarding the milestone deadline, RSA

15   deadline.  But that is today.  Of course, I cannot

16   unilaterally force parties to move that to tomorrow.

17            But of course, something we would need to reserve

18   on.  But if folks are willing to grant that, I welcome it.

19   I'm certain the RSA parties are which is at least two of the

20   lenders.  But I think the other parties are here in the

21   courtroom.

22            THE COURT:  Okay.  Thank you.  Let me just open it

23   up in the courtroom.  I know -- I guess everybody -- other

24   folks got it as soon as I got it.  So I'm not asking or

25   requiring anyone to speak, just if anyone -- you can speak, or

1   reserve your thoughts until now.  But if the committee wishes

2   to address the Court, I'm certainly open to it.  Thank you.

3         MR. STARK:  Thank you, Your Honor.  Robert Stark,

4   Brown Rudnick, on behalf of the committee.  I have -- but Mr.

5   Schrock and I have been talking --

6         THE COURT:  Okay.

7         MR. STARK:  -- back and forth during the day, so I

8   had a little bit of heads up as to where we were going as the

9   day was becoming unfolded, and I'm thankful for that.  I agree

10  that negotiations are far better, and that this case is

11  screaming for some negotiations that probably should have

12  already happened.

13        We're here ready for a big trial today, and it

14  really would have been quite a trial.  There's a lot of issues

15  to really -- that's, you know, underneath all of this -- the

16  limited amount of stuff Your Honor has seen.

17        We needed to talk.  So I'm happy to meet today and

18  tonight.  But here's my trepidation.  And it's in our papers.

19  The RSA and the DIP which incorporates the RSA, and I'm

20  gathering this is the new RSA that appropriates into the DIP

21  although I haven't seen the fibers of it all, really, really

22  narrow time period.

23        It's maturity is July 1.  There's milestones.  I

24  don't know whether or not they're more or less aligned with

25  July 1.  It's really tight case control provisions, right, and

1      that's been a major part of our objection to all of this.

2              I'm happy to spend some time talking and negotiating

3      and seeing if we can get to a solution.  But we're frittering

4      away the little tiny amount of time we have, and I don't want

5      to wake up, being sort of sandbagged or bamboozled into

6      allowing discussions to move forward while that deadline, that

7      July deadline doesn't move, right.

8              And so while I'm not in a position to ask anybody to

9      move anything, nor do I think they would listen to me at this

10     moment, I do think we need to be on a very short leash because

11     if it looks as though these discussions are not going

12     anywhere, we do need to come back and have this trial that we

13     spent the last many days preparing for, and really educating

14     Your Honor about why lies beneath, because it does go to the

15     plan overall.

16             I'm hopeful we can get there so I'm not asking for

17     that now.  But Your Honor, I actually thought it was great

18     that Your Honor said well, here's what my availability is.

19     We're going to need time for this trial.

20             And so I'm not exactly sure how to handle that, or

21     respond to Your Honor's notion on calendaring.  I just ask --

22     what we're supposed to do.

23             THE COURT:  That's what I was thinking.  I just

24     throw out a bunch of days, and then as folks are talking, at

25     least you have a good sense of my schedule, and just leave it

1    there.

2         But I will say this.  I think at least by -- to the

3    sense -- if we've got to go forward, we're going to go forward

4    and we'll start.  But just at least you know --

5         MR. STARK:  Yes.

6         THE COURT:  I wanted to make sure that people knew

7    that I wasn't going to be here on Friday.  I thought that was

8    important to communicate to everyone now, and just general

9    availability over the next few days so at least as people are

10   talking, you've kind of heard from me now.  I don't know what

11   people are thinking or what they're saying.  And so I just

12   thought it was easier for me to just say it and propose dates.

13   And so I'll just leave it there.

14        MR. SCHROCK:  Thanks, Judge.  Again Ray Schrock, for

15   Latham, the Debtors.  I was sensitive to what Mr. Stark was

16   saying.  That's why I was trying to preview --

17        THE COURT:  Yeah.

18        MR. SCHROCK:  -- in my mind, listen, if we're here

19   tomorrow, you know, with for instance another short term

20   funding solution, in my mind that would be frankly just a

21   short leash and some short funding arrangements so that we can

22   continue discussions.

23        And listen, frankly from the Debtors perspective, I

24   want to keep the pressure on to get to a deal.  That's what

25   this case needs.  This company needs to get out.  It doesn't

1     have the wherewithal to withstand, you know, a ton of

2     litigation.

3              And so if we're having just another interim funding

4     arrangement, what I was -- you know, my preference would be

5     listen, at that point, we're not seeking a final order.  We

6     still -- you know, everybody's rights are reserved.

7              We just start getting funding into the company which

8     we need to operate and continue discussions, and then we would

9     just be pushing out the hearing for a short period.  But

10    anyway, that's what I was envisioning.

11             THE COURT:  Yeah, that makes sense.  Thank you.  Mr.

12    Gibbs, and then I will just do another round in the courtroom,

13    and then I'll turn -- if anyone wishes to --

14             MR. GIBBS:  This is really housekeeping, Your Honor.

15    As I understood the commentary, there will not be a final

16    hearing tomorrow.  It will be at most a request for further

17    interim funding.  That may impact my colleagues at Brown

18    Rudnick as to how many of their team who are here and ready to

19    go tomorrow or today need to stay over for tomorrow.  And I

20    just would ask the Court also, I have a preexisting conflict

21    that will require me to be in Dallas tomorrow.  So I'll be

22    appearing remotely.  I just wanted the Court to --

23             THE COURT:  That's not a problem.  Yeah, before we

24    leave today, at least I want to talk housekeeping so that in

25    the morning, I at least got a sense of kind of what's going

1    on.

2         I know now's not the time to ask it but at some

3    point, we'll just need to know.  So quite frankly, so I know

4    how to prepare as well depending on what goes on.  So let me

5    just hear if anyone on the line -- before I -- yes.  I got it.

6    If folks need to appear remotely or any of that matter, I've

7    never -- no issues there on that.  So --

8         MR. TAYLOR:  Thank you, Your Honor.  Mark Taylor,

9    for CCUR Holdings.  We got the term sheet at the -- or the RSA

10   at the same time you did.  And so I've not had a chance to

11   even review with my client yet.  So we'll have to take a look

12   at it, and won't be able to respond until we can talk to them

13   and see where to go.

14        The only other comment I've had is I'm not sure how

15   Mr. Schrock felt it necessary to make a gratuitous comment

16   about the alleged improprieties.  We discussed that last week,

17   and he knows and everyone knows that we dispute that.

18        And we still have yet to hear an explanation of how

19   our sole discretion that we can exercise under the credit

20   agreement and the related documents, how their allegations

21   could overcome that.  But we'll leave that for another day.

22   Thank you, Your Honor.

23        THE COURT:  Thank you.  Does anyone on the line, on

24   video -- oh, Mr. Persons, I apologize.  And then I'll turn to

25   the folks on video.

1      MR. PERSONS:  Not a problem, Your Honor.  Charles

2  Persons, for Blue Torch Finance.  As Mr. Welch alluded, we

3  have not had a chance yet, just like you, to go through this

4  entirely.  But we are -- we do appreciate the open lines of

5  communication the Debtors have given us.

6      I also neglected to mention my partner, Jamie

7  Goldstein, is on the line as well.  We're not signatories to

8  the RSA so we're a little bit behind on what it is.  But our

9  clients will be working on this, thinking about this certainly

10  overnight.  And we're happy to accommodate the Court and the

11  Debtors on whatever their scheduled needs are.

12      THE COURT:  Thank you.  Anyone on the line wish to

13  address the Court at this time?

14      MR. BROWN:  Your Honor, Daniel Brown, on behalf of

15  HoldCo Asset Management.

16      THE COURT:  Yes, sir.

17      MR. BROWN:  So I'm similarly situated to Mr. Taylor

18  where we just got this at about 12:50.  We haven't really had

19  time to review or consider it.  I think it's not so simple as

20  just the role of the exit.

21      I believe there's a subordination of the super

22  priority DIP liens, and that's part of the assets, as well.

23  So it's certainly something that we're going to review.  We're

24  going to discuss, and hopefully we can reach a resolution.

25      But I also, like Mr. Taylor, want to follow up on

1    some of the remarks that Mr. Schrock made which is essentially

2    a continuation of this threat against my client that if you

3    don't sign what we put in front of you, then you've engaged in

4    bad faith or anticipatory breach or some other misconduct.

5         And you know, we're concerned that the Debtors are

6    trying to pull the same tactic now with respect to what they

7    just recently put in front of us.  And what I'd like to do,

8    Your Honor, is just put this issue to bed.

9         I think it's really straightforward in the

10   documents.  You know, Your Honor said, let's go through the

11   documents and I'm prepared to do that.  And so I'd like to

12   take Your Honor through just four provisions in the DIP credit

13   agreement that I think --

14        THE COURT:  We won't be doing that now.  Today we're

15   just talking high level and I'm putting everyone out to go

16   talk because it's clear everybody needs to talk.  But I am

17   studying, I am well versed.  I haven't memorized it entirely

18   but I'm ready to go on the DIP credit agreement.  I just don't

19   know if there's going to be a new one.  That's the question --

20        MR. BROWN:  Understood --

21        THE COURT:  -- that I have to study.

22        MR. BROWN:  -- Your Honor.

23        THE COURT:  So but I appreciate it, but I'm ready to

24   go.

25        MR. BROWN:  The only other thing is I know that Your

1   Honor has a policy of not ordering folks into mediation.  I do
2   think that -- I'm just going to echo our recommendation last
3   time that the parties very strongly consider and to the extent
4   the Court's comfortable making some kind of admonition, that
5   we do get into mediation to try to resolve this dispute.
6          I think it would be tremendously helpful considering
7   the recent history of this case and the posture of the
8   parties.
9          THE COURT:  Thank you.  Anyone else wish to address
10  the Court, or be heard?  Ms. Steege, Mr. Barefoot, any
11  thoughts or -- okay.
12         MS. STEEGE:  Your Honor --
13         THE COURT:  Yes.
14         MS. STEEGE:  -- Catherine Steege, on behalf of
15  O'Brien-Staley Partners, and not to beat a dead horse to death
16  here but we would echo the comments of Mr. Taylor.  We just
17  received this, haven't had a chance to study it and refute any
18  allegations that O'Brien-Staley has done anything other than
19  look to protect its economic rights in this case, and to try
20  to make certain that this reorganization actually is a
21  successful reorganization which has been our sole goal and our
22  sole reason for having disagreements with the Debtor to date
23  with regard to the form of the RSA.
24         THE COURT:  Thank you.  There's a 646 number?
25         MS. CHUNG:  Your Honor, this is Dabin Chung of Mayer

1    Brown, appearing on behalf of PNC Bank.

2              THE COURT:  Okay.

3              MS. CHUNG:  I'm calling for my colleague today,

4    Brian Trust.  He wasn't able to make it due to the delays.  As

5    Your Honor would know, PNC's (indiscernible) program has been

6    approved on a final basis earlier this week.

7              And we'd like to commend the Debtors for being

8    extremely communicative and coordinating with us, especially

9    during the last 24 hours.  That said, PNC has only had a

10   chance to review it quite recently.

11             And so -- the PSA, so we would be reserving all

12   rights in connection with the PSA and also our rights under

13   the (indiscernible) transaction documents.

14             THE COURT:  Thank you.

15             So Mr. Schrock, maybe it makes sense for me just

16   hear final words and then let everybody either go read or go

17   start talking.

18             MR. SCHROCK:  Thanks very much, Your Honor.  I would

19   just say certainly I didn't mean to kick any dust up with my

20   comments.  For those parties who think you're behind on the

21   RSA, I will tell you, you're really ahead.

22             And we're going to -- I think that we're going to

23   get -- you know, make a lot of progress.  I'm sensitive to

24   what Mr. Stark said and I just want to preview for -- the way

25   I think about the -- I don't -- we're not here to jam anybody.

1          We're just trying to get this done, and so if we do

2     have interim funding, I'm certainly going to, you know, press,

3     you know, our parties.  Listen, let's do an interim funding

4     arrangement.

5          If we don't -- for instance, if we didn't have a

6     deal yet with the committee, it'd be a short term deal and

7     that way everybody could have their rights.  And you know, if

8     we needed to have that trial.

9          But we're not needlessly taking everybody's time.

10    I'm sensitive.  People came in from out of town.  I'm not --

11    we're not pushing for a trial in the morning on a final DIP

12    order, to my, you know -- if we by chance get everybody there,

13    you know, we get the three minority lenders there, we

14    theoretically could go forward on a final DIP hearing.

15         I will work with Mr. Stark and we'll make sure that

16    we're not jamming parties if that does happen.  But our

17    attempt is really to try and get there with folks and only go

18    down another road if it's absolutely necessary, just to

19    preserve the enterprise.

20         THE COURT:  Let me ask you a question, Mr. Schrock.

21    For purposes of tomorrow, and does it make sense to check in

22    around 9:00 --

23         MR. SCHROCK:  Yeah.

24         THE COURT:  -- a.m., just to kind of see --

25         MR. SCHROCK:  Sure.  I was thinking the same thing,

1    Judge.  Yeah, that's a good idea.

2            THE COURT:  Just at least kind of check in to see

3    where things are.  And quite frankly, and I'm -- this is a

4    little bit of self -- selfish of me, but --

5            MR. SCHROCK:  Right.

6            THE COURT:  -- I kind of want to know how to prepare

7    for the afternoon in any way.

8            MR. SCHROCK:  Sure.

9            THE COURT:  And so maybe we can just do kind of a --

10           MR. SCHROCK:  Yes.

11           THE COURT:  Folks can dial in, no one needs to come

12   in if everybody's doing this.  We can just at least check in

13   and see --

14           MR. SCHROCK:  Okay.

15           THE COURT:  -- where things are at 9:00 a.m., and

16   then we'll hold the 2:00 p.m. time period.  But -- and I got

17   it.  Things can change.  I'm not going to hold anything,

18   anyone to anything but at least check in at 9:00 a.m., so I

19   have a sense of kind of where things may be going to.

20           MR. SCHROCK:  Sounds good.

21           THE COURT:  Okay.

22           MR. SCHROCK:  Thanks, Judge.

23           THE COURT:  All right.  Anything else we need to

24   take care of today?  Okay.  Thank you --

25       (Proceeding adjourned at 2:01 p.m.)

30

* * * * *

I certify that the foregoing is a correct transcript to the best of my ability produced from the electronic sound recording of the Zoom/telephonic proceedings in the above-entitled matter.

/S/  MARY D. HENRY

CERTIFIED BY THE AMERICAN ASSOCIATION OF

ELECTRONIC REPORTERS AND TRANSCRIBERS, CET**337

JUDICIAL TRANSCRIBERS OF TEXAS, LLC

JTT TRANSCRIPT #69776

DATE FILED:  MAY 15, 2025