**UNITED STATES DISTRICT COURT**

**SOUTHERN DISTRICT OF TEXAS**

**HOUSTON DIVISION**

| | | |
|---|---|---|
| IN RE: DOCUDATA SOLUTIONS, LLC, | . | CASE NO. 4:25-BK-90023 |
| | . | |
| | . | HOUSTON, TEXAS |
| DEBTOR | . | MONDAY, JUNE 23, 2025 |
| | . | 01:03 P.M. TO 01:34 P.M. |

. . . . . . . . . . . . . . . . . .

**DISCLOSURE STATEMENT AND PLAN**
**OF REORGANIZATION APPROVAL HEARING**

**SOME PARTIES APPEARING VIA GOTOMEETING**

**BEFORE THE HONORABLE CHRISTOPHER LOPEZ**
**UNITED STATES BANKRUPTCY JUDGE**

APPEARANCES:                 SEE NEXT PAGE

ELECTRONIC RECORDING OFFICER: YESENIA LILA

OFFICIAL INTERPRETER:        NONE PRESENT

CASE MANAGER:                NOT IDENTIFIED

TRANSCRIPTION SERVICE BY:

**Trinity Transcription Services**
1081 Main Street
Surgoinsville, TN 37873
281-782-0802
_battshott@aol.com_

**Proceedings recorded by electronic sound recording;**
**Transcript produced by transcription service.**

<pre>
               UNITED STATES BANKRUPTCY COURT

                SOUTHERN DISTRICT OF TEXAS

                     HOUSTON DIVISION

IN RE: DOCUDATA SOLUTIONS, LLC, .  CASE NO. 4:25-BK-90023
                                .
                                .  HOUSTON, TEXAS
                DEBTOR          .  MONDAY, JUNE 23, 2025
                                .  01:03 P.M. TO 01:34 P.M.
. . . . . . . . . . . . . . . .


            DISCLOSURE STATEMENT AND PLAN
         OF REORGANIZATION APPROVAL HEARING

          SOME PARTIES APPEARING VIA GOTOMEETING

        BEFORE THE HONORABLE CHRISTOPHER LOPEZ
            UNITED STATES BANKRUPTCY JUDGE
</pre>

Appearances:

<pre>
For THE DEBTOR:              ALEXANDER W. WELCH, ESQ.
                            HUGH MURTAGH, ESQ.
                            RAY C. SCHROCK, ESQ.
                            BETSY MARKS, ESQ.
                            JONATHAN A. WEICHSELBAUM, ESQ.
                            Latham & Watkins LLP
                            1271 Avenue of the Americas
                            New York, NY 10020

For THE DEBTOR:              PHILLIP GUFFY, ESQ.
                            TIMOTHY A. DAVIDSON, II, ESQ.
                            KALEB BAILEY, ESQ.
                            Hunton Andrews Kurth
                            600 Travis, Suite 4200
                            Houston, TX 77002

For OFFICIAL COMMITTEE OF    CHARLES R. GIBBS, ESQ.
   UNSECURED CREDITORS:      McDermott Will & Emery LLP
                            2501 North Harwood Street
                            Suite 1900
                            Dallas, TX 75201
</pre>

Appearances (cont.):


For UNITED STATES TRUSTEE:     **JANA WHITWORTH, ESQ.**
                               Office of the United States
                                  Trustee
                               515 Rusk Street, Suite 3516
                               Houston, TX 77002

For OFFICIAL COMMITTEE OF      **CHARLES R. GIBBS, ESQ.**
   UNSECURED CREDITORS:        McDermott Will and Emery
                               2801 North Harwood, Suite 2600
                               Dallas, TX 75201

For AD HOC GROUP AND DIP       **MATTHEW M. ROOSE, ESQ.**
   LENDERS:                    Ropes and Gray
                               1211 Avenue of the Americas
                               New York, NY 10036

For ETI:                       **LUKE A. BAREFOOT, ESQ.**
                               Cleary Gottlieb Steen &
                                  Hamilton, LLP
                               One Liberty Plaza
                               New York, NY 10006

For AD HOC GROUP OF PRE-       **MATTHEW ROOSE, ESQ.**
   PETITION NOTEHOLDERS AND     Ropes & Gray
   DIP LENDERS:                1211 Avenue of the Americas
                               New York, NY 10036

For PNC:                       **BRIAN TRUST, ESQ.**
                               **DABIN CHUNG, ESQ.**
                               Mayer Brown
                               1221 Avenue of the Americas
                               New York, NY 10020-1021

For ILLINOIS DEPARTMENT OF     **RACHEL A. STOKAS, ESQ.**
   REVENUE:                    Illinois Attorney General's
                                  Office
                               115 S. LaSalle Street
                               Chicago, IL 60603

Transcriber:                   Cheryl Battaglia
                               Trinity Transcription Services
                               1081 Main Street
                               Surgoinsville, TN 37873

**(See also electronic appearances)**

1

1     **Houston, Texas; Monday, June 23, 2025; 01:03 p.m.**

2         **(Some Parties Appearing via Videoconference.)**

3             **UNITED STATES MARSHAL:**  All rise.

4             **THE COURT:**  Please be seated.

5         **(Pause in the proceeding.)**

6             **THE COURT:**  Okay.  Good afternoon.  This is Judge

7     Lopez.  I'll turn on my camera just now.  Today is Monday, June

8     23rd.  I'm going to call the 1:00 p.m. case, *Case Number 25-*

9     *90023 in DocuData.*

10            I'll take appearances in the courtroom.  Anyone

11    wishes to make an appearance online or over the phone, please

12    just hit five star and I'll unmute your line.  Good afternoon.

13        **(Pause in the proceeding.).**

14            **MR. GUFFY:**  Good afternoon, your Honor.  Phillip

15    Guffy from Hunton Andrews Kurth on behalf of the Debtors.

16    Joining me from Hunton, my colleagues Ted Davidson and Kaleb

17    Bailey, as well as a group of our group of our summer

18    associates, Tyler Meeks (phonetic), Jessica Szechezski

19    (phonetic), and Parker Madsen (phonetic).

20            **THE COURT:**  Okay.

21            **MR. GUFFY:**  We also have our colleagues from Latham

22    here, Mr. Ray Schrock joining us virtually, Alex Welch, Jim

23    Murtagh, Betsy Marks.

24            **THE COURT:**  Good afternoon.

25            **MS. WHITWORTH:**  And Judge, Jana Whitworth of the

2

1    United States Trustee.

2          **THE COURT:**  Good afternoon.

3       **(Pause in the proceeding.)**

4          **MR. GIBBS:**  Good afternoon, your Honor.  Chuck Gibbs

5    from McDermott, Will, and Emery co-counsel for the Committee.

6          **THE COURT:**  Good afternoon.

7          **MR. GIBBS:**  Good afternoon.

8          **THE COURT:**  All righty.  I'm going to just unmute a

9    few lines.  Here's a 212 number.

10      **(Pause in the proceeding.)**

11         **THE COURT:**  Two one ——

12         **MR. BAREFOOT:**  Good afternoon, your Honor.  Luke

13   Barefoot from Cleary Gottlieb Steen and Hamilton on behalf of

14   ETI and Wolf 14 (phonetic).

15         **THE COURT:**  Good afternoon.

16         And here's another 212-596 number.

17         **MR. ROOSE:**  Good afternoon, your Honor.  Matthew

18   Roose from Ropes and Gray on behalf of the Ad Hoc Group of Pre-

19   Petition Noteholders and DIP Lenders, your Honor.

20         **THE COURT:**  Good afternoon.

21      **(Pause in the proceeding.)**

22         **THE COURT:**  And here's a 917 number.

23         **MR. TRUST:**  Good afternoon, your Honor.  This is

24   Brian Trust, together with my colleague, Dabin Chung, remotely.

25   We are serving as counsel to PNC, as the administrative agent

3

1   under the securitization program.

2            **MR. GUFFY:**  Good afternoon.

3            Anyone else?  Please hit five star and I will unmute

4   your line.

5       **(Pause in the proceeding.)**

6            **THE COURT:**  All right.  Got two more.  There's a 312

7   number.

8       **(Pause in the proceeding.)**

9            **THE COURT:**  A 312 number.

10           **MS. STOKAS:**  Yes, your Honor.

11           **THE COURT:**  Yes.

12           **MS. STOKAS:**  Yes.  Rachel Stokas is here on behalf of

13  Illinois Department of Revenue.

14           **THE COURT:**  Good afternoon.  And a 917 number.

15      **(Pause in the proceeding.)**

16           **THE COURT:**  A 917-845 number.

17      **(Pause in the proceeding.)**

18           **THE COURT:**  All right.  I welcome you anyway.

19           All right.  Who do I turn this over to?

20           **MR. MURTAUGH:**  That's me, your Honor.  Good

21  afternoon.

22           **THE COURT:**  Good afternoon.

23           **MR. MURTAUGH:**  Hugh Murtagh from Latham and Watkins

24  on behalf of the Debtors.

25           One more appearance.  I don't think we noted the

4

1    appearance of my colleague, John Weichselbaum, who is going to

2    handle the argument on the Trustee's objection.

3          **THE COURT:**  Okay.  Good afternoon.

4          **MR. MURTAUGH:**  Your Honor, thank you for hearing us

5    today.  We are here on final approval of the disclosure

6    statement and the Debtor's plan of reorganization.

7          We understand there are exigent circumstances.  So we

8    are going to do our very best to move with extra speed, your

9    Honor.  But to that end, I propose to do the following:

10          First, just deal with the evidence.

11          **THE COURT:**  Uh-huh.

12          **MR. MURTAUGH:**  Second, I will give a brief update on

13    the status of the DS and the Plan.  Third, turn the podium over

14    to the Office of the United States Trustee and my colleague

15    Mr. Weichselbaum for the remaining live objection.  Fourth, at

16    the conclusion of that, your Honor, we will request approval of

17    the disclosure statement on a final basis and the Debtor's plan

18    of reorganization.

19          And unless there's other business after that, we will

20    exit stage left and allow your Honor to attend to important

21    matters.

22          **THE COURT:**  Yeah.  I appreciate it.

23          **MR. MURTAUGH:**  Okay.  So with regard to the evidence,

24    your Honor,  The Debtors filed a witness and exhibit list, or

25    an amended witness and exhibit list, at Docket Item 806.

1          That witness list —— witness and exhibit list has 19

2    items on it, Exhibit 1 through 19.  Those exhibits include

3    declarations in support of confirmation from the Debtor's

4    Deputy CRO, Mr. Steve Spitzer (phonetic).  That's Docket 812.

5    He's in the courtroom.

6          **MR. MURTAUGH:**  And Mr. Allen (phonetic) Carr

7    (phonetic), that's Debtor's Disinterested Director.  That's

8    Docket Number 813.  He is also here in the courtroom.  Jerrod

9    (phonetic) Paul (phonetic) from Omni, the Debtor —— the

10   Debtor's solicitation and claims agent.  That's Docket 814.

11   And he is available on the line, your Honor.

12          Also included in the exhibit list are previously

13   filed affidavits of service.  The affiant on those is Mr. Randy

14   Lowry (phonetic) from Omni.  He is on the video conference

15   line.  And also included is the Debtor's first day declaration

16   from Mr. Randall Eisenberg (phonetic), he's also on the line.

17          Beyond that, your Honor, the —— the remaining items

18   are previously filed notices and orders entered on the docket.

19   Everybody who I mentioned, your Honor, is available for cross

20   examination if any party wishes to.

21          Absent any objection, we would move all of those

22   exhibits into the record at this time.

23          **THE COURT:**  Any objection to the admission of

24   Exhibits 1 through 19?

25          **MS. WHITWORTH:**  No objection, Judge.

1      **UNKNOWN MALE:**  No objection, your Honor.

2      **THE COURT:**  They're admitted.

3      **(Debtor's Exhibits Number 815-1 through 815-19 were**

4  **received into evidence.)**

5      **MR. MURTAUGH:**  And I'm — I'm sorry, your Honor, this

6  is the — I was looking at the old witness and exhibit list.

7  The amended exhibit list is Docket 815.  So it should —

8      **THE COURT:**  Eight one five.  Yeah.

9      **MR. MURTAUGH:**  Okay.  Eight —

10      **THE COURT:**  Yeah.

11      **MR. MURTAUGH:**  — eight one fifteen.

12      So Exhibits — Exhibits 1 through 19 on Docket Number

13  815 are the Debtor's evidentiary record.

14      **THE COURT:**  And just so the record's clear 815-1

15  through 19 are admitted.

16      **MR. MURTAUGH:**  Thank you, your Honor.

17      **(Pause in the proceeding.)**

18      **MR. MURTAUGH:**  So, your Honor, turning to the

19  disclosure statement very briefly.  Your Honor previously

20  conditionally approved the disclosure statement at Docket Entry

21  601.  We solicited votes with that disclosure statement.  We

22  received no objections to entry of the approval of the

23  disclosure statement on a final basis.  So that is where the

24  disclosure statement stands.

25      With regard to the Plan, your Honor.  All of the

1  classes, empiric classes entitled to vote accepted the plan in

2  substantial super majorities.  So we have no dissenting classes

3  on the plan.

4        We filed updated drafts of the plan and confirmation

5  order with minor changes resolving comments and objections.

6  Those were filed at Docket Entry 826 for the plan, 827 for the

7  DS, and redlines at Docket entry 830.

8        That —— again, your Honor, the changes are —— are

9  minor and intended to address informal comments in the

10  objections that we did receive.

11        I'm happy to walk through any if your Honor wants to

12  pause on any of them.  But if not, I'll just keep moving.

13      **THE COURT:**  Well, just one —— one question.  Are

14  there any —— I —— I saw the language there.

15        Aside from the United States Trustee's objections,

16  are there any other objections that are either —— have not been

17  resolved through language or —— or something.

18      **MR. MURTAUGH:**  No, your Honor.

19      **THE COURT:**  Okay.

20      **MR. MURTAUGH:**  So the —— the —— the —— there were

21  four plan objections.  Three are resolved.

22        There were three cure objections.  To the extent

23  those remain live, we've agreed with the parties that they will

24  be resolved at a later date.  We have had conversations with

25  them.  We expect to resolve them consensually.

1          **THE COURT:**  Perfect.

2          **MR. MURTAUGH:**  So the remaining live objection for

3    today is the Trustee's objection.

4          **THE COURT:**  Okay.

5          **MR. MURTAUGH:**  And I'll step aside in a minute so

6    that the —— the —— the U.S. Trustee can present that objection.

7          Before that, just very briefly so your Honor knows

8    where we are on the status of the deal.  As —— as, I —— I think

9    your Honor knows, this is a —— a complex restructuring.  There

10   are a number of exit facilities.  There is a —— complex

11   transaction to give the noteholders the recovery in the

12   publicly-traded equity of the Debtor's non-Debtor affiliate,

13   XBP.

14         So there —— there are many agreements that need to

15   get in place.  And they all need to work together.  I —— I'm

16   happy to say we've come a very long way from concept to having

17   executable documents for the whole package.

18         I have to say, everybody's rights remain reserved,

19   subject to definitive documents.  There are still material open

20   points for sure.  There are still risks.

21         As your Honor knows, this has been a contentious

22   case.  I —— I can say the parties have worked extremely hard to

23   overcome differences.  Everybody has made compromises they did

24   not want to make.

25         And we're definitely moving in the right direction.

1    The commitments are largely in place.  Drafts of documents are

2    getting close to final.

3            So we are —— we're happy where we are.  We know

4    there's still work to do.  And everybody knows that the work

5    needs to get done.  The —— for —— for visibility, the longest

6    hold in attempt to effectiveness is the XBP publicly-traded

7    entity has to go through a shareholder proxy process to approve

8    the transaction.

9            We are —— as sitting here today, we are at least two

10   weeks away from the process being complete, just because of

11   statutory notice periods.  So I —— we expect, we hope, we will

12   be ready to go effective without incident around the middle of

13   July.

14           But if we we're —— we don't come back giving a notice

15   of the effective date for several weeks, it's not because

16   something has gone.  It's because the process that we expected

17   to unfold is unfolding.

18       **(Pause in the proceeding.)**

19       **MR. MURTAUGH:**  With that, your Honor, I —— I will not

20   burden your Honor with any more updates on the plan or the

21   status.  Unless your Honor has questions, I will just cede the

22   podium for the argument on the opt outs.

23       **THE COURT:**  Okay.  Let me just —— before we get into

24   the argument, does anyone wish to be heard?

25       **(Pause in the proceeding.)**

1        **THE COURT:**  Not relating to the —— to the opt outs,

2  either support or anything they wish to say I connection with

3  the plan.  Now's probably the time.

4        I'm just going to hear the arguments and ——

5     **(No response.)**

6        **THE COURT:**  Okay.  I'll hear from the U.S. Trustee.

7     Thank you.

8        **MR. MURTAUGH:**  Thank you, your Honor.

9        **MS. WHITWORTH:**  For the record, Jana Whitworth, on

10  behalf of the United States Trustee.

11        Your Honor, based on the extended circumstances and

12  the fact that there is substantial briefing, a 30-page brief on

13  our part, and the Debtor's also had a —— had extensive briefing

14  responding to our —— our objection, I'm just going to hit the

15  high points for the Court.

16        So today we are objecting, your Honor, to the third-

17  party releases, based on the notion that inferred consent

18  through the opt out procedure, in other words, if a —— if a

19  party failed to affirmatively opt out, they —— they —— they

20  waive their right to pursue third-party claims against non-

21  Debtors.

22        The U.S. Trustee believes that that's not in

23  alignment with the —— the case of the law, that that doesn't

24  constitute —— that —— that inferred consent doesn't constitute

25  actual consent.  That's number one.

1        Number two.  The —— the Court —— the —— the Fifth

2   Circuit came down, as you know, in *Highland II* on the

3   injunction provisions saying that only the exculpated parties

4   were entitled to that —— that protection.

5        The —— the argument that the Debtors make is that ——

6   that it's a consensual —— consensual release, consensual third-

7   party releases.  So our argument doesn't make any sense that

8   only exculpated parties should be included in the paragraph

9   outlining who —— who needs to come to the gatekeeper before

10  they can —— can assert claims.

11       We don't agree with that, your Honor.  I think the

12  language of —— of *Highland II* is pretty clear and simple to ——

13  to follow.  And —— and I don't —— the U.S. Trustee doesn't

14  agree with that.

15       And the third and last point, your Honor, is that

16  the —— the —— the Debtors were seeking to waive that 14-day

17  stay under Rule 3020(e).  And we don't agree to that.  That's

18  appropriate.  In fact, the —— the Debtor just informed the

19  Court that it would be mid-July before the effective date

20  would —— would occur.

21       So the U.S. Trustee is asking the Court to not permit

22  them to waive that —— that 14-day stay.

23       And that's all I have, Judge.  Thank you.

24       **THE COURT:**  Thank you very much.

25       **(Pause in the proceeding.)**

1          **MS. WEICHSELBAUM:**  Good afternoon, your Honor.  I'm

2    Johnathon Weichselbaum of Latham and Watkins on behalf of the

3    Debtors.

4          Your Honor, I'll start with the last point made by

5    the U.S. Trustee.  We're okay to give on the point for the

6    waiver.  Given what Mr. Murtagh just said, we're not expecting

7    to go effective in two weeks.  So we can —— we'll drop that

8    point and remove it from the order.

9          **THE COURT:**  Okay.

10         **(Pause in the proceeding.)**

11         **MS. WEICHSELBAUM:**  So, your Honor, given the Court's

12   familiarity with the issues raised by the U.S. Trustee, I'm

13   going to try and be brief.

14         So as your Honor is well aware, ever since *Purdue*

15   (phonetic) the U.S. Trustee has been trying to expand the

16   *Purdue* ruling to change precedent in this District that has

17   been used for —— for, you know, almost —— over 15 years.

18         And some of the recent cases before your Honor and

19   Judge Perez, in each of them, your Honor and Judge Perez have

20   ruled clearly that *Purdue* did not change the law in this

21   District.  And that opt outs are and remain a valid —— valid

22   method for obtaining consent to a consensual third-party

23   release under a Chapter 11 plan.

24         In particular, your Honor, in *Robert Shaw* (phonetic),

25   you remarked that, I quote,

1           "There is nothing improper with an opt out

2           feature for consensual third-party releases

3           in a Chapter 11 plan.  And what constitutes

4           consent, including opt out features and

5           deemed consent for not opting out, has long

6           been settled in this District."

7       Your Honor, you went on to further state that,

8           "Hundreds of Chapter 11 cases have been

9           confirmed in this District with consensual

10          third-party releases with an opt out."

11      And, again, *Purdue*, did not change the law in this

12  Circuit.

13      Your Honor, so it's clear from your remarks and the

14  cases that have been before your Honor and Judge Perez

15  recently, that the opt out process remains a valid method of

16  obtaining consent, so long as the process is adequate and

17  reasonable under the facts and circumstances of a given case.

18      Your Honor, we — the Debtors submit that the process

19  used here is consistent with the prior cases in this — in this

20  Circuit, in this District, in this Court.  And I'll briefly

21  just run through the process real quickly.  If you have any

22  questions, obviously, let me know.

23      So, your Honor, the uncontroverted evidence before

24  you today is that Debtors, through their solicitation agent,

25  Omni, sent out ballots, notices of non-voting status, and opt

14

1    out forms, which each clearly and conspicuously detailed the

2    third-party release and the consequences for failing to opt out

3    of those releases.

4            Your Honor, as evidenced in the voting declaration

5    in —— at Docket Number 814, the Debtors served the solicitation

6    and voting materials and opt out forms on May 13th, on or

7    before May 13th, giving creditors ample time to submit their

8    elections on the ballots and the opt out forms.  They had until

9    June 11th.

10           Parties were given multiple methods of submitting the

11   opt out forms.  They could submit them electronically, hard

12   copy, they can object to the plan informally or formally.  Your

13   Honor, simply the process gives people a choice.

14           They can elect to opt out of granting and getting a

15   release, or they can choose not to opt out and be bound by the

16   release.  This was a clear choice and people made that choice,

17   whether that's the 30 plus —— 30 plus people and entities that

18   elected to opt out by submitting a ballot, or those that

19   objected to the plan and never came to opt out of the release

20   under the plan.

21           So, your Honor, simply the process worked.  People

22   were given a choice.  Some people made that —— some people made

23   that election.  Others did not.

24           So, your Honor, we would submit that the process that

25   we ran was adequate and reasonable under the circumstances.  Is

15

1   consistent in all material respects with the precedent in this

2   District, including the recent cases before your Honor and

3   Judge Perez, which include *Robert Shaw*, *Varum* (phonetic),

4   *Independence*, *Contract Drilling*, and the *Container Store*.

5           And we submit that the opt procedure should be ──

6   should be approved in this case.

7           So unless your Honor has any questions, I will

8   briefly touch on the gatekeeper objection.

9           **THE COURT:**  Okay.

10          **MS. WEICHSELBAUM:**  Your Honor, so we respectfully

11   disagree with the United States Trustee that ── that *Highland*

12   mandates that the gatekeeper should be limited to just

13   exculpated parties.  Instead, we believe that *Highland* stands

14   for the proposition that the gatekeeper provision is

15   permissible so long as it relates to other valid and

16   permissible provisions.

17           The gatekeeper here, along with the injunction, are

18   meant to implement and give effect to the releases that the

19   injunction provisions under the plan ── and discharge

20   provisions under the plan.

21           We submit it's appropriate and consistent with the

22   precedent in this District.

23           **THE COURT:**  Thank you.

24          **MS. WEICHSELBAUM:**  So with that, your Honor, unless

25   you have any questions, we respectfully request that you

1    overrule the U.S. Trustee's objection and confirm the plan.

2              **THE COURT:**  Thank you.

3              Let me just as if anyone who hasn't spoken wishes to

4    be heard.

5         **(Pause in the proceeding.)**

6              **THE COURT:**  Okay.  Thank you very much.

7              Note ——

8         **(Pause in the proceeding.)**

9              **THE COURT:**  The Court now considers final approval of

10   the Disclosure Statement and Confirmation of a Chapter 11 Plan

11   in *DocuData, Case Number 25-90023*.  It was filed on March the

12   3rd.

13        **(Pause in the proceeding.)**

14             **THE COURT:**  Court has jurisdiction under 28 U.S.C.

15   1334.  And this is a core proceeding under 28 U.S.C. 157(b).

16        **(Pause in the proceeding.)**

17             **THE COURT:**  Get to the point where you —— there ——

18   there are cases where —— you can't always tell which cases are

19   complicated.  Many people look to the size of cases and the

20   amount of cash or debt that's involved in cases to know whether

21   they're complicated.

22             But going on approaching six years on the bench.  And

23   some time private practice you —— some —— sometimes the smaller

24   cases are the more complicated cases.

25             This case was big and complicated.  And it had the

1  hallmarks of both.  Came in with a number of parties.  A

2  company trying to find a way to reorganize.  But — but a path,

3  but certainly wasn't looking consensual on the day that it

4  landed ashore in the Southern District of Texas.

5         And a Committee got appointed.  And the Committee did

6  their job.  And — and — and looked at everything.  And looked

7  under every rock.  And had strong objections.  And the parties

8  have worked really hard.  It's clear.  Just — if you just took

9  a snapshot on March the 3rd, you'd have thought we were going

10 to be here late into the evening preparing for an evidentiary

11 hearing, while there would have been a number of objections.

12        So a lot of times it — but that still doesn't mean

13 that it was easy and that it wasn't complicated.  And a lot of

14 times things are complicated because of the docs.  This is

15 complicated cause of the deal.  It's a lot that had to come

16 together there.  Not just the corporate people figuring it out

17 or the tax folks figuring out the best way to do it.

18        This case was complicated on a number of different

19 ways.  And just a lot of kudos to Debtor's counsel, Committee

20 counsel, —

21        **(Pause in the proceeding.)**

22        **THE COURT:**  — the professionals involved who

23 represented the lienholders.  But I — I give a lot of kudos

24 based upon the declarations and the evidence before me as well.

25        **(Pause in the proceeding.)**

18

1          **THE COURT:**  You know, Mr. Carr and Mr. Spitzer

2    deserve a lot of credit.  This is a lot of hard work.  And you

3    can tell some tough decisions had to get made.  And people were

4    up late at night.

5          It's just really clear from the deals that are there.

6    And —— and what still has to get done.  But this is an

7    important day in the life of the company and the stage of the

8    Chapter 11 case.

9          **(Pause in the proceeding.)**

10         **THE COURT:**  Um ——

11         **(Pause in the proceeding.)**

12         **THE COURT:**  Um ——

13         **(Pause in the proceeding.)**

14         **THE COURT:**  I'm looking at Mr. Barefoot.  I don't ——

15   I don't think Mr. Barefoot, you know, didn't —— he wasn't

16   budging much on behalf of his clients as well.  So there's a

17   lot of hard negotiations that I can tell went there today to

18   have a consensual plan with the overwhelming majority of folks

19   who —— who supported the plan, really speaks to ——

20         **(Pause in the proceeding.)**

21         **THE COURT:**  —— just the —— the —— the amount of work

22   that went it.  But —— so ——

23         **THE COURT:**  I've reviewed the final approval of

24   disclosure statement under Section 1125 of the Bankruptcy Code.

25   And it says that, "Disclosure statement must contain adequate

1    information."  And adequate information is defined as,

2              "Information to allow a creditor and equity

3              holder make an informed judgment as to

4              whether to vote to accept or reject the

5              plan."

6         No one has objected to final approval of the

7    Disclosure Statement.  But the Debtors had the burden to

8    establishing.  And the Court, even though no one objects, I

9    think I still have a duty to make sure that it does contain

10   adequate information.  And I do believe it does contain

11   adequate information within the meaning of Section 1125 of ——

12   of the Bankruptcy Code.

13        The Disclosure Statement contains everything.  And

14   it's written in a way that was meant for people to understand.

15   And so I very much appreciate that.  And —— and —— and I think

16   the voting reflects that.

17        So, I think the voting shows that this has been

18   supporting and the creditors have spoken.  And Debtors just

19   propose plans, but it's creditors who vote, right?  You

20   don't —— you don't get to plan confirmation without the

21   requisite vote of the Debtor's plan.

22        So I approve this Disclosure Statement on a final

23   basis for the plan.  You're —— you look at a couple of

24   different sections, 1122, 1123, 1129 and make sure that you ——

25   you're consistent with 1124, 1126.

1          And I do find that the plan was filed and contains

2  all the —— let me just say.  It contains all the required

3  information that it is supposed to have.  Runs afoul, no

4  section of 1123 contains everything it's supposed to.

5          And the vote reflects approval.  And every section of

6  1129 has been complied with.

7          I make a couple of additional findings that is based

8  upon the declarations before me.  This plan was filed in good

9  faith.  The professionals have acted in good faith in proposing

10 it.  Hard fought negotiations there.

11         I looked carefully at Mr. Carr's declaration about

12 the work that the Disinterested Director did.  And —— and ——

13 and of the process of the analysis and the steps that he took.

14         And I —— it just shows that a lot of independent

15 thought, independent analysis went there.  And he exercised his

16 duty as an independent director there.  So, the settlements

17 there were thought out, arms' length negotiations.

18         So, each of the professionals, in my opinion, and the

19 Committee's professionals, both Brown Rudnik and co-counsel at

20 McDermott, they've all acted in good faith, and individual

21 members of the Committee as well.  They're entitled to all

22 protection afforded under law.

23         Throughout the entire case they were hard fought

24 battles here.

25         **(Pause in the proceeding.)**

1          **THE COURT:**  And so now we turn to ——

2      **(Pause in the proceeding.)**

3          **THE COURT:**  I guess, I —— I —— I should note as well.

4  Every other section of 1129 has been satisfied to vote.  We

5  don't have to think about 1129(b), cause all the —— the

6  required voting classes have —— have voted in support of the ——

7  of the —— of the plan.

8      **(Pause in the proceeding.)**

9          **THE COURT:**  So ——

10     **(Pause in the proceeding.)**

11         **THE COURT:**  Now turning to the, I guess what I ——

12  what I would call the Office of United States Trustee's

13  objections.  They kind of come in three —— three ways.

14         One is kind of the, whether the consent works.

15  And —— and I have stated, I think Miss Whitworth was here

16  actually when we did *Robert Shaw*.  So she'll hold me to it if

17  I'm wrong.

18         I have consistently, at least tried to, all that I ——

19  I read Supreme Court cases incredibly literally.  I don't think

20  I'm able to read Fifth Circuit cases really literally and

21  Supreme Court cases incredibly literally.

22         And I don't expand it.  And I don't limit it in any

23  way.  I —— I read it very exactly what they tell me to do cause

24  that's what I'm bound to follow under precedent.

25         And *Purdue* was talking about non-consensual third-

1    party releases in the context of a Chapter 11 plan.  And it

2    expressly said we don't make no finding about what consent

3    means.

4              And so you kind of go to what consent has always

5    meant in the Fifth Circuit and the way it's worked.  And opt

6    outs have always worked.

7              But not just ideal opt out.  The opt outs have

8    emerged, though, and evolved over time.  I'd say the current

9    version of what we have is —— is the right way if you're going

10   to do it cause it ensures due process.

11             And every case is different.  And you got to look at

12   it.  And then —— and maybe things have to get tweaked every now

13   and then.  And so, there's not a cookie cutter version of ——

14   to —— to —— to do this.  But there certainly is guidance here.

15             And I think that the process that was run here, the

16   voting procedures that were run, are appropriate.  And they

17   afforded parties due process.

18             And —— and we heard from creditors.  And that's

19   really what you want is just a creditor to have something that

20   they can read.  And it's something —— nothing's buried in a

21   footnote or, you know, in 6 point fonts stuck in the back of a

22   300 page document.

23             And then, I mean, it was out there in bold in big

24   letters.  And people read them  And people —— and I don't have

25   any creditors, quite frankly, ever come in and said, I didn't

23

1    understand it either.

2         **(Pause in the proceeding.)**

3              **THE COURT:**  So, I — I — I think the — the opt outs

4    work.  They're consistent with Fifth Circuit case law as I

5    understand it.  And I do find that the concept of consent and

6    not speaking when you have the opportunity to speak, is

7    consent, under federal case law.

8              I think federal case forwards that view.  You know,

9    it happens a lot in class actions as well.  We can nit pick

10   about the differences between class actions and MDL's.  But

11   I — I — when you look at the processes there and the process

12   is fair.

13             I think the Office of the United States Trustee has a

14   right to come in as they do to make sure there's been a check

15   on the process.  And I very much appreciate their presence

16   here.  But I'm going to approve the opt outs.  And I — looking

17   at this one on an individual basis as well.

18             And so you look at who voted, and how they voted,

19   and —

20        **(Pause in the proceeding.)**

21             **THE COURT:**  — I find that the consent here in this

22   case, based upon the process that was run is appropriate.  And

23   I also, with my very textual literal approach to — to doing

24   things, I also read *Highland* very literally as well.

25             And — and *Highland* was a — well, I — I don't keep

24

1   up with how many *Highlands* there are.  But the *Highland* case

2   that talks about the gatekeeper and matching it up ⸺

3          **(Pause in the proceeding.)**

4          **THE COURT:**  ⸺ you know, there was an issue there

5   where ⸺ where someone was ⸺ have taken off.  But then

6   they're ⸺ then they're ⸺ but then they were included on the

7   gatekeeper function.

8              And ⸺ and so there was a mismatch in the doc.  And

9   the Fifth Circuit kind of said, well, if you're not going to ⸺

10  if you can't be an exculpated party, then we can't have you

11  here as a ⸺ kind of a back door release or a back door

12  exculpation getting around the Fifth Circuit's ruling.

13             And so I just think things need to line up and the

14  docs needed to match up.  And ⸺ and I thought *Highland* was

15  more about a simple fix than ⸺ than kind of just making sure.

16  Because the gatekeeping function is really there to, you know,

17  where I ⸺ I take a look and say, are you exculpated?  Are

18  you ⸺ are you released under ⸺ under here?  Are you one of

19  those parties who's entitled to this.

20             And then I make a determination as to the whether it

21  applies or not.  That's ⸺ that's really the true role of a

22  gatekeeper.

23             And so I do think everything lines up here.  So I

24  don't think we have a *Highland* issue here just reading the ⸺

25  and ⸺

25

1        **(Pause in the proceeding.)**

2        **THE COURT:** —— who knows what will happen if *Highland*

3    at the highest level, whether something changes or not.

4        But so I'm just going on based upon the literal

5    reading of those decisions as they exist today.  And we'll take

6    them up.

7        The last part looks like it's going to get taken care

8    of.  So there'll be a 14-day stay in effect.  I'll overrule any

9    objections to the extent that they're still out there.  I'm

10   approving all of the settlements there as falling within the

11   range of reasonableness when you look at the standards for

12   approval of a settlement.

13       Did the Debtor articulate business reasons, business

14   judgment?  Oh, absolutely.  He wouldn't be here today.  That's

15   just the short answer.  Without that, you wouldn't be here on a

16   consensual basis to do so.  And these are arms' length, hard

17   fought negotiations, based upon the declarations and the

18   evidence that is before me today.

19       So, I will approve it.  I've reviewed the last

20   version of the order.  And it works for me.  The one tweak is

21   do I need to just delete the paragraph or the "X" about the 14-

22   day stay.

23       **MR. GUFFY:**  So it's actually the second sentence of

24   Paragraph 484 if, your Honor, would ——

25       **THE COURT:**  Now ——

 1          **MR. GUFFY:** —— like to take care of that.

 2          **THE COURT:**  Yeah.

 3          **MR. GUFFY:**  I —— or I can upload a revised ——

 4          **THE COURT:**  No.  No.  No.

 5          **MR. GUFFY:** —— one for you.

 6      **(Pause in the proceeding.)**

 7          **THE COURT:**  Revised confirmation —— you filed

 8  something at 830, right?

 9          **MR. GUFFY:**  Eight thirty's the redline.  Eight

10  twenty-seven is the revised confirmation order.

11          **THE COURT:**  Yeah.  Let me just take a look.

12      **(Pause in the proceeding.)**

13          **THE COURT:**  Good.  What paragraph?

14          **MR. GUFFY:**  Paragraph 84, the 2nd sentence is the

15  stay waiver.  So if we just delete that second sentence of

16  Paragraph 84.

17          **THE COURT:**  Yeah.  I can pull it up.

18          **MR. GUFFY:**  That'll take care of it.

19      **(Pause in the proceeding.)**

20          **THE COURT:**  Yeah.  Yes.  I'll get that —— I'll delete

21  this.  And I'll get this signed on the docket.

22          By the way, I know this is going to sound really

23  silly.  But it makes it —— the reason I can do this one is ——

24  is I like —— if I —— any defined terms, I like them in bold or

25  you can do bold and italic if you want.

1          But if you underline it, when you start moving the

2    .pdf, the lines stays where it is.  And then that's when I tell

3    people upload.  Because then I've like an underline on my three

4    lines up.  And it makes no sense.  And it just drives me nuts.

5    And I can't figure out how to do it on the .pdf.  And ⸺ or ⸺

6    so underline or don't underline, just on defined terms just the

7    bold.

8          But you did it here.  So I can delete this and ⸺ and

9    make this work.  So, anyway.  It's a beautiful day in Houston.

10   I'll let you all go out and enjoy it.  Thank you very much.

11          **MR. GUFFY:**  Thank you, your Honor.

12          **THE COURT:**  Anything else we need to take care of

13   today?

14          **MR. MURTAUGH:**  No, your Honor.  I believe that's it.

15          **THE COURT:**  All right.  I ⸺ I'm going to come meet

16   some summer associates.  It's been my practice to do so.  And I

17   want to make sure ⸺ I never know who I'm going to meet in the

18   future.

19          All right.  Thank you.

20          **MR. MURTAUGH:**  Thank you.

21       **(This proceeding was adjourned at 01:34 p.m.)**

22

23

24                    * * * * * * * * *

25

28

1                        <u>CERTIFICATION</u>

2            I certify that the foregoing is a correct transcript

3    from the electronic sound recording of the proceedings in the

4    above-entitled matter.

5        /s/*Cheryl L. Battaglia*                    July 5, 2025

6        Transcriber                              Date

7    4:25-BK-90023

8    06/23/25 – 07/05/25